**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
03/05/2020

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN COMMERCIAL LINES | ) Case No. 20-30982 (MI) |
| INC., *et al.*,[1] | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

**FINAL ORDER (A) AUTHORIZING THE**
**DEBTORS TO OBTAIN POSTPETITION**
**FINANCING, (B) AUTHORIZING THE DEBTORS**
**TO USE CASH COLLATERAL, (C) GRANTING LIENS**
**AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION TO THE**
**PREPETITION SECURED PARTIES, (E) MODIFYING THE AUTOMATIC STAY,**
**AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "**DIP Motion**")[2] of American Commercial Lines Inc. ("**Holdings**"),

Commercial Barge Line Company (the "**DIP Term Borrower**" or the "**Company**") and their

affiliated debtors (together with Holdings, the "**DIP Term Guarantors**"; the Company, American

Commercial Barge Line LLC, ACBL Transportation Services LLC and ACBL River Operations

LLC, the "**DIP ABL Borrowers**"; and Holdings and the other affiliated debtors (excluding the

DIP ABL Borrowers), the "**DIP ABL Guarantors**"), each as a debtor and debtor-in-possession

(collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") and pursuant

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Finn Holding Corporation (1456), ACL I Corporation (1534), American Commercial Lines Inc. (7794), Commercial Barge Line Company ("CBLC") (2365), American Commercial Barge Line LLC ("ACBLL") (6600), American Commercial Lines International LLC (6599), ACBL Oldco, LLC (6602), ACBL Transportation Services LLC ("Transport") (6589), ACBL River Operations LLC ("River Ops") (6762), Old JB LLC ("Old JB") (6590), and ACL Professional Services Inc. (4614).  The Debtors' principal offices are located at 1701 E. Market Street, Jeffersonville, Indiana 47130.

[2]   Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the DIP Motion.

to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 1075-1, 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Bankruptcy Rules**") and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking entry of an interim period order (the "**Interim Period Order**") and a final order (this "**Final Order**") providing, among other things:

(i)     authorization for (x) the DIP ABL Borrowers to obtain postpetition financing as set forth in the DIP ABL Documents (as defined herein) (the "**DIP ABL Financing**"), and for Holdings and the other DIP ABL Guarantors to guaranty the obligations (the "**DIP ABL Obligations**") of the DIP ABL Borrowers in connection with the DIP ABL Financing (the DIP Term Guarantors together with the DIP ABL Borrowers, the "**DIP ABL Loan Parties**"); and (y) the DIP Term Borrower to obtain postpetition financing as set forth in the DIP Term Documents (as defined herein) (the "**DIP Term Financing**" and, together with the DIP ABL Financing, the "**DIP Financing**"), and for the DIP Term Guarantors to guaranty the obligations (the "**DIP Term Loan Obligations**," and together with the DIP ABL Obligations, the "**DIP Obligations**") of the DIP Term Borrower in connection with the DIP Term Financing (the DIP Term Guarantors together with the DIP Term Borrower, the "**DIP Term Loan Parties**"; the DIP Term Loan Parties together with the DIP ABL Loan Parties, the "**DIP Loan Parties**"); the DIP Financing consisting of:

(I)     a senior secured superpriority debtor-in-possession asset-based revolving credit facility (the "**DIP ABL Facility**") consisting of a revolving credit facility in an aggregate principal amount of up to $640,000,000 (the "**DIP ABL Loans**"), pursuant to the terms and conditions of that certain *Senior Secured Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**DIP ABL Credit Agreement**"), by and among the Holdings, the DIP ABL Borrowers and Wells Fargo Capital Finance, LLC ("**Wells Fargo**") as administrative agent and collateral agent (in such capacities, the "**DIP ABL Agent**") for and on behalf of itself and the other lenders party thereto (the "**DIP ABL Lenders**," and

collectively with the DIP ABL Agent, the Issuing Bank (as defined in the DIP ABL Credit Agreement) and the Secured Bank Product Providers (as defined in the DIP ABL Credit Agreement), the "**DIP ABL Secured Parties**"), substantially in the form of **Exhibit B**, attached to the DIP Motion; and

(II)    a senior secured superpriority debtor-in-possession term loan credit facility (the "**DIP Term Facility**" and, together with the DIP ABL Facility, the "**DIP Facilities**"), in an aggregate principal amount of up to $50,000,000 (the loans made thereunder, the "**DIP Term Loans**" and together with the DIP ABL Loans, the "**DIP Loans**") pursuant to the terms and conditions of that certain *Secured Superpriority Debtor-in-Possession Term Loan Agreement* (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**DIP Term Loan Credit Agreement**," and together with the DIP ABL Credit Agreement, the "**DIP Credit Agreements**"), by and among the DIP Term Borrower, the DIP Term Guarantors, and Cortland Capital Market Services, LLC, as administrative agent and collateral agent (in such capacities, the "**DIP Term Loan Agent**" and, together with the DIP ABL Agent, the "**DIP Agents**") for and on behalf of the lenders party thereto (the "**DIP Term Lenders**" and, together with (x) the DIP ABL Lenders, the "**DIP Lenders**," and (y) the DIP Term Loan Agent, the "**DIP Term Loan Secured Parties**"; the DIP Term Loan Secured Parties together with the DIP ABL Secured Parties, the "**DIP Secured Parties**"), substantially in the form of **Exhibit C**, attached to the DIP Motion;

(ii)    authorization for:

(I)    the Debtors to execute and deliver the DIP ABL Credit Agreement, and, any other agreements, instruments, pledge agreements, guarantees, security agreements, control agreements, notes, and other Credit Documents (as defined in the DIP ABL Credit Agreement) and documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP ABL Credit Agreement, the "**DIP ABL Documents**") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP ABL Documents;

(II)    the Debtors to execute and deliver the DIP Term Loan Credit Agreement, and any other agreements, documents, instruments and/or amendments executed and delivered in connection therewith, (collectively, the "**DIP Term Documents**," and together with the DIP ABL Documents, the "**DIP Documents**") and to perform their respective obligations thereunder and all such other and further acts

as may be necessary, appropriate, or desirable in connection with the DIP Term Documents;

(iii)    (x) the DIP Loan Parties to use the DIP ABL Facility to, (A) simultaneously with the initial draw under the DIP ABL Facility, refinance all of the outstanding Prepetition ABL Debt (as defined herein) in full, including interest, fees, cost and other charges payable thereunder through the date of repayment, together the deemed issuance and deemed incurrence of all letter of credit obligations and bank product obligations extant or otherwise issued and outstanding through such date of refinancing, which refinancing, deemed issuance and deemed incurrence shall be indefeasible upon the occurrence of the ABL Satisfaction Date, (B) for working capital and general corporate purposes of the DIP Loan Parties in accordance with the DIP ABL Documents and as permitted by the Budget (subject to the Permitted Variance, as defined and set forth in the DIP ABL Credit Agreement), and (C) for Prepetition ABL Secured Parties Adequate Protection Obligations (as defined below), and (y) the DIP Loan Parties to use proceeds of the DIP Term Financing for working capital and general corporate purposes in accordance with the terms of the DIP Term Documents and as permitted by the Budget (subject to the Permitted Variance) defined and set forth in the DIP Term Loan Credit Agreement);

(iv)    subject to the restrictions set forth in the DIP Documents, the Interim Period Order, this Final Order, and the Intercreditor Agreements (as defined herein), the Debtors to use the Prepetition Collateral (as defined herein), including Cash Collateral of the Prepetition ABL Secured Parties under the Prepetition ABL Documents and the Prepetition Term Loan Secured Parties under the Prepetition Term Loan Documents (each as defined herein) and provide adequate protection to the Prepetition ABL Secured Parties and Prepetition Term Loan Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral), and the priming of their respective interests in the Prepetition Collateral (including Cash Collateral), including by the Carve Out;

(v)    the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents, the Interim Period Order, and this Final Order;

(vi)    the Debtors to make certain Stipulations with respect to the Prepetition Credit Agreements and the liens and security interests arising therefrom;

(vii)    subject to the Carve Out and the Prepetition Intercreditor Agreement, the granting to the DIP Secured Parties of allowed superpriority claims pursuant

to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the DIP Loan Parties;

(viii)   the granting to the DIP Secured Parties of liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the DIP Loan Parties' estates (other than certain customarily excluded assets) and all proceeds thereof, including, any Avoidance Proceeds (as defined herein), subject to the Carve Out (as defined herein) and the Intercreditor Agreements;

(ix)   (a) a waiver, to the extent set forth herein, of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined herein) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and

(x)   modification of the automatic stay to the extent set forth herein.

The Court having considered the relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Neil A. Augustine* (the "**DIP Declaration**"), the *Declaration of David J. Huls* (the "**First Day Declaration**"), the DIP Documents, and the evidence submitted and arguments made by the Debtors at the Initial Hearing held on February 10, 2020 (the "**Initial Hearing**"); and notice of the Initial Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Initial Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and the Court having entered the Interim Period Order on February 10, 2020 [ECF No. 88]; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit

Agreements and other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INITIAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:** [3]

A.    *Petition Date*.  On February 7, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.

B.    *Joint Administration*.    The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [ECF No. 16].

C.    *Debtors in Possession*.    The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

D.    *Interim Period Order*.  The Court entered the Interim Period Order on February 10, 2020 [ECF No. 88]

E.    *Jurisdiction and Venue*.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 363(m) 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Bankruptcy Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1.

F. *Committee Formation*.  As of the date hereof, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

G. *Notice*.  The Final Hearing was scheduled and noticed pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion has been provided in accordance with the Interim Period Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the DIP Motion or the entry of this Final Order shall be required.  The final relief granted pursuant to this Final Order is necessary to avoid significant and irreparable harm to the Debtors and their estates.

H. *Debtors' Stipulations*.  Without prejudice to the rights of the Debtors' estates or any other party in interest (but subject to the limitations thereon contained in paragraph 23 below), and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i) *Prepetition ABL Credit Facility*.  Pursuant to that certain Amended and Restated Revolving Credit Agreement dated November 12, 2015 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition ABL Credit Agreement**," and collectively with the other Credit Documents (as defined in the

Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition ABL Documents**"), among (a) the borrowers party thereto (the "**Prepetition ABL Borrowers**"), (b) the guarantors under the Prepetition ABL Documents (the "**Prepetition ABL Guarantors**"), (c) Wells Fargo, as administrative agent and collateral agent (in such capacities, the "**Prepetition ABL Agent**"), and (d) the lenders party thereto (the "**Prepetition ABL Lenders**," and collectively with the Prepetition ABL Agent, the "Issuing Bank" (as defined under the Prepetition ABL Credit Agreement) and the "Secured Bank Product Providers" (as defined under the Prepetition ABL Credit Agreement), the "**Prepetition ABL Secured Parties**") and the other Prepetition ABL Secured Parties party thereto, the Prepetition ABL Lenders provided revolving credit and other financial accommodations to the Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "**Prepetition ABL Credit Facility**").

        (ii)    *Prepetition ABL Debt*.   As of the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $536,338,410 (collectively, together with accrued and unpaid interest, all other "Obligations" as defined in the Prepetition ABL Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition ABL Debt**"), which Prepetition ABL Debt has been guaranteed on a joint and several basis by all of the Prepetition ABL Guarantors.  For purposes of this Final Order, (x) "**ABL Satisfaction Date**" means the date of indefeasible Payment in Full (as defined herein) of the Prepetition ABL Debt; (y) the ABL Satisfaction Date shall be deemed to have occurred if Payment

in Full of the Prepetition ABL Debt has occurred and the Challenge Period (as defined herein) expires without the timely and proper commencement of a Challenge Proceeding in accordance with paragraph 23 of this Final Order with respect to the Prepetition ABL Debt or against the Prepetition ABL Secured Parties, or if a Challenge Proceeding is timely and properly asserted prior to the expiration of the Challenge Period, upon the final disposition of such adversary proceeding or contested matter in favor of the Prepetition ABL Secured Parties by order of a court of competent jurisdiction; and (z) "**Payment in Full**" means the occurrence of (i) the payment in full in cash or immediately available funds of all of the obligations, (ii) the termination or expiration of all commitments to extend credit to the DIP Borrowers, (iii) with respect to the Prepetition ABL Debt and DIP ABL Obligations, the termination of, providing cash collateral in respect of, or providing other security or treatment as agreed between the Debtors and the applicable Prepetition Secured Party, all outstanding letters of credit and "Secured Bank Product Obligations" (as such term is defined in the Prepetition ABL Credit Agreement and DIP ABL Credit Agreement) that compose a portion of the Prepetition ABL Debt or DIP ABL Obligations, as set forth in the Prepetition ABL Credit Agreement or DIP ABL Credit Agreement, respectively, (iv) with respect to the Prepetition ABL Debt and DIP ABL Obligations, the cash collateralization in respect of any asserted or threatened claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which any Prepetition ABL Secured Party, any DIP ABL Secured Party, Prepetition ABL Agent or DIP ABL Agent may be entitled to indemnification by any Debtor pursuant to the indemnification provisions in the Prepetition ABL Documents and DIP ABL Documents, as applicable, and (v) with respect to the Prepetition ABL Debt and DIP ABL Obligations, the delivery of a payoff letter (in form and substance satisfactory to Prepetition ABL Agent and DIP ABL Agent) and delivery of a general release (in form and substance satisfactory

to Prepetition ABL Agent and DIP ABL Agent) of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition ABL Documents and the DIP ABL Documents.

(iii)    *Prepetition ABL Liens and Prepetition ABL Priority Collateral*.  As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties, a first priority security interest in and continuing lien on (the "**Prepetition ABL Liens**") the Revolving Facility Collateral (as defined in that certain Prepetition Intercreditor Agreement referred to below) (which, for the avoidance of doubt, includes Cash Collateral) in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition ABL Priority Collateral**"), subject only to Prepetition ABL Permitted Prior Liens (as defined herein).

(iv)    *Prepetition Term Loan Facility*.  Pursuant to that certain Term Loan Credit Agreement dated November 12, 2015 (as amended, restated, amended and restated, supplemented, waived or otherwise modified and as in effect on the Petition Date, the "**Prepetition Term Loan Credit Agreement**" and, together with the Prepetition ABL Credit Agreement, the "**Prepetition Credit Agreements**," and collectively with the Credit Documents (as defined in the Prepetition Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time the "**Prepetition Term Loan Documents**," and together with the Prepetition ABL Documents, the "**Prepetition Debt Documents**") among the Company, as borrower (the "**Prepetition Term Borrower**" and, together with the Prepetition ABL Borrowers, the "**Prepetition Borrowers**"), the guarantors party thereto (the "**Prepetition Term Loan**

Guarantors"), the lenders party thereto (the "**Prepetition Term Loan Lenders**"), Bank of America, N.A. as administrative agent (in such capacity, the "**Prepetition Term Loan Agent**" and together with the Prepetition Term Loan Lenders, the "**Prepetition Term Loan Secured Parties**," the Prepetition Term Loan Secured Parties, together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**") the Prepetition Term Loan Lenders provided term loans to the Prepetition Term Borrower pursuant to the Prepetition Term Loan Documents (the "**Prepetition Term Loan Facility**" and together with the Prepetition ABL Credit Facility, the "**Prepetition Facilities**").

(v)     *Prepetition Term Loan Debt*.  The Prepetition Term Loan Facility provided the Prepetition Term Borrower with term loans in the aggregate principal amount of $1,150,000,000.00.  As of the Petition Date, the Prepetition Term Borrower and the Prepetition Term Loan Guarantors were justly and lawfully indebted and liable to the Prepetition Term Loan Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of $949,000,000 in respect of loans made by the Prepetition Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Term Loan Documents, (collectively, together with accrued and unpaid interest and all other "Obligations" as defined in the Prepetition Term Loan Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Term Loan Debt**," and collectively with the Prepetition ABL Debt, the "**Prepetition Secured Debt**"), which Prepetition Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition Term Loan Guarantors.

(vi)     *Prepetition Term Liens and ABL Excluded Collateral*.  As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Term Borrower and the Prepetition Term Loan Guarantors granted to the Prepetition Term Loan Agent,

for the benefit of itself and the Prepetition Term Loan Lenders, a security interest in and continuing lien on (the "**Prepetition Term Liens**," and together with the Prepetition ABL Liens, the "**Prepetition Liens**") substantially all of their assets and property, including, (a) a first priority (subject to certain permitted liens) security interest in and continuing lien on the "**ABL Excluded Collateral**" (as defined in the Prepetition Intercreditor Agreement; ABL Excluded Collateral together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**"), and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral and the Prepetition Term Loan Permitted Prior Liens (as defined herein).

(vii)    *Validity, Perfection and Priority of Prepetition ABL Liens and Prepetition ABL Debt*.  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition ABL Priority Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, not subordinated and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "**Prepetition ABL Permitted Prior Liens**"); (c) the Prepetition ABL Debt constitutes legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Debt exist, and no portion of the Prepetition ABL Liens or Prepetition

ABL Debt is subject to any challenge or defense including, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees (in their capacities as such) arising out of, based upon or related to the Prepetition ABL Credit Facility; and (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition ABL Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Debt.

(viii)   *Validity, Perfection and Priority of Prepetition Term Liens and Prepetition Term Loan Debt*.   The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition Term Liens on the Prepetition Collateral were valid, binding, non-avoidable, enforceable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Secured Parties; (b) the Prepetition Term Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, and (2) certain liens senior by operation of law or otherwise permitted by the Prepetition Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Liens as of the Petition Date, the "**Prepetition Term Loan Permitted Prior Liens**" and, together with the Prepetition ABL Permitted Prior Liens, the "**Permitted Prior Liens**"); (c) the Prepetition Term Loan Debt constitutes legal, valid and binding obligations of the Debtors enforceable in

accordance with the terms of the applicable Prepetition Term Loan Documents; and (d) the Debtors waive, discharge, and release any right to challenge the extent and priority of the liens securing the Prepetition Term Loan Debt.

(ix)    *Value of Prepetition Liens and Prepetition Claims*.  The aggregate value of the Prepetition ABL Priority Collateral exceeds the aggregate amount of the Prepetition ABL Debt and the claims of the Prepetition ABL Secured Parties arising under, or secured by, the Prepetition ABL Documents (together with all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code) constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)    *No Control*.  None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Credit Agreements.

(xi)    *No Claims or Causes of Action*.  No claims or causes of action are held by the Debtors or their estates against, or with respect to, the Prepetition Secured Parties or their respective Representative (as defined herein), solely in their respective capacities as such, under the Prepetition Debt Documents.

(xii)    *Release*.  In addition to any releases granted to the Released Parties (as defined below) pursuant to the Interim Period Order (which remain in full force and effect and binding on the Debtors to the extent set forth in the Interim Period Order and are unaffected by entry of this Final Order), effective as of the date of entry of this Final Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured

Parties and their respective Representatives (as defined herein), solely in their respective capacities as such (collectively, the "**Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether matured or unmatured, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order.

(xiii)   *Cash Collateral*.   All of the cash of the Prepetition Borrowers, the Prepetition ABL Guarantors, and the Prepetition Term Loan Guarantors, other than cash held in the "Excluded Deposit Accounts" (as defined in the Prepetition ABL Credit Agreement), to the extent property of such Debtors, including any cash in deposit accounts (whether subject to control agreements or otherwise) constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code, subject to the terms of the Intercreditor Agreements.   All "Deposit Account Control Agreements" (as defined in the Prepetition ABL Credit Agreement) in effect as of the Petition Date shall remain in full force and effect notwithstanding the entry of the Interim Period Order, this Final Order, or any subsequent orders amending this Final Order, and all such Deposit Account Control Agreements shall be deemed to

also be in favor of the DIP ABL Agent in respect of the DIP ABL Obligations and the DIP Term Loan Agent in respect of the DIP Term Obligations.

I.      *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)      Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Credit Agreements.

(ii)      The DIP Loan Parties have a need for the DIP Financing and to continue to use Prepetition Collateral (including Cash Collateral) in order to consummate the prepackaged plan filed contemporaneously herewith, to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, employees and customers, to make payroll, to make capital expenditures, to refinance the Prepetition ABL Debt, and to satisfy other working capital and operational needs and to fund expenses of these Chapter 11 Cases.  The access of the DIP Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the DIP Loan Parties and to a successful reorganization of the DIP Loan Parties.

(iii)      The DIP Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties (x) granting to the DIP Secured Parties, subject to the Carve Out, the DIP Liens and the

DIP Superpriority Claims (as defined herein) and (y), subject to the Carve Out, incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in the Interim Period Order, this Final Order, the Intercreditor Agreements and the DIP Documents.

(iv)     Based on the DIP Motion, the DIP Declaration, the First Day Declaration, and the record presented to the Court at the Initial Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations, and the terms on which the DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to the Interim Period Order, this Final Order, and the DIP Documents are fair and reasonable, reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(v)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed to have consented to the DIP Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the DIP Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in the Interim Period Order, this Final Order, and the DIP Documents.

(vi)     The DIP Financing, the Adequate Protection Obligations, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, and the DIP Secured Parties, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: all DIP Loans made to the DIP Loan Parties pursuant to the DIP Documents and any DIP Obligations (including any "**Secured Bank Product Obligations**" as defined in the DIP ABL Credit Agreement) shall be deemed to have been extended by the DIP Agents and the DIP Secured Parties and their respective affiliates in good

faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agents and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Period Order, this Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

(vii)    The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the DIP Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the DIP Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens (each as defined herein)), in accordance with the terms hereof and the DIP Documents, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that the Interim Period Order, this Final Order, or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

(viii)   The Prepetition Secured Parties are entitled to the adequate protection provided in the Interim Period Order and this Final Order as and to the extent set forth herein and therein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court in connection with the DIP Motion, the Interim Period Order, and this Final Order, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in the Interim Period Order, this Final Order, or the DIP Documents shall (x) be construed as the

affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in the Interim Period Order and this Final Order and in the context of the DIP Financing authorized by the Interim Period Order and this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Prepetition Intercreditor Agreement, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(ix)    Upon entry of the Interim Period Order, the refinancing and replacement of the Prepetition ABL Debt reflected the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties. The Prepetition ABL Lenders and their affiliates that have provided prepetition secured debt to the Debtors would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens (as defined herein), and the DIP Agents and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the DIP Loan Parties thereunder without the roll-up. The roll-up will benefit the Debtors and their estates because it will enable the Debtors to obtain urgently needed financing critical to administering these Chapter 11 Cases and funding their operations.

(x)    Consummation of the DIP Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with the Interim Period Order, this Final Order, and the DIP Documents are in the best interests of the DIP Loan Parties' estates and consistent with the DIP Loan Parties' exercise of their fiduciary duties.

J.       *Permitted Prior Liens; Continuation of Prepetition Liens*.  Nothing in the Interim Period Order or this Final Order shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Notwithstanding anything contained in the Interim Period Order, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the DIP Secured Parties, the Prepetition Secured Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests, subject to the Intercreditor Agreements.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly junior and subject to the Prepetition Liens and the DIP Liens.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facilities, the DIP Documents, and the Prepetition Debt Documents.

K.       *Intercreditor Agreements*.  Except as otherwise expressly modified in the Interim Period Order, this Final Order, in the DIP Intercreditor Agreement or in the other DIP Documents, that certain Intercreditor Agreement dated November 12, 2015 between the Prepetition ABL Agent, the Prepetition Term Loan Agent and the Credit Parties party thereto (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "**Prepetition Intercreditor Agreement**") governs the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the Prepetition Collateral and is binding and enforceable in accordance with its terms.  Pursuant to section 510 of the Bankruptcy Code, but subject to the terms of the Interim Period Order, this Final Order, and the DIP Intercreditor Agreement, the Prepetition Intercreditor Agreement and any other applicable intercreditor or subordination

provisions contained in any of the Prepetition Debt Documents (i) shall remain in full force and effect, and (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under the Interim Period Order, this Final Order, or otherwise and the modification of the automatic stay) with respect to the Prepetition Collateral.   Pursuant to the Prepetition Intercreditor Agreement, the Prepetition Term Secured Parties have agreed to not oppose or object to the terms of the DIP Financing or the terms of the Interim Period Order and this Final Order in respect thereof or hereof.   The parties to the Prepetition Intercreditor Agreement stipulate, and the Court hereby finds, that the DIP ABL Facility is a "**Refinancing**" of the Prepetition ABL Credit Facility as such term is used in the Prepetition Intercreditor Agreement, the refinancing of the Prepetition ABL Debt  pursuant to the Interim Period Order and this Final Order shall not be deemed to constitute the "**Senior Discharge Date**" (as defined in the Prepetition Intercreditor Agreement), the DIP ABL Obligations shall be deemed "Revolving Credit Obligations" (as such term is used in the Prepetition Intercreditor Agreement).   The DIP Documents include a Debtor-In-Possession Intercreditor Agreement dated as of the date of the DIP Credit Agreements, between the DIP ABL Agent, the DIP Term Loan Agent and the Debtors party thereto (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Intercreditor Agreement**"; together with the Prepetition Intercreditor Agreement, the "**Intercreditor Agreements**") govern the respective rights, interests, obligations, priority, and positions of the DIP Secured Parties with respect to the Collateral and is binding and enforceable in accordance with its terms.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Financing Approved*.  The relief sought in the DIP Motion is granted, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents, the Interim Period Order, and this Final Order.  All objections to this Final Order, to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2.      *Authorization of the DIP Financing and the DIP Documents*.

    (a)      The DIP Loan Parties are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations in accordance with, and subject to the terms of the Interim Period Order, this Final Order, and the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith.  The DIP ABL Borrowers are hereby authorized to borrow money and incur other financial accommodations pursuant to the DIP ABL Credit Agreement, and the DIP ABL Guarantors are hereby authorized to guaranty the DIP ABL Obligations, subject in each case to any limitations on borrowing under the DIP ABL Documents, which shall be used for all purposes permitted under the DIP ABL Documents, subject to and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents, the Interim Period Order, and this Final Order, including, without limitation, as set forth in paragraphs 16 and 17 herein, the "**Budget**") [4] including, without limitation, to refinance the Prepetition ABL Debt as provided herein (including

---

[4]      A copy of the initial Budget is attached to the Interim Period Order as **Schedule 1**.

the deemed issuance of letters of credit and deemed incurrence of bank product obligations as therein provided), to provide working capital for the DIP Loan Parties and for general corporate purposes and to pay Prepetition ABL Secured Parties Adequate Protection Obligations, interest, fees and expenses in accordance with the Interim Period Order, this Final Order, and the DIP Documents.  The DIP Term Borrower is hereby authorized to borrow money pursuant to the DIP Term Loan Credit Agreement, and deposit such money in the Term Loan Proceeds Account (as defined in the DIP Credit Agreement), and the DIP Term Guarantors are hereby authorized to guaranty the DIP Term Borrower's DIP Term Loan Obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $50 million, which was made fully available upon entry of the Interim Period Order subject to any limitations on borrowing under the DIP Term Documents, which shall be used for all purposes permitted under the DIP Term Documents, subject to and in accordance with the Budget, including, without limitation, to provide working capital for the DIP Loan Parties and for general corporate purposes and to pay Adequate Protection Obligations, interest, fees and expenses in accordance with the Interim Period Order, this Final Order, and the DIP Documents,  in each case in accordance with the Interim Period Order, this Final Order, and the DIP Documents.

(b) In furtherance of the foregoing and without further approval of this Court, and in accordance with the Interim Period Order and this Final Order, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments, certificates, and agreements and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees and expenses in connection with or that may be reasonably required, necessary, or desirable for the DIP Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Loan Parties, the DIP Agents and the requisite DIP Lenders under the DIP ABL Credit Agreement and DIP Term Loan Credit Agreement, as applicable, may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents or other modifications to and payment of amounts owed under the DIP Documents and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), that do not (A) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, (B) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee), (C) modify the definition of "Borrowing Base" (or the definitions used therein in a manner that materially modifies the terms of the Borrowing Base) in the DIP ABL Credit Agreement (it being understood and agreed that this clause (C) shall not affect the DIP ABL Agent's rights to implement reserves in accordance with the terms set forth in the DIP Documents), or (D) shorten the Case Milestones set forth in the DIP Documents;

(iii)    the non-refundable payment to the DIP Agents or the DIP Secured Parties, as the case may be, of all reasonable and documented fees payable under the DIP Debt Documents including, without limitation, unused facility fees, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, exit fees, backstop fees, agency fees, and/or professional fees (which fees shall be irrevocable once paid in accordance with the terms of such DIP Debt Documents, the Interim Period Order, and this Final Order, and shall be deemed to have been, approved upon entry of the Interim Period Order, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement (and in any separate letter agreements between any or all DIP Loan Parties, on the one hand, and any of the DIP Agents and/or DIP Secured Parties, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time (giving effect to the Review Period), including, without limitation, the reasonable and documented fees and

expenses of the professionals retained by (A) the DIP ABL Agent, including

Goldberg Kohn Ltd, as counsel, FTI Consulting, Inc., as financial advisor,

McGlinchey Stafford PLLC, as maritime legal counsel and Bracewell LLP,

as local legal counsel, (B) the DIP Term Loan Agent, including Stroock &

Stroock & Lavan LLP and Haynes and Boone, LLP as legal counsel, and

(C) advisors to the Ad Hoc Group (as defined in that certain Restructuring

Support Agreement, dated January 20, 2020 by and among, *inter alia,* the

Loan Parties and the DIP Term Lenders (the "**Restructuring Support**

**Agreement**")), including Davis Polk & Wardwell LLP, as counsel,

Evercore Group L.L.C., as financial advisor, Winston & Strawn LLP, as

maritime counsel, and Rapp & Krock, PC, as local counsel, and such other

advisors as permitted under the DIP ABL Credit Agreement or the DIP

Term Loan Credit Agreement, as applicable, in each case, as provided for

in the DIP Documents (collectively, the "**DIP Fees and Expenses**"),

without the need to file retention motions or fee applications or to provide

notice to any party; and

(iv)   the performance of all other acts necessary, appropriate, and/or desirable

under or in connection with the DIP Documents.

3.     *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP

Documents shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan

Parties, enforceable against each DIP Loan Party and their estates thereto in accordance with the

terms of the DIP Documents, the Interim Period Order, and this Final Order, and any successors

thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7

of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"). Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agents or any of the DIP Secured Parties, in each case, under, or secured by, the DIP Documents, the Interim Period Order, or this Final Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents.  Without limiting the foregoing, the DIP ABL Obligations shall also include all Secured Bank Product Obligations to the extent arising under the Prepetition ABL Documents (and deemed incurred under the DIP ABL Document) or the DIP ABL Documents.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date (as defined herein), except as provided in paragraph 5 or 27 herein.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined herein)) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.      *Refinancing of the Prepetition ABL Debt.*  Pursuant to the terms of the Interim Period Order and this Final Order, all Prepetition ABL Debt not otherwise repaid, or deemed incurred or deemed issued under the DIP ABL Credit Agreement, including all Prepetition ABL Debt consisting of accrued and unpaid interest, fees, costs, other charges and expenses, shall be repaid, replaced, deemed repaid, deemed issued or deemed incurred, or otherwise replaced, as applicable, as "Obligations" under the DIP ABL Debt Documents subject to the terms therein and herein.  The Prepetition ABL Secured Parties would not consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP ABL Secured Parties would not be willing to provide the DIP ABL Financing or extend credit and other financial accommodations (including letters of credit and bank product obligations) to the DIP Loan Parties thereunder without the refinancing and replacement of the Prepetition ABL Credit Facility by the DIP ABL Facility and the deemed issuance and deemed incurrence of letter of credit obligations and bank product obligations as provided under the DIP ABL Credit Agreement.  All such payment of Prepetition ABL Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with paragraph 23 below that such applications to other Prepetition ABL Debt resulted in the payment of an unsecured prepetition claim of Prepetition ABL Agent and Prepetition ABL Secured Parties.  Any amounts disgorged in connection with any such objection or determination and actually received by the Debtors in cash shall be first applied to reduce the DIP ABL Obligations, dollar-for-dollar.

5.      *Carve Out.*

(a)      <u>Carve Out.</u>  As used in this Final Order, the "**Carve Out**" means (i) all fees required to be paid to (A) the Clerk of the Court and (B) the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice

set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 (and any interest thereon) incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by Interim Period Order, Final Order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and a Creditors' Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP ABL Agent or the DIP Term Loan Agent of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (solely with respect to the Prepetition ABL Priority Collateral and the DIP ABL Collateral), in an aggregate amount in accordance with paragraph 5 hereof; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,000,000.00 incurred after the first business day following delivery by the DIP ABL Agent or the DIP Term Loan Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by Interim Period Order, Final Order, procedural order or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Agent or the DIP Term Loan Agent (acting at the direction of Required Lenders (as defined in the DIP Term Loan Credit Agreement)) to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the DIP Term Loan Agent (if notice is delivered by the DIP ABL Agent), counsel to the DIP ABL Agent (if notice is delivered by the DIP Term Loan Agent), and counsel to a Creditors' Committee (if

appointed), which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in and under the DIP ABL Credit Agreement or the DIP Term Loan Credit Agreement) stating that the Post-Carve Out Trigger Notice Cap has been invoked.

      (b)    <u>Fee Estimates</u>.

      (i)    Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following entry of the Interim Period Order, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "**Estimated Fees and Expenses**") incurred during the preceding week by such Professional Person (through Saturday of such week, the "**Calculation Date**"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Weekly Statement**"); *provided*, *that* within one business day of the delivery of the Carve Out Trigger Notice (such date of delivery, the "**Termination Declaration Date**"), each Professional Person shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.

      (ii)    If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate

unpaid amount of Allowed Professional Fees included in the Budget for such period for such Professional Person; *provided*, *that* such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 5(c) below.

(iii)    Solely as it relates to the DIP ABL Agent and DIP ABL Lenders, any deemed draw and borrowing pursuant to paragraph 5(c)(i)(A) for amounts under subclause (iii) of the definition of Carve Out shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Weekly Statements timely received by the Debtors prior to the Termination Declaration Date *plus*, without duplication, (II) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Budget for the period prior to the Termination Declaration Date (such amount, the "**ABL Professional Fee Carve Out Cap**").

(iv)    The DIP ABL Agent and DIP ABL Lenders shall be entitled to maintain at all times a reserve (the "**Carve Out Reserve**") in an amount (the "**Carve Out Reserve Amount**") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) an amount equal to the amount of Allowed Professional Fees set forth in the Budget for the following week occurring after the most

recent Calculation Date, *plus* (iv) the amounts contemplated under subclauses (i) and (ii) of the definition of Carve Out.

(v)     Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the date of the Interim Period Order, the DIP Loan Parties shall deliver to the DIP ABL Agent (with a copy to the DIP Term Loan Agent) a report setting forth the Carve Out Reserve Amount as of such time (the "**Fee Report**"), and, in setting the Carve Out Reserve, the DIP Agents and DIP Lenders shall be entitled to rely upon such Fee Reports in accordance with the DIP Documents.  Prior to the delivery of the first report setting forth the Carve Out Reserve Amount, the DIP ABL Agent may calculate the Carve Out Reserve Amount by reference to the Budget for subclause (i) of the Carve Out Reserve Amount. Notwithstanding anything herein to the contrary, the DIP ABL Agent may increase the Carve Out Reserve Amount to include additional amounts with respect to any success, completion, commission-based, or other non-hourly fees (other than fees referenced in paragraph 5(d)(vi)) billed by any Professional Person entitled to the benefit of the Carve Out.

(c)     <u>Carve Out Reserves</u>.

(i)     On the Termination Declaration Date, the Carve Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtors for loans under the DIP ABL Credit Agreement in an amount equal to the sum of (x) the amounts set forth in subclauses (a) and (b) of the definition of Carve Out, and (y) the then unpaid amounts of the Allowed Professional Fees in accordance with paragraph 5 hereof (any such amounts actually advanced shall constitute DIP ABL Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall

reduce, on a dollar for dollar basis, the draw requests and DIP Loans pursuant to this paragraph 5(c)(i)). The Debtors shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such unpaid Allowed Professional Fees referred to in paragraph 5(c)(i) (the "**Pre-Carve Out Trigger Notice Reserve**").

(ii)     On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the DIP Loan Parties for loans under the DIP ABL Credit Agreement in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP ABL Loans) and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable loans under the DIP ABL Credit Agreement pursuant to this paragraph 5(c)(ii)). The DIP Loan Parties shall deposit and hold such amounts in a segregated account at the DIP ABL Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**").

(iii)     For purposes of this Final Order, "**Event of Default**" shall mean (a) an Event of Default under and as defined in the DIP ABL Documents,  (b) an Event of Default under and as defined in the DIP Term Loan Documents, (c) the Debtors' commencing, or participating in furtherance of, any solicitation of any plan of reorganization that is not the "Plan" (as defined in the DIP Documents) or such other plan of reorganization as each of the Required ABL Lenders and the Required Term Loan Lenders shall have expressly consented to such treatment in writing, or (d) failure by any Debtor to comply with, perform or observe any term, covenant, agreement or

obligation under the Interim Period Order or this Final Order. On the third business day following the Termination Declaration Date and the deemed requests for the making of loans under the DIP ABL Credit Agreement as provided in this paragraph 5(c), notwithstanding anything in the DIP ABL Credit Agreement to the contrary, including with respect to (1) the existence of an Event of Default under the Interim Period Order, this Final Order, and/or the DIP ABL Credit Agreement, (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any loans under the DIP ABL Credit Agreement (3) any termination of the Commitments under the DIP ABL Facility following an Event of Default, or (4) the occurrence of the Termination Declaration Date, each DIP ABL Lender with an outstanding Commitment under the DIP ABL Facility shall make available to the DIP ABL Agent such DIP ABL Lender's pro rata share of such Commitment under the DIP ABL Credit Agreement.

(iv)     For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien priorities or superpriority claims granted pursuant to this Final Order to secure payment of the Carve Out shall be limited to any shortfall in funding as provided below.

(d)     <u>Application of Carve Out Reserves</u>.

(i)     All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subclauses (i) through (iii) of the definition of Carve Out (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations until the Payment in Full of the DIP ABL Obligations, *second* to the Prepetition ABL Agent until the Payment in Full of the applicable

Prepetition ABL Debt, *third* to the DIP Term Loan Agent on account of the DIP Term Loan Obligations until the Payment in Full of the DIP Term Loan Obligations, and *fourth* to the Debtors.

(ii)     All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subclause (iv) of the definition of Carve Out (the "**Post-Carve Out Amounts**").  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the DIP ABL Agent on account of the applicable DIP ABL Obligations until the Payment in Full of the DIP ABL Obligations, *second* to the Prepetition ABL Agent on account of the applicable Prepetition ABL Debt, *third* to the DIP Term Loan Agent on account of the DIP Term Loan Obligations until the Payment in Full of the DIP Term Loan Obligations, and *fourth* to the Debtors.

(iii)     Notwithstanding anything to the contrary in the Prepetition Debt Documents, the DIP Documents, the Interim Period Order, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 5(d), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the DIP ABL Agent or the Prepetition ABL Agent, as applicable.

(iv)     Notwithstanding anything to the contrary in the Prepetition Debt Documents, DIP Debt Documents, the Interim Period Order, or this Final Order, following the third business day after delivery of a Carve Out Trigger Notice, the DIP Agents and Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but

shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (ii) and (iii) above.

(v)     Notwithstanding anything to the contrary in the Interim Period Order or this Final Order, (A) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (B) subject to the limitations with respect to the DIP ABL Agent, DIP ABL Secured Parties, Prepetition ABL Agent and Prepetition ABL Secured Parties set forth in paragraph 5(b), above, in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(vi)    Notwithstanding anything to the contrary in the Interim Period Order or this Final Order, in no event shall any completion fee or similar restructuring fee for Greenhill & Co., LLC be included in the Pre-Carve Out Amounts or the ABL Professional Fee Carve Out Cap or be entitled to be paid from the Pre-Carve Out Trigger Notice Reserve.  Any such fee that is an Allowed Professional Fee shall be entitled to share *pro rata* in the Post-Carve Out Amounts.

(e)     *Reservation of Rights*.  Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation of any Professional Person with respect to the Carve Out provisions.

(f)     *No Direct Obligation To Pay Allowed Professional Fees*.  The DIP ABL Agent, the DIP Term Loan Agent, the DIP ABL Secured Parties, and the DIP Term Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in the Interim Period Order, this Final Order,

or otherwise shall be construed to obligate the DIP ABL Agent, the DIP Term Loan Agent, the DIP ABL Secured Parties, and the DIP Term Lender, or the Debtors, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

6.       *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, effective as of the Petition Date, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("**Avoidance Actions**") but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")) in accordance with the DIP Credit Agreements, the Intercreditor Agreements, the Interim Period Order, and this

Final Order, subject only to the liens on such property and the Carve Out.  The DIP Superpriority

Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event

that the Interim Period Order, this Final Order, or any provision hereof or thereof is vacated,

reversed or modified, on appeal or otherwise.  The DIP Superpriority Claims shall be senior to the

507(b) Claims (as defined herein).

      7.    *DIP ABL Liens and DIP Term Liens*.

      (a)    *DIP ABL Liens*.  As security for the DIP ABL Obligations, effective and

automatically and properly perfected upon the date of the Interim Period Order and without the

necessity of the execution, recordation or filing by the DIP ABL Loan Parties of mortgages,

security agreements, control agreements, pledge agreements, financing statements, notation of

certificates of title for titled goods or other similar documents, or the possession or control by the

DIP ABL Agent of, or over, any DIP Collateral, the following security interests and liens are

hereby granted to the DIP ABL Agent for its own benefit and the benefit of the DIP ABL Secured

Parties (all property identified in clauses (i) through (iii) below (but excluding in each case the

Excluded Property (as defined in the DIP Documents), the Excluded Deposit Accounts (as defined

in the ABL DIP Credit Agreement),  and any other exclusion from the definition of "Collateral"

in the DIP ABL Credit Agreement) (collectively, "**Excluded Assets**")) being collectively referred

to as the "**DIP ABL Collateral**"), subject only to the Carve Out (all such liens and security

interests granted to the DIP ABL Agent, for its benefit and for the benefit of the DIP ABL Secured

Parties, pursuant to the Interim Period Order, this Final Order, and the DIP ABL Documents, the

"**DIP ABL Liens**"), subject to the Intercreditor Agreements:

      (i)    *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the

            Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected,

first priority senior security interest in and lien upon all prepetition and postpetition property of the DIP ABL Loan Parties, including the Term Loan Proceeds Account, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien or is subject to a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the DIP Loan Parties (whether maintained with any of the DIP Agents or otherwise) (the "**Unencumbered Property**"), in each case other than:  (i) the Excluded Assets (as defined in the DIP ABL Credit Agreement), but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets and (ii) the Avoidance Actions, but subject to the Carve Out (but in accordance with paragraph 5 hereof), Avoidance Proceeds shall not be excluded, which security interest and lien on such Unencumbered Property securing the DIP ABL Obligations shall be senior to the security interest and lien on such Unencumbered Property securing the DIP Term Loan Obligations;

(ii)     *Liens Priming Certain Prepetition Secured Parties' Liens*.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all Prepetition ABL Priority Collateral, regardless of where located, regardless of whether or not any liens on such assets are voided,

avoided, invalidated, lapsed or unperfected, which shall prime the Prepetition ABL Liens and the Prepetition Term Liens (the "**DIP ABL Priming Liens**").  Notwithstanding anything herein to the contrary, the DIP ABL Priming Liens shall be (i) subject and junior to the Carve Out in all respects (but in accordance with paragraph 5 hereof), (ii) junior to the Prepetition ABL Permitted Prior Liens, (iii) senior in all respects to the Prepetition ABL Liens, (iv) senior to the Adequate Protection Liens and (v) senior to the DIP Term Liens and Prepetition Term Liens on such Prepetition ABL Priority Collateral.  The Prepetition ABL Liens shall be primed by and made subject and subordinate to the Carve Out (but in accordance with paragraph 5 hereof) and the DIP ABL Priming Liens on Prepetition ABL Priority Collateral, but the DIP ABL Priming Liens shall not prime the Prepetition ABL Permitted Prior Liens; and

(iii)    *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject to the Carve Out (but in accordance with paragraph 5 hereof), a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all prepetition and postpetition property of the DIP ABL Loan Parties other than the Prepetition ABL Priority Collateral that, on or as of the Petition Date, is subject to a valid, perfected and non-avoidable lien, which shall be junior to the Prepetition ABL Permitted Prior Liens and, solely with respect to the ABL Excluded Collateral, junior to the DIP Term Liens, Prepetition Term Liens and the Prepetition Term Loan Adequate Protection Liens.

(b)     *DIP Term Liens*.  As security for the DIP Term Loan Obligations, effective and perfected upon the date of the Interim Period Order and without the necessity of the execution, recordation or filing by the DIP Term Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Term Loan Agent of, or over, any Collateral, security interests and liens are hereby granted to the DIP Term Loan Agent for its own benefit and the benefit of the DIP Term Lenders (all property identified in clauses (i) through (iii) below (but excluding in each case Excluded Assets) being collectively referred to as the "**DIP Term Loan Collateral**," and collectively with DIP ABL Collateral, the "**DIP Collateral**"; all DIP Collateral other than the ABL Excluded Collateral is hereinafter referred to as the "**DIP ABL Priority Collateral**"), subject only to the payment of the Carve Out (all such liens and security interests granted to the DIP Term Loan Agent, for its benefit and for the benefit of the DIP Term Lenders, pursuant to the Interim Period Order, this Final Order, and the DIP Term Documents, the "**DIP Term Liens**" and, together with the DIP ABL Liens, the "**DIP Liens**"), subject to the Intercreditor Agreements:

(i)     *Liens On Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all Unencumbered Property, in each case other than:  (i) the Excluded Assets, but including the proceeds of such Excluded Assets that do not otherwise constitute such Excluded Assets; and (ii) the Avoidance Actions, but subject to the Carve Out, Avoidance Proceeds shall not be excluded, which security interest and lien on such Unencumbered Property securing the DIP Term Loan Obligations shall be

junior to the security interest and lien on such Unencumbered Property securing the DIP ABL Obligations;

(ii)     *Liens Priming Certain Prepetition Secured Parties' Liens*.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon the ABL Excluded Collateral, regardless of where located, regardless whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which shall prime the Prepetition Term Liens (the "**DIP Term Priming Liens**").  Notwithstanding anything herein to the contrary, the DIP Term Priming Liens shall be (i) subject and junior to the Carve Out in all respects, (ii) junior to the Prepetition Term Loan Permitted Prior Liens, (iii) senior in all respects to the Prepetition Term Liens, (iv) senior to Prepetition Term Loan Adequate Protection Liens and (v) senior to the DIP ABL Liens on such ABL Excluded Collateral.  The Prepetition Term Liens shall be primed by and made subject and subordinate to the Carve Out and the DIP Term Priming Liens on ABL Excluded Collateral, but the DIP Term Priming Liens shall not prime the Prepetition Term Loan Permitted Prior Liens; and

(iii)    *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject to the Carve Out, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all prepetition and postpetition property of the DIP ABL Loan Parties other than the ABL Excluded Collateral that, on or as of the Petition Date,

is subject to a valid, perfected and non-avoidable lien, which shall be (i) junior to the Prepetition Term Loan Permitted Prior Liens, (ii) junior to the DIP ABL Liens, Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens and (iii) senior to the Prepetition Term Loan Liens.

(c)     *Liens on Specified Real Property.*  Notwithstanding anything to the contrary contained in the Interim Period Order, this Final Order, or the DIP Documents, the DIP ABL Collateral shall not contain any real property other than the "**Specified Real Property**" (as defined in the DIP ABL Credit Agreement) until the DIP ABL Agent and each DIP ABL Lender shall have received (i) all flood insurance documentation and completed all diligence and coverage in accordance with the Flood Disaster Protection Act of 1973, as amended and (ii) in the event that any such real property is located in any area that has been designated by the Federal Emergency Management Agency as a "Special Flood Hazard Area", evidence that the Debtors have maintained flood insurance with respect to such real property (including any personal property which is located thereon) complying with the Flood Disaster Protection Act of 1973, as amended from time to time, in amounts and otherwise satisfactory to all DIP ABL Lenders. Effective upon the satisfaction of such preceding conditions, the DIP ABL Collateral will include such Specified Real Property in respect of which such conditions have been satisfied.  Subject to the Carve Out, the Debtors shall not permit any person other than the DIP ABL Agent and the DIP Term Loan Agent to obtain directly or indirectly any lien (as adequate protection or otherwise) over the Real Property of any Debtor other than the DIP ABL Agent's and the DIP Term Loan Agent's liens over the Specified Real Property (set forth on Schedule S-1 to the DIP ABL Credit Agreement) and the Debtors shall not sell, dispose or otherwise transfer any such Specified Real Property without the consent of the DIP Agents (with respect to the DIP Term

Loan Agent, acting at the direction of Required Lenders (as defined in the DIP Term Loan Credit Agreement)). Such Specified Real Property shall remain property of each Debtor's estate (and the value of any interest in Real Property securing the Prepetition ABL Obligations as of the Petition Date) will be preserved for the benefit of such Debtor's estate in the same manner that avoided transfers are preserved for the benefit of the estate under § 551 of the Bankruptcy Code, and any junior liens in such property shall be and remain junior in all respects to the estate's interest in such real property; provided that with respect to any parcel of such Real Property, after the DIP ABL Agent has received confirmation from each DIP ABL Lender that such DIP ABL Lender has completed its flood insurance diligence, has received copies of all flood insurance documentation and has confirmed that flood insurance compliance has been completed as required by the Flood Laws (as defined in the DIP ABL Credit Agreement) or as otherwise satisfactory to such DIP ABL Lender, then pursuant to this Final Order such parcel of Real Property shall be automatically become DIP ABL Priority Collateral (defined below) and DIP ABL Collateral, for the benefit of the DIP ABL Secured Parties, as security for the DIP ABL Obligations, but subject to the Carve Out.

8.     *Maintenance of Letters of Credit and Secured Bank Product Obligations.* Upon entry of the Interim Period Order, all letters of credit issued under and all Secured Bank Product Obligations incurred under the Prepetition ABL Credit Agreement continued in place and shall continue in place and all obligations under or in connection with such letters of credit were deemed issued under and shall be deemed issued under, and all obligations under or in connection with such Secured Bank Product Obligations, deemed incurred under, and otherwise subject to the DIP ABL Credit Agreement and shall constitute DIP ABL Obligations. To the extent permitted by the DIP Documents, the DIP ABL Borrowers are authorized to maintain and renew letters of credit

issued or deemed issued under the DIP Credit Agreements, and incur or deemed to have incurred Secured Bank Product Obligations, on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto on an uninterrupted basis.

9.      *Protection of DIP Secured Parties' Rights*.

(a)      So long as there are any DIP Obligations outstanding or any DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreements), then with respect to any DIP Collateral, the Prepetition Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Agreements, the Interim Period Order, or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, or the Adequate Protection Liens except to the extent required by an order of this Court; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of all DIP Obligations and termination of the Commitments), to the extent such transfer, disposition, sale or release is permitted under the applicable DIP Documents; and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Collateral unless, solely as to this clause (iii), any of the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)) or the DIP Secured Parties file financing statements or other documents to perfect the liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(b)        Unless the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)), the Prepetition ABL Agent and the Prepetition Term Loan Agent (acting at the direction of the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement)) shall have provided their prior written consent or all DIP Obligations and all Adequate Protection Obligations have been indefeasibly paid in full in cash and the lending commitments under the DIP Facilities have terminated (including Payment in Full of all Prepetition ABL Debt and DIP ABL Obligations), there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following:  (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and/or the 507(b) Claims except as expressly set forth in this Final Order or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents, the Interim Period Order, and this Final Order; (iii) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; or (iv) any modification of any of the DIP Agents', DIP Secured Parties', or the Prepetition Secured Parties' rights under the Interim Period Order, this Final Order, or the DIP Documents with respect to any DIP Obligations, Adequate Protection Obligations, or other obligations or rights under the Interim Period Order or this Final Order.

(c)     Until the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash (including Payment in Full of all Prepetition ABL Debt and DIP ABL Obligations), the Debtors shall (i) maintain books, records, and accounts to the extent and as required by the DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the DIP Secured Parties all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by such parties) to provide under the DIP Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit, the DIP Secured Parties and the Prepetition Secured Parties, and their respective advisors to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents; (iv) permit the DIP Secured Parties and the Prepetition Secured Parties, and their respective advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets; and (v) upon reasonable advance notice, permit the DIP Secured Parties and the Prepetition Secured Parties to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and the Prepetition Collateral in accordance with the DIP Documents and the Prepetition Debt Documents.

(d)      To the extent any Prepetition Secured Party has possession of any Collateral or has control with respect to any Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or exercise such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the applicable DIP Agent and the DIP Secured Parties and shall comply with the instructions of the applicable DIP Agent (with respect to the DIP Term Loan Agent, acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)) with respect to the exercise of such control and the applicable DIP Agent agrees, and shall be deemed, without incurring any liability or duty to any party, to maintain possession or control of any Prepetition Collateral in its possession or control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Prepetition Secured Parties, including with respect to bank accounts.

(e)      Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents or hereunder, notwithstanding the automatic stay provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before or order from the Court, but subject to the terms of this Final Order (including the Carve Out) and the Intercreditor Agreements, each of the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)) may declare (any such declaration, a "**Termination Notice**") (A) the termination, reduction or restriction of any further Commitment to the extent any such Commitment remains, and, except as otherwise provided below in this paragraph 9(e) below, the termination of authorization to use Cash Collateral, (B) all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Loan Parties, (C) the termination of the applicable

DIP Documents as to any future liability or obligation of the applicable DIP Agent or DIP Secured Parties (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations) and (D) demand cash collateral as provided for in the applicable DIP Documents. The Termination Notice shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the DIP ABL Agent (if delivered by the DIP Term Loan Agent), counsel to the DIP Term Loan Agent (if delivered by the DIP ABL Agent), counsel to a Creditors' Committee (if appointed), and the U.S. Trustee.  The DIP Secured Parties shall be entitled to seek an expedited hearing (a "**Remedies Hearing**") on three business days' notice (subject to the Court's availability) for an order modifying the automatic stay in the Chapter 11 Cases such that: (a) the applicable DIP Secured Parties shall be entitled to exercise their rights and remedies, subject to the Intercreditor Agreements and in accordance with the respective DIP Documents and this Final Order, to satisfy the relevant DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out, and (b) the applicable Prepetition Secured Parties shall be entitled to exercise their rights and remedies, subject to the Intercreditor Agreements and in accordance with the applicable Prepetition Documents and this Final Order, to satisfy the relevant 507(b) Claims (as defined herein) and Adequate Protection Liens (as defined herein), subject to the Carve Out.  Subject to paragraph 5 hereof) the sole issue that the Debtors may bring before the Court at any such Remedies Hearing is whether an Event of Default has occurred and/or is continuing. Upon the Termination Notice or the occurrence of the DIP Termination Date (as defined in the DIP Documents), without further notice or order of the Court, the Debtors' authorization to use Cash Collateral and incur DIP Financing hereunder will automatically terminate and the DIP Secured Parties will have no obligation to provide any DIP Loans or other financial accommodations; *provided*, until the resolution of the Remedies Hearing, (x) the Debtors may

use Cash Collateral to pay accrued and unpaid employee wages and benefits payable in the ordinary course in accordance with the Budget and (y) the Debtors may request DIP Loans or use Cash Collateral to pay the Carve Out to the extent set forth herein.  At the conclusion of the hearing, the Court may impose any appropriate remedy.

(f)       In no event shall the DIP Agents, DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral, absent the express written consent of the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)), the Prepetition Term Loan Agent (acting at the direction of the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement)), and the Prepetition ABL Agent (as applicable).  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(g)       No rights, protections or remedies of the DIP Agents or the DIP Secured Parties granted by the provisions of the Interim Period Order, this Final Order or any DIP Documents shall be limited, modified or impaired in any way by:  (i) any actual or purported withdrawal of the consent of any party to the DIP Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the DIP Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the DIP Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

(h)       If a DIP Agent takes any enforcement action with respect to the Collateral, the applicable Prepetition Secured Parties and DIP Loan Parties (i) shall cooperate with the applicable DIP Agent (subject to the condition that no Prepetition Secured Party shall have any obligation or duty to take any action, or refrain from taking any action, that could reasonably be

expected to result in the incurrence of any liability or damage to any Prepetition Secured Party) in its efforts to enforce its security interest in the Collateral, and (ii) shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such DIP Agent from enforcing their security interests in the Collateral; *provided* that the actions of a DIP Agent with respect to any enforcement action shall at all times be subject to, and in accordance with, the Intercreditor Agreements; *provided*, *further*, the Prepetition Secured Parties shall be indemnified and held harmless to the extent provided in any applicable Prepetition Debt Document for any loss, liability or obligation incurred in connection with any of the foregoing.

10. *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Term Loan Agent (acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)) and the DIP ABL Agent, the Prepetition ABL Agent (prior to the ABL Satisfaction Date), or the Prepetition Term Loan Agent, as the case may be, that holds a lien on the relevant asset, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agents, the DIP Secured Parties, the Prepetition ABL Agent or the Prepetition Term Loan Agent, and nothing contained in the Interim Period Order or this Final Order shall be deemed to be a consent by the DIP Agents, the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

11.    *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Agents (on their own behalf or on behalf of the DIP ABL Secured Parties or the DIP Term Loan Secured Parties) or the Prepetition Secured Parties pursuant to the provisions of the Interim Period Order, this Final Order, or any subsequent order of the Court shall, subject to the reservation of rights set out in paragraph 23 of this Final Order, be irrevocably received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

12.    *Use of Cash Collateral*.  The DIP Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order and the DIP Documents (including the Budget subject to the Permitted Variance), to use all Cash Collateral, and the Prepetition Secured Parties are directed promptly to turn over to the DIP Loan Parties all Cash Collateral received or held by them (other than any Cash Collateral received or held by such Prepetition Secured Party in connection with any Secured Bank Product Obligations continuing to be provided after the Petition Date and other than as set forth in the Emergency Motion of Debtors for an Order (i) Authorizing Debtors to (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms, (C) Continue Intercompany Arrangements, and (D) Continue Using Credit Cards; (II) Granting an Extension of Time to Comply With Requirements of 11 U.S.C.§§345(B); and (III) Granting Related Relief; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth, and (b) except on the terms and conditions of this Final Order, the DIP Loan Parties shall be enjoined and prohibited from, at any time, using the Cash Collateral absent further order of the Court.

13.    *Disposition of DIP Collateral*.

(a)    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP ABL Agent and the Prepetition ABL Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP ABL Secured Parties or the Prepetition ABL Secured Parties, or from any order of this Court), except as otherwise provided for in the DIP ABL Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreements.

(b)    The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Term Loan Agent (acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)) (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Term Loan Secured Parties or the Prepetition Term Loan Secured Parties, or from any order of this Court), except as otherwise provided for in the DIP Term Documents or otherwise ordered by the Court, and subject to the Intercreditor Agreements.

14.    *Adequate Protection of Prepetition ABL Secured Parties*.  The Prepetition ABL Secured Parties are entitled pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition ABL Priority Collateral, including the Cash Collateral, for any reason provided for under the Bankruptcy Code, including, without limitation, the aggregate diminution in value (the "**ABL Diminution in Value**") of the Prepetition ABL Secured Parties' interests in the Prepetition ABL Priority Collateral resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in

value) of the Prepetition ABL Priority Collateral, the priming of the Prepetition ABL Liens by the DIP ABL Liens pursuant to the DIP ABL Documents and this Final Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from the Petition Date through the date of entry of this Final Order.  Nothing herein shall impair or modify the application of section 507(b) in the event that the adequate protection provided to the Prepetition ABL Secured Parties under the Interim Period Order or this Final Order is insufficient to compensate for the ABL Diminution in Value.  Providing the Prepetition ABL Secured Parties Adequate Protection Obligations to the Prepetition ABL Secured Parties shall not be deemed an admission that the respective interests of the Prepetition ABL Secured Parties are adequately protected.  This Final Order shall not prejudice or limit the rights of the Prepetition ABL Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection. As adequate protection, the Prepetition ABL Secured Parties are hereby granted the following, in each case, subject to the Carve Out and the Intercreditor Agreements (but in accordance with paragraph 5 hereof) (collectively, the "**Prepetition ABL Secured Parties Adequate Protection Obligations**"):

(a)     Prepetition ABL Adequate Protection Liens.   Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Prepetition ABL Agent (for itself and for the benefit of the Prepetition ABL Secured Parties) is hereby granted (effective and perfected upon the date of the Interim Period Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) a continuing, binding, enforceable, valid, perfected, replacement security interest in and lien (the "**Prepetition ABL Adequate Protection Liens**") (subject to the limitations set forth above) upon the DIP Collateral including, but not limited to, the Term Loan Proceeds Account (it being understood

that, the Prepetition ABL Adequate Protection Liens (as defined herein) shall attach to Avoidance Proceeds, which shall be senior to the Prepetition Term Loan Adequate Protection Liens on such Avoidance Proceeds) to secure the ABL Diminution in Value, subject and subordinate only to (i) the DIP ABL Liens (and any liens to which the DIP ABL Liens are junior) (ii) in the case of the ABL Excluded Collateral, the DIP Term Liens (and any liens to which the DIP Term Liens are junior), the Prepetition Term Liens and the Prepetition Term Loan Adequate Protection Liens, and (iii) the Carve Out (but in accordance with paragraph 5 hereof).

(b)  Prepetition ABL Section 507(b) Claim.  The Prepetition ABL Secured Parties are hereby granted, subject to the Carve Out and effective as of the date of the Interim Period Order, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in an amount equal to the ABL Diminution in Value that is not otherwise satisfied pursuant to this paragraph 14, if any, with, except as set forth in the Interim Period Order or this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition ABL 507(b) Claim**").  The Prepetition ABL 507(b) Claim shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions but including, without limitation, the Avoidance Proceeds).  The Prepetition ABL 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall be *pari passu* with the Prepetition Term Loan 507(b) Claim (as defined herein).  Except to the extent expressly set forth in this Final Order or the DIP Credit Agreements, the Prepetition ABL Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition ABL 507(b) Claim unless and until the DIP ABL Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and any claims having a

priority superior to or *pari passu* with the DIP Superpriority Claims in respect of the DIP ABL

Obligations have indefeasibly been paid in cash in full and all Commitments have been terminated

(including the Payment in Full of the DIP ABL Obligations).

(c)     Prepetition ABL Adequate Protection Payments.  Subject to the Carve Out

as set forth in this Final Order, as further adequate protection, the Debtors are authorized and

directed to provide adequate protection to the Prepetition ABL Secured Parties in the form of

payment in cash of solely to the extent that any Prepetition ABL Debt remains outstanding after

the date of entry of the Interim Period Order, interest (at the default rate) due under the Prepetition

ABL Documents, subject to the rights preserved in paragraph 23 below (the "**Prepetition ABL**

**Adequate Protection Payments**").

(d)     Prepetition ABL Agent's Fees and Expenses.  Subject to the Carve Out as

set forth in this Final Order, the Debtors are authorized and directed to provide adequate protection

to the Prepetition ABL Secured Parties in the form of payment in cash (and as to fees and expenses,

without the need for the filing of a formal fee application), subject to the Review Period and

paragraph 19, of the reasonable and documented fees, out-of-pocket expenses, and disbursements

(including the reasonable and documented fees, out-of-pocket expenses, and disbursements of

Goldberg Kohn Ltd., as counsel, FTI Consulting, Inc., as financial advisor, McGlinchey Stafford

PLLC, as maritime legal counsel and Bracewell LLP, as local legal counsel, and other advisors as

provided in the Prepetition ABL Credit Agreement) incurred by the Prepetition ABL Agent arising

subsequent to the Petition Date (collectively, the "**ABL Adequate Protection Fees and**

**Expenses**").  Pursuant to the terms of the DIP ABL Credit Agreement, any contingent

indemnification obligations under the Prepetition ABL Documents shall be "rolled-up" into the

DIP ABL Credit Agreement and, subject to the reservation of rights in paragraph 23 hereof, be obligation of the Debtors.

(e)     Information Rights.  The Debtors shall promptly provide the Prepetition ABL Agent, on its own behalf and on behalf of the Prepetition ABL Secured Parties, respectively, with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agents or the DIP Secured Parties under the DIP Debt Documents.

(f)     The Prepetition ABL Secured Parties Adequate Protection Obligations in subparagraph (e) above shall survive the Payment in Full of the DIP ABL Obligations.  Following any such Payment in Full of the DIP ABL Obligations, the Prepetition ABL Secured Parties Adequate Protection Obligations may be waived, amended, modified or extended from time to time solely by Prepetition ABL Agent or the Required Lenders (as defined in the Prepetition ABL Credit Agreement), each in their sole discretion.

15.     *Adequate Protection of Prepetition Term Loan Secured Parties*.  The Prepetition Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, for any reason provided for under the Bankruptcy Code, including, without limitation, the aggregate diminution in value (the "**Term Diminution in Value**") of the Prepetition Term  Secured Parties' interests in the Prepetition Collateral resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Term Liens by the DIP Liens pursuant to the DIP Documents and this Final Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code from the Petition Date through the date of entry of this Final Order.  Nothing herein shall impair or modify the application of section 507(b) in the event that the adequate protection provided to the Prepetition

Term Loan Secured Parties under the Interim Period Order or this Final Order is insufficient to compensate for Term Diminution in Value.  Providing the Prepetition Term Loan Secured Parties Adequate Protection Obligations to the Prepetition Term Loan Secured Parties shall not be deemed an admission that the respective interests of the Prepetition Term Loan Secured Parties are adequately protected.  Neither the Interim Period Order nor this Final Order shall prejudice or limit the rights of the Prepetition Term Loan Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.  As adequate protection of, the Prepetition Term Loan Secured Parties are hereby granted the following, in each case, subject to the Carve Out and the Intercreditor Agreements (collectively, the "**Prepetition Term Loan Adequate Protection Obligations**," and together with the Prepetition ABL Secured Parties Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)     <u>Prepetition Term Loan Adequate Protection Liens</u>.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Prepetition Term Loan Agent (for itself and for the benefit of the Prepetition Term Loan Lenders) is hereby granted (effective and perfected upon the date of the Interim Period Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) a continuing, binding, enforceable, valid, perfected replacement security interest in and lien (the "**Prepetition Term Loan Adequate Protection Liens**" and together with the Prepetition ABL Adequate Protection Liens, the "**Adequate Protection Liens**") (subject to the limitations set forth above) upon the DIP Collateral (it being understood that Prepetition Term Loan Adequate Protection Liens shall attach to Avoidance Proceeds, which shall be junior to the Prepetition ABL Adequate Protection Liens on such Avoidance Proceeds) to secure the Term Diminution in Value, subject and subordinate only to (i) the DIP Term Liens (and any liens to which the DIP Term

Liens are junior), (ii) in the case of the DIP ABL Priority Collateral, the DIP ABL Liens (and any liens to which the DIP Term Liens are junior), the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens and (iii) the Carve Out.

(b)     Prepetition Term Loan Secured Parties Section 507(b) Claim.     The Prepetition Term Loan Secured Parties are hereby granted, subject to the Carve Out and effective as of the date of the Interim Period Order, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in an amount equal to the Term Diminution in Value that is not otherwise satisfied pursuant to this paragraph 15, if any, with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition Term Loan 507(b) Claim**" and, together with the Prepetition ABL 507(b) Claim, the "**507(b) Claims**").  The Prepetition Term Loan 507(b) Claim shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions but including the Avoidance Proceeds).  The Prepetition Term Loan 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall be *pari passu* with the Prepetition ABL 507(b) Claim.  Except to the extent expressly set forth in this Final Order or the DIP Credit Agreements, the Prepetition Term Loan Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Term Loan 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all Commitments have been

terminated (and in respect of the DIP ABL Obligations, Payment in Full of the DIP ABL Obligations).

(c) <u>Prepetition Term Loan Secured Parties Fees and Expenses</u>. Subject to the Carve Out as set forth in this Final Order, the Prepetition Term Loan Agent shall receive from the DIP Loan Parties, in each case subject to the Review Period, for the benefit of the Prepetition Term Loan Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses payable to (i) the Prepetition Term Loan Agent, including Cahill Gordon & Rendel LLP, as counsel and Norton Rose Fulbright US LLP, as local counsel, and (ii) reasonable and documented prepetition and postpetition fees and expenses payable to the Ad Hoc Group advisors, including Davis Polk & Wardwell LLP, as counsel, Evercore Group L.L.C., as financial advisor, Winston & Strawn LLP, as maritime counsel, and Rapp & Krock, PC, as local counsel, and such other advisors to the Ad Hoc Group and as may be reasonably consented to by the Debtors, which payments shall be made in the manner provided for in paragraph 19 below (together with the ABL Adequate Protection Fees and Expenses, the "**Adequate Protection Fees and Expenses**").

(d) <u>Information Rights</u>. The Debtors shall promptly provide the Prepetition Term Loan Agent, on its own behalf and on behalf of the Prepetition Term Lenders, respectively, with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agents or the DIP Secured Parties under the DIP Debt Documents.

(e) <u>Milestones</u>. Performance of the Case Milestones, in each case as may be waived, amended, modified or extended from time to time in accordance with the Restructuring Support Agreement, or, to the extent the Restructuring Support Agreement is no longer in force and effect, by the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement).

(f)     The Prepetition Term Loan Secured Parties Adequate Protection Obligations in subparagraphs (d) above shall survive any termination of the DIP Term Loan Credit Agreement or the Commitments thereunder.  Following any such termination of the DIP Term Loan Credit Agreement or the Commitments thereunder, the Prepetition Secured Term Loan Adequate Protection Obligations may be waived, amended, modified or extended from time to time solely by the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement) in their sole discretion.

16.     *Budget Maintenance*.  The use of borrowings and other extensions of credit by the Debtors under the DIP Documents and the use of Cash Collateral shall be limited in accordance with the Budget (subject in all respects to the Permitted Variance).  The initial Budget shall depict, on a weekly and line item basis, for the first thirteen (13) week period from the Closing Date (as defined in the DIP Credit Agreements) (A) (i) projected operating receipts, (ii) projected disbursements, including ordinary course operating expenses and bankruptcy-related expenses (including professional fees and expenses, asset sales and any other fees and expenses relating to the DIP Documents), (iii) net cash flow, (iv)  projected Availability (each as defined in the DIP ABL Credit Agreement), and (vi) total available liquidity, and (B) the other items set forth therein and such other information requested by the DIP Agents, and such initial Budget shall be approved by, and in form and substance reasonably satisfactory to, each of the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of Required Lenders (as defined in the DIP Term Loan Credit Agreement)) in their sole discretion (it being acknowledged and agreed that the Budget attached to the Interim Period Order as **Schedule 1** is approved by and satisfactory to the DIP Agents under each of the DIP Credit Agreements).  The Budget shall be updated, modified or supplemented by the Debtors not less than one time each month, and each such updated, modified

or supplemented budget shall be deemed an approved Budget unless either of the DIP Agents (in acting at the direction of the applicable Required Lenders, in their sole discretion) objects by written notice delivered to the Debtors on or within three (3) business days after the receipt of such updated, modified or supplemented budget; *provided*, that in the event that either of the DIP Agents objects, the current approved Budget shall remain the approved Budget until the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of Required Lenders (as defined in the DIP Term Loan Credit Agreement)) and the Debtors agree as to an updated, modified or supplemented Budget.  Each Budget delivered to the DIP Agents shall be accompanied by such supporting documentation as reasonably requested by the DIP Agents.  Each Budget shall be prepared in good faith based upon assumptions that the Debtors believe to be reasonable.  A copy of any Budget (or updated Budget) shall be delivered to counsel for a Creditors' Committee (if appointed) and the U.S. Trustee after it has been approved in accordance with the DIP Documents.

17.     *Budget Compliance*.  The Debtors shall at all times comply with the Budget, subject to the variances permitted under the DIP Credit Agreements; *provided*, that in the case of the fees, costs and expenses of the DIP Agents, the DIP Secured Parties, the Ad Hoc Group and the Adequate Protection Fees and Expenses, the Debtors shall pay such fees, costs, and expenses in accordance with the DIP Documents and this Final Order without being limited by the Budget and such payments shall not be calculated in any variance.  The Debtors shall provide all reports and other information as required in the DIP Credit Agreements (subject to the grace periods provided therein).  The Debtors' failure to comply with the Budget (including the variances permitted under the DIP Credit Agreements) or to provide the reports and other information required in the DIP Credit Agreements shall constitute an Event of Default under the DIP Credit Agreements and an Event of Default hereunder, following the expiration of any applicable grace period set forth in the

DIP Credit Agreements or hereunder and absent a waiver in accordance with the applicable DIP Credit Agreement or hereunder.

18.     *Milestones*.  As a condition to the DIP Facilities and the use of Cash Collateral, the Debtors shall comply with the required milestones (as attached as **Exhibit D** to the DIP Motion) (collectively, the "**Case Milestones**").  Any Case Milestone that would otherwise fall on a Saturday, Sunday or federal holiday will be treated in accordance with Bankruptcy Rule 9006.  For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under (i) each of the DIP Credit Agreements and (ii) this Final Order; and (b) permit the DIP Agents to exercise the rights and remedies provided for in this Final Order and the DIP Documents, subject to the Intercreditor Agreements and the provisions of this Final Order.

19.     *Payment of Fees and Expenses*.  The Debtors are authorized and directed to pay the DIP Fees and Expenses, as provided in the DIP Documents.  Subject to the review procedures set forth in this paragraph 19, payment of all DIP Fees and Expenses and Adequate Protection Fees and Expenses shall not be subject to allowance by the Court.  Professionals for the DIP Secured Parties and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the Creditors' Committee (if appointed) and the U.S.

Trustee.  Any objections raised by the Debtors, the U.S. Trustee or a Creditors' Committee (if appointed) with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice (the "**Review Period**") if after the Review Period an objection remains unresolved, it will be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  No attorney or advisor to the DIP Secured Parties or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (i) the DIP Secured Parties in connection with or with respect to the DIP Facilities; and (ii) except as provided in paragraph 23, the Prepetition Secured Parties in connection with or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

20.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided in the Interim Period Order and herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties, upon a change in circumstances, may request further or different adequate protection, and the Debtors or any other party may contest any such request.  Subject to the Carve Out as set forth in this Final Order, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any diminution in value of their respective interests in the

Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

      21.    *Perfection of DIP Liens and Adequate Protection Liens*.

      (a)    Without in any way limiting the automatically effective perfection of the DIP Liens granted pursuant to paragraph 7 hereof and the Adequate Protection Liens granted pursuant to paragraph 7 hereof, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agents (on behalf of the DIP ABL Secured Parties and DIP Term Loan Secured Parties) or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Period Order.  Upon the reasonable request of a DIP Agent (with respect to the DIP Term Loan Agent, acting at the

direction of Required Lenders (as defined in the DIP Term Loan Credit Agreement)), each of the Prepetition Secured Parties and the DIP Loan Parties, without any further consent of any party, is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the applicable DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  The Prepetition ABL Agent shall serve as agent for DIP ABL Agent for purposes of perfection or control in respect of any DIP Collateral, and deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or similar agreements in which Prepetition ABL Agent has an interest will be deemed to be for the benefit of DIP ABL Agent and DIP ABL Secured Parties without further action by any party, and, to the extent set forth in the DIP Intercreditor Agreement, the DIP ABL Agent will be the gratuitous bailee of the DIP Term Loan Agent for the benefit of the DIP Term Loan Secured Parties with respect to the foregoing.

(b)     Certified Copies of the Interim Period Order and/or this Final Order may, in the discretion of the DIP Agents (with respect to the DIP Term Loan Agent, acting at the direction of Required Lenders (as defined in the DIP Term Loan Credit Agreement)), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Period Order and/or Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agents to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

22.     *Preservation of Rights Granted Under The Interim Period Order and This Final Order.*

(a)     Other than the Carve Out and other claims and liens expressly granted by the Interim Period Order and this Final Order (or permitted under the DIP Credit Agreements), no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Period Order or this Final Order to the DIP Agents, the DIP Secured Parties and the Prepetition Secured Parties shall be granted or allowed while any of the applicable DIP Obligations or Adequate Protection Obligations remain outstanding and the DIP Liens, and Adequate Protection Liens shall <u>not</u> be:

(i)     subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code;

(ii)     subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

(iii)     subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; and

(iv)     subject or junior to any intercompany or affiliate liens or security interests of the DIP Loan Parties.

Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitments have been terminated (including Payment in Full of all Prepetition ABL Debt and DIP ABL

Obligations), the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral if any of the DIP Loan Parties, without the prior written consent of the DIP Term Loan Agent (acting at the direction of the Required Lenders (as defined in the DIP Term Loan Credit Agreement)) and the DIP ABL Agent, seeks, proposes, supports, or consents to or if there is entered or confirmed (in each case, as applicable):  (i) any modifications, amendments or extensions of this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party; (ii) an order converting or dismissing any of the Chapter 11 Cases; (iii) an order appointing a chapter 11 trustee in the Chapter 11 Cases; (iv) an order appointing an examiner with enlarged powers in the Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (v) except to the extent contemplated under the Restructuring Support Agreement, a plan of reorganization that does not provide for immediate Payment in Full of all DIP ABL Obligations, DIP Term Loan Obligations and Prepetition ABL Debt, as applicable (including a general release in favor of the DIP ABL Secured Parties, DIP Term Loan Secured Parties and Prepetition ABL Secured Parties in form and substance satisfactory to the DIP Agents and Prepetition ABL Agent), on the effective date of such plan; or (vi) the sale of all or substantially all of the assets of the DIP Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the Payment in Full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) and the Prepetition ABL Debt upon the consummation thereof.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered:  (i) the DIP Superpriority Claims, the DIP Liens, the 507(b) Claims, the Adequate Protection Liens, the Carve Out and, prior to the ABL Satisfaction Date, the Prepetition ABL

Liens, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order and the Intercreditor Agreements until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (including Payment in Full of all Prepetition ABL Debt and DIP ABL Obligations), and such DIP Superpriority Claims, DIP Liens, 507(b) Claims and Prepetition Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(b)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect:  (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by each of the DIP Agents, the Prepetition ABL Agent or the Prepetition Term Loan Agent as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation, stay or any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the DIP Loan Parties to the DIP Agents, the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agents, the Prepetition ABL Agent or the Prepetition Term Loan Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Agents, the DIP Secured Parties and the

Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and the DIP Documents.

(c)     Except as provided in the Interim Period Order, this Final Order, or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Period Order, this Final Order, and the DIP Documents shall survive, and shall not be modified, impaired or discharged by:  (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and the Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and the Prepetition Secured Debt are indefeasibly paid in full in cash (other than, with respect to the Prepetition Secured Debt, contingent obligation in respect

of unasserted claims), including Payment in Full of all DIP ABL Obligations and Prepetition ABL Debt, as set forth herein and in the DIP Documents and the Prepetition Documents, as applicable, and the Commitments have been terminated.

23.    *Effect of Stipulations on Third Parties*.    The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order shall be binding upon the Debtors in all circumstances and for all purposes.    The Debtors' stipulations, admissions, agreements, and releases contained in this Final Order shall be binding upon all parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:

(a)    except as otherwise provided under any confirmation order and confirmed plan of reorganization in these Chapter 11 Cases, such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court by no later than a date that is the later of (x) if a Creditors' Committee is not appointed, 75 days after entry of the Interim Period Order, (y) if a Creditors' Committee is appointed, 60 days after entry of this Final Order, unless any such later date as has been agreed to, in writing, by the Prepetition ABL Agent or the Prepetition Term Loan Agent (with the consent of the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement)), as applicable, and (z) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the "**Challenge Period**"), (A) objecting to or challenging the

amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt, the Prepetition ABL Liens or the Prepetition Term Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "**Challenge Proceeding**") against the Prepetition Secured Parties or their respective affiliates, subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Agreements, the Prepetition Secured Debt, the Prepetition ABL Liens, the Prepetition Term Liens or the Prepetition Collateral; and

(b)     there is a final non-appealable order in favor of the plaintiff in any such Challenge Proceeding; *provided*, that any pleadings commencing any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; and *provided further*, nothing contained herein shall preclude or otherwise limit the rights of the Creditors' Committee or any party to seek to intervene, or to appear and be heard under 11 U.S.C. § 1109(b).   For the avoidance of doubt, any informal discovery or examination conducted pursuant to Bankruptcy Rule 2004 relating to the foregoing matters or claims shall not be deemed or construed to be a Challenge Proceeding.   If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then:

(a)     the Debtors' stipulations, admissions, agreements, and releases contained in this Final Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee;

(b)     the obligations of the DIP Loan Parties under Prepetition Credit Agreements, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases, and any subsequent chapter 7 case(s);

(c)     the Prepetition ABL Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens;

(d)     and the Prepetition Term Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens; and

(e)     the Prepetition Term Loan Debt, the Prepetition Term Liens, the Prepetition ABL Liens and the Prepetition ABL Debt shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Credit Agreements shall be deemed forever waived, released and barred.

If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in this Final Order, shall nonetheless remain binding and preclusive (as provided in the immediately preceding sentence and including subparagraphs (a) through (e) above) on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. If any party in interest (including the

Creditors' Committee) identifies a basis to assert a Challenge Proceeding, it must notify the Debtors during the Challenge Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto.  From the date that the Debtors are so notified, the Debtors shall have five days to notify such party in interest of whether the Debtors intend to initiate or settle such action and ten days to initiate such action, settlement motion or adversary proceeding.  If the Debtors notify such party in interest that the Debtors to not intend to initiate an action, settlement or adversary proceeding, such party in interest shall have ten days from the receipt of such notice to seek standing to initiate an action or adversary proceeding.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Credit Agreements, the Prepetition Secured Debt, the Prepetition ABL Liens and the Prepetition Term Liens.  If the Debtors are timely notified of any potential Challenge Proceeding, the Debtors shall retain authority to prosecute, settle or compromise any such Challenge Proceeding in the exercise of their business judgment and subject to any applicable further order of this Court.

24. *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Loans, Cash Collateral, DIP Collateral, Prepetition Collateral, proceeds of any of the foregoing or the Carve Out may be used to:

(a)    permit the Debtors, or any other party in interest, or their representatives to challenge or otherwise contest or institute any proceeding to determine (x) the amount, validity, perfection or priority of security interests in favor of any of the DIP Secured Parties or the Prepetition Secured Parties or (y) the amount, validity or enforceability of the obligations of the Debtors under the DIP Credit Agreements or the Prepetition Credit Agreements,

(b)      subject to paragraph 5 hereof, prevent, hinder or otherwise delay any of the DIP Agents or the Prepetition Secured Parties' assertion, enforcement or realization on the Collateral in accordance with the DIP Documents, the Prepetition Credit Agreements, the Interim Period Order, or this Final Order, other than to seek a determination that an Event of Default has not occurred or is not continuing,

(c)      seek to modify any of the rights granted to the DIP Agents, the DIP Secured Parties or the Prepetition Secured Parties under the Interim Period Order, this Final Order, the DIP Documents or the Prepetition Debt Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion,

(d)      pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including, without limitation, hereunder) and (ii) permitted under the DIP Documents,

(e)      investigate, commence, prosecute or defend any claim, motion, proceeding, or cause of action, or assert any defense or counterclaim, against any of the DIP Secured Parties or the Prepetition Secured Parties, each in such capacity, and their respective agents, attorneys, advisors or representatives, including, in each case, without limitation, lender liability claims or claims pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise,

(f)      use or seek to use Cash Collateral or incur indebtedness in violation of the terms hereof or the DIP Documents,

(g)      sell or seek to sell any of the Collateral unless such sales are permitted under this Final Order or the DIP Documents;

*provided* that, notwithstanding anything to the contrary herein, the Creditors' Committee may use the proceeds of the DIP Loans, Collateral (including Cash Collateral) and/or the Carve Out (subject to paragraph 5 hereof), in an aggregate amount not to exceed $50,000**,** to investigate (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties; *provided further* the Debtors may use the proceeds of the DIP Loans, Collateral (including Cash Collateral) and/or the Carve Out in connection with its analysis of any demand made on the Debtors pursuant to paragraph 23 (including the analysis and negotiation of any settlement of such a demand) and *provided further* that neither the Debtors nor the Creditors' Committee shall use DIP Loans, Collateral (including

Cash Collateral) and/or the Carve Out to prosecute any objections to claims or liens, or to pursue any claims, counterclaims, causes of action, or defenses against any of the DIP ABL Secured Parties, the DIP Term Loan Secured Parties, or the Prepetition ABL Secured Parties.

25.     *Limits to Lender Liability*.   Nothing in this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents or any DIP Secured Party of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.   So long as not a result of their gross negligence, bad faith, or willful misconduct (a) the DIP Agents and the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the DIP Loan Parties.

26.     *Final Order Governs*.   In the event of any inconsistency between the provisions of the Interim Period Order, this Final Order, the DIP Documents or any other order entered by this Court, the provisions of this Final Order shall govern.   Notwithstanding anything to the contrary in any other order entered by this Court, any payment made, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Budget.

27.     *DIP Termination Date*.   On the applicable DIP Termination Date (as defined in the DIP Documents):   (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facilities will terminate, all letters of credit

and Secured Bank Product Obligations under the DIP ABL Credit Agreement and Prepetition ABL

Credit Agreement shall be cash collateralized and all other DIP Obligations required to be cash

collateralized in order to cause Payment in Full of such DIP Obligations shall be cash

collateralized; (b) all authority to use Cash Collateral shall cease, except as expressly provided in

Section 9(c) above; and (c) DIP Agents shall have the right to otherwise exercise rights and

remedies under and in accordance with the DIP Documents and this Final Order.

28.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions

of this Final Order, including all findings herein, shall be binding upon all parties in interest in

these Chapter 11 Cases, including, without limitation, the DIP Agents, the DIP Secured Parties,

the Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed

or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns

(including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any

of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any

other fiduciary appointed as a legal representative of any of the Debtors or with respect to the

property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the

DIP Secured Parties, the Prepetition Secured Parties and the Debtors and their respective

successors and assigns; *provided*, that the DIP Agents, the DIP Secured Parties and the Prepetition

Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including

Cash Collateral) or to extend any financing to any chapter 7 trustee (other than the Carve Out),

chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

29.     *Limitation of Liability.*  In determining to make any loan or other extension of credit

under the DIP Credit Agreements, to permit the use of Cash Collateral or in exercising any rights

or remedies as and when permitted pursuant to this Final Order or the DIP Documents, none of the

DIP Agents, the DIP Secured Parties and the Prepetition Secured Parties shall (i) be deemed to be in "control" of the operations or participating in the management of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors, so long as the DIP Agents' and the DIP Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of "responsible person" or "managing agent" to exist under applicable law (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties, Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the DIP Loan Parties and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

30.     *Proofs of Claim*.  The DIP Agents, the DIP Secured Parties, and the Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim herein and the stipulations and findings set forth in this Final Order shall constitute an informal proof of claim in respect thereof.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of (a) the Prepetition ABL Agent on behalf of itself and the Prepetition ABL Secured Parties and (b) the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Secured Parties is hereby authorized and entitled, in its sole discretion,

but not required, (x) to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim herein and (y) to file a single master proof of claim in Case No. 20-30982 and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.  Any proof of claim filed by the Prepetition ABL Agent or Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Secured Parties or Prepetition Term Loan Secured Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Secured Parties, and the Prepetition Secured Parties.

31.    *Insurance*.  To the extent that the Prepetition ABL Agent or the Prepetition Term Loan Agent is listed as loss payee under the Prepetition Borrowers, Holdings, the Prepetition ABL Guarantors or the Prepetition Term Loan Guarantors' insurance policies, the DIP Agents are also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the Payment in Full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), subject to the payment priorities for the DIP Obligations as between the DIP ABL Obligations and DIP Term Loan Obligations as set forth herein and the Intercreditor Agreements, and second, to the payment of the Prepetition Secured Debt, subject to the payment priorities for the Prepetition Secured Debt as between the Prepetition ABL Debt and Prepetition Term Loan Debt as set forth herein and the Intercreditor Agreements.

32.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately

upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

33.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

34.     *Payments Held in Trust*.  Except as expressly permitted in this Final Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any Collateral or any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible Payment in Full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agents and the DIP Secured Parties (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the applicable DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents, the Intercreditor Agreements and this Final Order.

35.     *No Superior Rights of Reclamation*.  Based on the continuation of the Prepetition Liens, the relation back of the DIP Liens, and the integrated nature of the DIP Facilities and the Prepetition Debt Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

36.    *Automatic Stay*.   The giving of notice of termination by any party to the Restructuring Support Agreement shall not be a violation of the automatic stay of section 362 of the Bankruptcy Code (and the Debtors hereby waive, to the fullest extent permitted by law, the applicability of the automatic stay as it relates to any such notice being provided).

37.    *Credit Bidding*.  In connection with any sale process authorized by the Court, the DIP Agents, the DIP Secured Parties, and the Prepetition Secured Parties may credit bid up to the full amount of the applicable outstanding DIP Obligations or Prepetition Secured Obligations (as applicable), in each case including any accrued interest and expenses (each a "**Credit Bid**") in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject in each case to the rights and duties of the parties under the DIP Documents, the Intercreditor Agreements and the Prepetition Documents, and to the provision of cash consideration sufficient to pay in full in cash any claims secured by senior liens on the collateral that is subject to the Credit Bid (including in connection with any bid by any one or more of the Prepetition Term Loan Secured Parties or DIP Term Loan Secured Parties, the Payment in Full of Prepetition ABL Debt and DIP ABL Obligations, as applicable).

38.    *Cash Management; Secured Bank Product Obligations*.

(a)    From and after the date of the entry of the Interim Period Order, and consistent with the DIP ABL Credit Agreement in all respects, any person or entity providing Secured Bank Product Obligations shall be deemed a Secured Creditor (as defined in the DIP ABL Credit Agreement) and an DIP ABL Secured Party with respect to any claims related to such Secured Bank Product Obligations, to the extent provided for under the DIP ABL Credit

Agreement, and any such Secured Bank Product Obligation shall constitute an DIP ABL Obligation.

(b)     Debtors shall deposit all Cash Collateral constituting DIP ABL Priority Collateral now or hereafter in their possession or control into a deposit account subject to a Deposit Account Control Agreement (as defined in the DIP ABL Credit Agreement) (or otherwise deliver such Cash Collateral to the DIP ABL Agent in a manner satisfactory to the DIP ABL Agent) promptly upon receipt thereof.  On the third business day of each week, all Cash Collateral (other than proceeds of the DIP Term Facility) received by any of the Debtors after the Petition Date during the prior week that is in excess of the actual disbursements made pursuant to the Budget during such prior week (subject to the Permitted Variance) less such actual disbursements made on account of interest, fees, costs and other charges in respect of the DIP Term Loan Obligations, the Professional Persons and professionals for the DIP Term Loan Secured Parties during such prior week, will be remitted to DIP ABL Agent for application to the DIP ABL Obligations.  Each week, all actual disbursements made pursuant to the Budget (subject to the Permitted Variance) in excess of any available Cash Collateral shall be funded first from the proceeds of the DIP Term Facility (other than payments on account of interest, fees (including professionals for the DIP ABL Secured Parties), costs and other charges in respect of the DIP ABL Obligations and the ABL Adequate Protection Fees and Expenses) before the Debtors may seek additional loans and letters of credit under the DIP ABL Facility.

(c)     The DIP ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute DIP ABL Priority Collateral or proceeds thereof.

(d)     [Reserved]

39.     *Release*.  Upon the date of the Payment in Full of the ABL Prepetition Debt and DIP ABL Obligations and prior to the release of the DIP ABL Liens, Prepetition ABL Liens Prepetition and Prepetition ABL Adequate Protection Liens, Debtors shall execute and deliver to the DIP ABL Secured Parties and the Prepetition ABL Secured Parties Agents a general release (in form and substance satisfactory to DIP ABL Agent and Prepetition ABL Agent) of any and all claims and causes of action that could have been asserted or raised under or in connection with the DIP ABL Documents and the Prepetition ABL Documents.

40.     *The Interim Period Order*.  Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim Period Order shall remain in effect and are hereby ratified by this Final Order.

41.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

42.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

43.     *Certain Taxing Authorities*.  Notwithstanding any other provisions included in the Interim Period Order or this Final Order, or any agreements approved hereby, any statutory liens on account of ad valorem property taxes (collectively, the "**Tax Liens**") of Channelview Independent School District, Houston Ship Channel Security District, or Harris County (together, the "**Taxing Authorities**") shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Taxing Authorities are fully preserved. In the event any of the DIP Collateral that is subject to valid, senior, perfected and unavoidable Tax Liens of the Taxing Authorities is sold, the

proceeds of such shall first be applied to the taxes owing to the Taxing Authorities before application to any DIP indebtedness or to the indebtedness to any Prepetition Secured Parties whose liens are inferior to the Tax Liens.

44.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

Signed:  March 05, 2020

_____
Marvin Isgur
United States Bankruptcy Judge