**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN COMMERCIAL LINES INC., | § | Case No. 20-30982 (MI) |
| *et al.*, | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I)
CONFIRMING JOINT PREPACKAGED CHAPTER 11 PLAN OF AMERICAN
COMMERCIAL LINES INC. AND ITS AFFILIATES DEBTORS AND
DEBTORS IN POSSESSION AND (II) GRANTING RELATED RELIEF**

WHEREAS, on February 7, 2020, American Commercial Lines Inc. and its debtor affiliates in the above-captioned cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), as debtors and debtors in possession (collectively, the "**Debtors**"), proposed and filed the *Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession*, dated as of February 7, 2020 [ECF No. 23] (as supplemented and as otherwise amended in accordance with the terms thereof and this Order, the "**Plan**"),[2] annexed hereto as **Exhibit A**, and filed the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession*, dated as of February 7, 2020 [ECF No. 24] (the "**Disclosure Statement**");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Finn Holding Corporation (1456), ACL I Corporation (1534), American Commercial Lines Inc. (7794), Commercial Barge Line Company (2365), American Commercial Barge Line LLC (6600), American Commercial Lines International LLC (6599), ACBL Oldco, LLC (6602), ACBL Transportation Services LLC (6589), ACBL River Operations LLC (6762), Old JB LLC (6590), and ACL Professional Services Inc. (4614). The Debtors' principal offices are located at 1701 E. Market Street, Jeffersonville, Indiana 47130.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

WHEREAS, on February 10, 2020, after notice and hearing, this Court entered the *Order (I)Scheduling a Combined Disclosure Statement Approval and Plan Combined Hearing; (II) Establishing a Plan and Disclosure Statement Objection Deadline, (III) Approving Solicitation Procedures and Combined Notice, (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases, (V) Waiving Certain Requirements, and (VII) Granting Related Relief* [ECF No. 89] (the "**Solicitation Procedures Order**"), which, among other things, (i) approved the solicitation and voting procedures related to the Disclosure Statement (the "**Solicitation Procedures**"), and (ii)  scheduled a combined disclosure statement approval and plan Combined Hearing on March 20, 2020 at 8:30 a.m. (Prevailing Central Time) to consider confirmation of the Plan (the "**Combined Hearing**");

WHEREAS, the Debtors, through their solicitation and balloting agent, Prime Clerk LLC ("**Prime Clerk**"), duly caused the transmittal of the Disclosure Statement and the Plan and related solicitation materials, including forms of ballots (the "**Ballots**"), notices of non-voting status, and notice of the Combined Hearing (collectively, the "**Solicitation Materials**"), to holders of Claims and Interests in accordance with the Solicitation Procedures Order, as described in the *Affidavit of Service of Solicitation Materials*, filed on February 10, 2020 [ECF No. 65] (the "**Solicitation Affidavit**"), as well as in the *Declaration of James Daloia of Prime Clerk LLC Regarding Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession*, filed on March 12, 2020 [ECF No. 224] (the "**Tabulation Declaration**");

WHEREAS, on January 27, 2020, the Debtors, through Prime Clerk, caused to be published in the national edition of *USA Today* notice of the Combined Hearing as set forth in the *Affidavit of Publication*, filed on February 14, 2020 [ECF No. 145] (the "**Publication Affidavit**");

WHEREAS, due and proper notice of the Combined Hearing was given to holders of Claims and Interests and all other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and the Solicitation Procedures Order, as established by the affidavits of service, mailing, and publication filed with this Court, including the Solicitation Affidavit and the Publication Affidavit, and such notice being sufficient under the circumstances and no further notice being required;

WHEREAS, on March 10, 2020, the Debtors filed the Plan Supplement [ECF No. 218] (as may be further amended or supplemented, the "**Plan Supplement**");

WHEREAS, on February 20, 2020, the Debtors filed the Tabulation Declaration;

WHEREAS, on March 17, 2020, the Debtors filed the (i) *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement and (II) Confirming the Debtors' Joint Prepackaged Chapter 11 Plan* [ECF No. 231]; (ii) the *Declaration of David Huls in Support of Debtors' Request for Confirmation of Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession* [ECF No. 232] (the "**Confirmation Declaration**"); (iii) the *Declaration of David Jurgens in Support of Liquidation Analysis Set Forth in Disclosure Statement for Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession* [ECF No. 233] (the "**Liquidation Analysis Declaration**"); and (iv) the *Declaration of Neil Augustine in Support of Valuation Analysis Set Forth in Disclosure Statement for Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession* [ECF No. 234] (the "**Valuation Analysis Declaration**").

WHEREAS, on March 20, 2020, this Court held the Combined Hearing;

WHEREAS, this Court has fully considered the entire record of the Combined Hearing;

WHEREAS, this Court has heard the arguments of counsel and considered the evidence presented, proffered, and adduced at the Combined Hearing;

WHEREAS, this Court is familiar with and has taken judicial notice of the entire record of these Chapter 11 Cases;

WHEREAS, any objections to confirmation of the Plan and assumption of executory contracts and unexpired leases have been settled, withdrawn, resolved, or overruled on the merits by this Court;

THEREFORE, based on the foregoing; and after due deliberation thereon and sufficient cause appearing therefor, this Court hereby FINDS, DETERMINES, and CONCLUDES as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding</u>.  This Court has jurisdiction over these Chapter 11 Cases and confirmation of the Plan pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to

enter a final order with respect thereto.  The Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      Chapter 11 Petitions.  On February 7, 2020, each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

D.      Judicial Notice.  This Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of the Debtors' Chapter 11 Cases.  Any resolution of objections to the confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, or confirmation of the Plan are overruled on the merits and denied in their entirety.

E.    <u>Burden of Proof</u>.  Based on the record of the Debtors' Chapter 11 Cases, each of the Debtors has met the burden of proving each element of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

F.    <u>Adequacy of Disclosure Statement</u>. The Disclosure Statement (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, including the Securities Act, and (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.

G.    <u>Solicitation</u>.  As described in and evidenced by the Solicitation Affidavit and the Tabulation Declaration, transmittal and service of the Solicitation Materials (collectively, the "**Solicitation**") were timely, adequate, appropriate, and sufficient under the circumstances. The Solicitation (i) was conducted in good faith and (ii) complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation.

H.    <u>Notice</u>.  As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the Tabulation Declaration, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, adequate, timely, and sufficient notice of the Combined Hearing in accordance with the Solicitation Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations, and such parties have had an opportunity to appear and be heard with respect thereto.

I.    <u>Tabulation</u>.  As described in the Tabulation Declaration, the holders of Claims in Class 4 (Term Loan Claims) and Class 8 (Interests in Finn Holding) are Impaired under

6

the Plan and have voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code.  No Class that was entitled to vote on the Plan voted to reject the Plan. All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and all other applicable non-bankruptcy rules, laws, and regulations.

        J.      <u>Plan Proposed in Good Faith.</u>  The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of the Debtors' Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing, and other proceedings held in the Debtors' Chapter 11 Cases.  The Plan and the Plan Documents were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors.  The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among the Debtors, the Ad Hoc Group, the Agents, the Sponsor, and their respective advisors. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful reorganization.  The Debtors, the Released Parties, and the Exculpated Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take any actions authorized and directed by this Order.

K.     Good Faith Solicitation.   Based on the record before the Court in the Debtors' Chapter 11 Cases, including evidence presented at the Combined Hearing, the Debtors, the Released Parties, and the Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, including, without limitation, the execution, delivery, entry into and performance of the Restructuring Support Agreement, the Backstop Commitment Agreement, the New Organizational Documents, any other Plan Documents (defined below), the extension of financing under the DIP Facilities, the participation in the Rights Offering, consummation of the Restructuring Transactions, and appointment of the New Boards, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.E of the Plan.

L.     Rights Offerings.   The Rights Offerings were conducted in in good faith and in accordance with the Rights Offering Procedures.

M.     Best Interest of Creditors.   The liquidation analysis provided in the Disclosure Statement, the Confirmation Declaration, Liquidation Analysis Declaration, and the

other evidence presented, proffered, or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

        N.    <u>Feasibility</u>.  The information in the Disclosure Statement, the Confirmation Declaration, the Valuation Declaration, and the evidence proffered or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) together with the record of the Debtors' Chapter 11 Cases and the evidence presented at the Combined Hearing, establish that the Plan is feasible, that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan as well as their business obligations in the ordinary course, that the incurrence of the obligations contemplated by the Plan will not result in the insolvency of the Debtors, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

        O.    <u>Valuation</u>.  Based on the testimony presented, proffered, or adduced at the Combined Hearing, which this Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis, this Court finds that the valuation implied by the Restructuring Transactions is the best measure of the Reorganized Debtors' value given the facts and circumstances of the Debtors' Chapter 11 Cases.

P.    <u>Principal Purpose of Plan</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Q.    <u>Injunctions, Releases, and Exculpation</u>.    The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Plan, releases, and exculpation set forth in the Plan.   As has been established based upon the record in the Chapter 11 Cases and the evidence presented at the Combined Hearing, such provisions (i) were given in exchange for good and valuable consideration, (ii) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (iii) confer substantial benefits on the Debtors' Estates, (iv) are fair, equitable, and reasonable, (v) are in the best interests of the Debtors, their Estates, and parties in interest, and (vi) failure to implement the injunctions, exculpation, and releases would seriously jeopardize the Debtors' ability to confirm and implement the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the injunctions, releases, and exculpation set forth in the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interest of the Debtors, the Reorganized Debtors, and their Estates, creditors, and equity holders and supported by adequate consideration.

(i) The releases granted by the Debtors and their Estates under Article VIII.D.1 of the Plan (the "**Debtors' Release**") represent a valid exercise of the Debtors' business judgment. For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered or adduced at the Combined Hearing, such release is an integral and necessary part of the Plan and is

fair, reasonable, and in the best interests of the Debtors, the Estates, and holders of Claims and Interests.  The Debtors' Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Released Claims released by the Debtors, the Reorganized Debtors, and the Estates; (3) given and made after due notice and opportunity for hearing; and (4) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any Claim or Cause of Action released pursuant to the release described in Article VIII.D.1 of the Plan, except as otherwise set forth in the Plan.

(ii) The releases contained in Article VIII.D.2 of the Plan (the "**Third Party Release**") are appropriate.  Creditors were duly informed of the Third Party Release and given the opportunity to opt out.  The release provisions contained in Article VIII.D.2 of the Plan are consensual under applicable law because the releases therein are provided only by (i) holders of all Claims and Interests who voted to accept the Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject the Plan was solicited but that did not vote either to accept or to reject the Plan and did not opt out of granting the releases, (iii) the holders of all Claims or Interests that voted, or were deemed, to reject the Plan but did not opt out of granting the releases, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, (v) all other holders of Claims and Interests to the maximum extent permitted by law, and (vi) the Released Parties.

(iii) The Third Party Release is: (1) in exchange for good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third Party Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or

11

Cause of Action released pursuant to the Third Party Release, except as otherwise set forth in the Plan. The Third Party Release is an integral part of the Plan that is overwhelmingly supported by the voting classes. Like the Debtors' Release, the Third Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally. The Third Party Release is instrumental to the Plan and was critical in incentivizing the parties to support the Plan. The Third Party Release was a core negotiation point in connection with the Restructuring Support Agreement and instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders. The Third Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. Parties-in-interest have had a full opportunity to object to and/or opt out of the Third Party Release. As such, the Third Party Release appropriately offers certain protections to parties that constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan and the Restructuring Transactions.

(vi) The exculpations granted under the Plan are reasonable in scope and do not relieve any party of liability for an act or omission to the extent such act or omission is a criminal act or constitutes intentional fraud or willful misconduct.

(v) The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpation provided for in the Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Combined Hearing, the injunctions, exculpation, and releases set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law and are approved.

## **ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by this Court at the Combined Hearing in relation to confirmation of the Plan are hereby incorporated into this Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.      <u>Final Approval of Disclosure Statement</u>. The Disclosure Statement is approved on a final basis as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.

3.      <u>Notice of the Combined Hearing and Solicitation</u>.  Notice of the Combined Hearing and Solicitation complied with the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

4.      <u>Rights Offering</u>.  The Rights Offerings were conducted pursuant to, and in compliance with, the Rights Offering Procedures, the Backstop Commitment Agreement (as applicable), and the Plan.  The consummation of the Rights Offerings is conditioned on the consummation of the Plan and any other condition specified in the Backstop Commitment Agreement.

5.     <u>Confirmation of Plan</u>.  The Plan and each of its provisions are confirmed pursuant to section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including the Plan Supplement (the "**Plan Documents**"), are hereby authorized and approved.  The terms of the Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Documents prior to the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

6.     <u>Objections</u>.  To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan, assumption of executory contracts and unexpired leases, or other responses or reservations of rights with respect thereto have not been withdrawn prior to entry of this Order, such objections and responses shall be, and hereby are, overruled on the merits and denied.

7.     <u>No Action</u>.   Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan nor any contract, instrument, or

other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

8.      <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation and consummation of the Plan and the Plan Documents and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan or the Plan Documents.

9.      <u>Implementation of the Plan</u>.  After the Confirmation Date, the Debtors and the Reorganized Debtors, as applicable, and the appropriate officers, representatives, and members of the boards of directors thereof shall be authorized to, and may issue, execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Documents, and take such other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including the Restructuring Transactions and all such other actions delineated in Article V of the Plan or otherwise contemplated by the Plan, including the conversion, merger, or dissolution of any Debtor and the deemed contributions of Claims and Interests as set forth in the Description of Restructuring Transactions, without the need for any further approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

10.     <u>Restructuring Transactions</u>.  On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with this Order and the Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.  Notwithstanding anything to the contrary in

any assumed Executory Contract or Unexpired Lease, as of the Effective Date, the Restructuring Transactions shall be permitted to occur without any additional notice, consent or other action or consequence under any of the assumed Executory Contracts or Unexpired Leases. This provision shall in no event be deemed a finding that either notice or consent is required under any Executory Contract or Unexpired Lease, or that any rights or obligations would be triggered by the Restructuring Transactions.

11.    Approval of the New Organizational Documents.  The New Organizational Documents, including, without limitation, the Shareholder Agreement, are hereby approved.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments, and certificates relating to the New Organizational Documents, including the Shareholder Agreement, and take such other actions as reasonably deemed necessary to perform their obligations thereunder.  The Shareholder Agreement shall be effective on the Effective Date of the Plan, operative and binding on, and enforceable against, the Reorganized Company and on all "Holders" (as such term is defined in the Shareholder Agreement), whether or not such Holder executes the Shareholder Agreement.

12.    New ABL Facility Credit Agreement.

a.    On the Effective Date, the Reorganized Debtors are authorized to and shall enter into the New ABL Facility Credit Agreement and all other documents, notes, agreements, guaranties, and other collateral documents contemplated thereby.  The New ABL Facility Credit Agreement shall constitute legal, valid, binding, and authorized joint and several obligations of the Reorganized Debtors enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance,

recharacterization, or subordination under applicable law, the Plan, or this Order.  On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the New ABL Facility Credit Agreement (x) shall be valid, binding, perfected, enforceable first priority Liens and security interests in the property subject to a security interest granted by the applicable Reorganized Debtors pursuant to the New ABL Facility Credit Agreement, with the priorities established in respect thereof under applicable non-bankruptcy law and any applicable intercreditor agreements, and (y) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.

b.    The New ABL Facility Agent is authorized to file, with the appropriate authorities, financing statements, amendments thereto, or assignments thereof and other documents, including mortgages or amendments or assignments thereof in order to evidence the first priority Liens, pledges, mortgages, and security interests granted in connection with the New ABL Facility Credit Agreement.  The guaranties, mortgages, pledges, Liens, and other security interests granted in connection with the New ABL Facility Credit Agreement are granted in good faith as an inducement to the New ABL Facility Lenders to extend credit thereunder, shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such Liens, mortgages, pledges, and security interests shall be as set forth in the New ABL Facility Credit Agreement and the collateral documents executed and delivered in connection therewith.

13.    Plan Distributions.    The Debtors are authorized to make all Plan distributions pursuant to the terms of the Plan and to pay any other applicable fees and expenses approved by this Order or any other order of this Court.

17

14.     <u>Exemption from Securities Laws</u>.

a.     The offer, issuance, and distribution under the Plan of (i) the New Common Equity, (ii) the New Term Lender Warrants, (iii) New Take Back Preferred Equity, and (iv) the New Take Back Preferred Warrants shall be exempt, without further act or actions by any Entity, from registration under the Securities Act and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code. Subject to the transfer provisions, if any, and other applicable provisions set forth in the Shareholder Agreement, these securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, subject to the transfer provisions, if any, and other applicable provisions set forth in the Shareholder Agreement, the New Organizational Documents and the applicable Warrant Agreements, such section 1145 exempt securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

b.     The offer, issuance and sale of (1) the New Sponsor Warrants and (2) the New Money Preferred Equity and New Money Preferred Equity Warrants (and, in the case of clause (i) only, the Subscription Rights) to: (i) Rights Offering Participants pursuant to the Rights Offering, (ii) the Backstop Commitment Parties under the Backstop Commitment Agreement (including the New Money Preferred Equity and/or any New Money Preferred Equity comprising the Backstop Commitment Premium and the Unsubscribed Securities), and (iii) the Term Loan DIP Facility Lenders in connection with the exchange for Term Loan DIP Facility Claims, the DIP Conversion Discount (as defined in the Term Loan DIP Facility Agreement) and the DIP Backstop

Premium (as defined in the Term Loan DIP Facility Agreement), in each case, who are "accredited investors" as defined in Rule 501(a) promulgated under the Securities Act, is being made in reliance on the exemption from registration set forth in section 4(a)(2) thereof and/or Regulation D thereunder and on equivalent state law registration exemptions or, solely to the extent section 4(a)(2) of the Securities Act or Regulation D thereunder is not available, another available exemption from registration under the Securities Act. Such securities will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 of the Securities Act. Transfers of such securities will also be subject to the transfer provisions, if any, and other applicable provisions set forth in the Shareholder Agreement, the New Organization Documents, and the applicable Warrant Agreements.

15.     <u>Authorization and Issuance of Plan Securities</u>.  The Debtors or Reorganized Debtors, as applicable, are authorized to issue all Plan-related securities, including the New Common Equity, the New Preferred Equity, the New Warrants, and the Subscription Rights.

16.     <u>Cancellation of Existing Securities and Agreements</u>.  Except as provided under the Plan, this Order or for the purpose of evidencing a right to and allowing holders of Claims to receive a distribution under the Plan, and except as otherwise set forth in the Plan, or in the Plan Supplement or any related agreement, instrument, or document, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any prepetition Claim or Interest and any rights of any holder in respect thereof shall be deemed cancelled and of no force or effect and the Debtors shall not have any continuing obligations thereunder.

17.     <u>9019 Plan Settlement</u>.  The Plan is dependent upon and incorporates the terms of compromises embodied in the Global Settlement, which was negotiated in good faith and at arm's length and is an essential element of the Plan.  The Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' Estates, the holders of Claims and Interests, and all other parties in interest, and satisfies the standards for approval under Bankruptcy Rule 9019 and Sections 363 and 1123(b)(3) of the Bankruptcy Code.

18.     <u>Executory Contracts and Unexpired Leases</u>.

a.     <u>Assumption and Rejection</u>.  Pursuant to Article VI of the Plan, as of and subject to the occurrence of the Effective Date and the payment of any applicable cure amount in accordance with Article VI.B of the Plan, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed (or amended and assumed, as applicable) by the applicable Debtor counterparty in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order of this Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected in the Plan Supplement.  Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of this Court authorizing and providing for its assumption, or applicable law.

b.     Subject to (i) satisfaction of the conditions set forth in Article VI.B of the Plan, and (ii) the occurrence of the Effective Date, entry of this Order shall constitute approval of

the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Reorganized Debtors have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of this Court authorizing and providing for its assumption, or applicable law.

        c.      Notwithstanding anything to the contrary in the Plan or the Payoff Letter, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the New ABL Facility Documents, nothing in the Plan shall release, discharge, extinguish or impair any Lien, security interest, or pledge or any contractual right or remedy granted in favor of the counterparty under any Executory Contract or Unexpired Lease deemed assumed (or amended and assumed, as applicable) pursuant to Article VI.A of the Plan.

        19.     <u>Transfer Taxes</u>. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the effectuation of the Restructuring Transactions, or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any

transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S. federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate U.S. state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

        20.     <u>Preservation of Causes of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Except as mandated by existing Fifth Circuit precedent, no Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized Debtors will not pursue any and all available Causes of Action.  The Debtors and Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to

any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the
Effective Date.

21.     <u>Conditions Precedent to Effective Date</u>.  The Plan shall not become
effective unless and until all conditions set forth in Article IX.A of the Plan have been satisfied or
waived pursuant to Article IX.B of the Plan.

22.     <u>Injunctions, Releases, and Exculpation</u>.  As of the Effective Date, except
for the rights that remain in effect from and after the Effective Date to enforce the Plan, the
injunctions, releases, and exculpation provisions embodied in the Plan (including, without
limitation, the  provisions set forth in Article VIII.D-F that are reproduced below) are hereby
approved and shall be effective and binding on all Persons, to the extent provided in the Plan,
without further order or action by this Court.

       a.    <u>Releases by the Debtors</u>.  Except as otherwise expressly provided in the Plan,
pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable
consideration, including without limitation the efforts of the Released Parties to
facilitate the reorganization of the Debtors and the implementation of the
restructuring contemplated by the Restructuring Support Agreement, on and after
the Effective Date, to the maximum extent permitted by applicable law, the Debtors
and the Estates are deemed to have conclusively, absolutely, unconditionally,
irrevocably, and forever released, waived, and discharged each Released Party
from, and covenanted not to sue on account of, any and all claims, interests,
obligations (contractual or otherwise), rights, suits, damages, Causes of Action
(including Avoidance Actions), remedies, and liabilities whatsoever, including any
derivative claims assertable by or on behalf of a Debtor, whether known or
unknown, foreseen or unforeseen, fixed or contingent, matured or unmatured,
disputed or undisputed, liquidated or unliquidated, existing or hereafter arising, in
law, equity, or otherwise, that the Debtors, or the Estates would have been legally
entitled to assert in their own right (whether individually or collectively) or on
behalf of the holder of any Claim or Interest or other Entity (including any Debtor),
based on or relating to, or in any manner arising from, in whole or in part, the
Debtors, the Chapter 11 Cases, the ABL DIP Facility Claims, the Term Loan DIP
Facility Claims, the Existing ABL Facility Claims, the Term Loan Claims, the
purchase, sale, or rescission of the purchase or sale of any security of the Debtors
or Reorganized Debtors, the subject matter of, or the transactions or events giving
rise to, any Claim or Interest that is treated in the Plan, the business or contractual
arrangements between any Debtor and any Released Party, the restructuring of

Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, consummation, or dissemination of: (i) the Plan (including, for the avoidance of doubt, the Plan Supplement), (ii) the New ABL Facility, (iii) the Disclosure Statement, (iv) the Restructuring Support Agreement, (v) the First Amendment to the Term Loan Agreement, (vi) the Bridge Funding Letter Agreement, (vii) the Backstop Commitment Agreement, or (viii) related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence.

b.  <u>Releases by Holders of Claims or Interests.</u>  Except as otherwise expressly provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including without limitation the efforts of the Debtors and Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring contemplated by the Restructuring Support Agreement, on and after the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from, and covenanted not to sue on account of, any and all claims, interests, obligations (contractual or otherwise), rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims assertable by or on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated or unliquidated, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity (including any Debtor), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the ABL DIP Facility Claims, the Term Loan DIP Facility Claims, the Existing ABL Facility Claims, the Term Loan Claims, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, consummation, or dissemination of: (i) the Plan (including, for the avoidance of doubt, the Plan Supplement), (ii) the New ABL Facility, (iii) the Disclosure Statement, (iv) the Restructuring Support Agreement, (v) the First Amendment to Term Loan Agreement, (vi) the Bridge Funding Letter Agreement, (vii) the Backstop Commitment Agreement, or (viii) related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act

or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence. For the avoidance of doubt, the releases described in this Article VIII.D.2 do not release any Claims or Interests under Classes 1, 2, 3, 5, 6, or 7. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan or the New ABL Facility Documents.

c.  <u>Exculpation.</u>  To the fullest extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party shall be released and exculpated from, any claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the ABL DIP Facility, the Term DIP Facility, the New ABL Facility, the Rights Offering, the Management Incentive Plan, the Disclosure Statement, the Restructuring Supporting Agreement, the Restructuring Transactions, the Bridge Funding Letter Agreement, and the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

d.  <u>Injunction.</u>  This Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or this Order.

23.  <u>Statutory Fees</u>.  All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors or the Reorganized Debtors.  On and after the Effective Date,

the Reorganized Debtors shall pay any and all Statutory Fees when due and payable and shall file with this Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's, or Reorganized Debtor's, as applicable, case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

24.   <u>Documents, Mortgages, and Instruments</u>.   Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring Transactions, contemplated by the Plan and this Order.

25.   <u>Reversal/Stay/Modification/Vacatur of Order</u>.   Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors, the Reorganized Debtors, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

26.     <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

27.     <u>Headings</u>.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Order for any other purpose.

28.     <u>Reservation of Rights in Favor of Governmental Units</u>.  Notwithstanding any provision in the Plan Documents:

a.      Nothing discharges or releases the Debtors, the Reorganized Debtors, any "Released Party" as defined by the Plan, any non-debtor, or any other Person from any right, claim, liability, or Cause of Action of or to the United States or any State or impairs the ability of the United States or any State to pursue any claim, liability, right, defense, or Cause of Action against any Debtor, Reorganized Debtor, any "Released Party" defined by the Plan, any non-debtor, or any other Person. Neither the United States nor any State is a "Releasing Party" under the Plan.

b.      All claims, liabilities, rights, Causes of Action, or defenses of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtors, the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or Cause of Action.

c.      Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any

27

State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.

   d. Without limiting the foregoing, for the avoidance of doubt, nothing shall: (i) require the United States or any State to file any Proofs of Claim or request for administrative expense in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors, any non-debtor, or any other Person; (iii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

   29. <u>Pension Benefit Guaranty Corporation</u>.  As of the Effective Date, the Reorganized Debtors shall assume the American Commercial Barge Line LLC Pension Plan (the "**Pension Plan**") in accordance with, and subject to, the Pension Plan's terms (as such terms may be amended from time to time), the Employee Retirement Income Security Act ("**ERISA**"), and

the Internal Revenue Code. Nothing herein or in the Plan shall relieve or discharge any requirement that the Debtors or Reorganized Debtors, as applicable, (i) satisfy the minimum funding standards in 26 U.S.C. §§ 412, 430, and 29 U.S.C. § 1082, 1083, (ii) is liable for the payment of Pension Benefit Guaranty Corporation ("**PBGC**") premiums under 29 U.S.C. §§ 1306 and 1307, subject to any and all applicable rights and defenses of the Debtors or Reorganized Debtors, and (iii) administer the Pension Plan in accordance with ERISA and the Internal Revenue Code. No provision contained herein, the Plan, or section 1141 of the Bankruptcy Code, shall be construed as discharging, releasing or relieving any party, in any capacity, from any liability with respect to the Pension Plan under any law, government policy or regulatory provision. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any party as a result of any of the provisions for satisfaction, release, injunction, exculpation, and discharge of claims in the Plan, this Confirmation Order, the Bankruptcy Code, or any other document filed in any of the Debtors' bankruptcy cases.

30. <u>Certain Agreements</u>.

a. *2018 Declaration of Restrictive Use*. Notwithstanding anything to the contrary provided for in the Plan or this Order, the vesting of assets in the Reorganized Debtors or otherwise shall not extinguish the Declaration of Restrictive Use made as of June 1, 2018 by Jeffboat LLC and Inland Marine Equipment LLC with such Declaration of Restrictive Use remaining in full force and effect and binding on the parties thereto and the affected land.

b. *Barge SPV Charter*. For the avoidance of doubt, the Debtors and contract counterparty Barge SPV, LLC stipulate that the Bareboat Charter Party dated as of December 21, 2001 (as amended and assigned, the "**Barge SPV Charter**"), as amended and assigned from time to time, by and between American Commercial Barge Line LLC (as successor to AEP-Memco

LLC) as Charterer and Barge SPV, LLC (as successor to SCF Marine Inc.) as Owner, is an executory contract within the meaning of section 365 of the Bankruptcy Code and that this Order constitutes a final order approving the assumption of the Barge SPV Charter by the applicable Reorganized Debtor(s). The Debtors and contract counterparty Vessel Holdings 6, LLC stipulate that the Master Demise Charter dated as of August 13, 2014 (as amended and assigned, together with all schedules thereto, the "**Master Charter**"), as amended and assigned from time to time, by between American Commercial Barge Line LLC (fka American Commercial Lines LLC) as Charterer and Commercial Barge Line Company as Guarantor and Vessel Holdings 6, LLC (as successor to NXT Capital, LLC) as Owner, is an executory contract within the meaning of section 365 of the Bankruptcy Code and that this Order constitutes a final order approving the assumption of the Master Charter by the applicable Reorganized Debtor(s). In addition to all other benefits that inure as a result of the assumption of the Barge SPV Charter and the Master Charter (collectively, the "**ACL Charters**"), all valid accruing and/or owed post-petition amounts under the ACL Charters shall be paid as General Administrative Expenses.

c. *Harris County.* The Debtors shall pay all 2020 ad valorem tax liabilities owing to Harris County, Texas in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent. Harris County shall retain its statutory liens securing its pre-petition tax debts until such time as their tax debts are paid in full.

31. <u>Ipso Facto and Similar Provisions Ineffective</u>. Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Entity based on (i) the insolvency or financial condition of a Debtor, (ii) the

commencement of the Chapter 11 Cases, (iii) the confirmation or consummation of this Plan, including any change of control that shall occur as a result of such consummation, or (iv) the Restructuring Transactions.

32.    <u>Reimbursement of Restructuring Expenses.</u>  The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and without any requirement for review or approval by the Bankruptcy Court or any other party.   All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses.   In addition, the Debtors and Reorganized Debtors (as applicable) shall continue to pay Restructuring Expenses after the Effective Date when due in payable in the ordinary course related to implementation, consummation and defense of the Plan, whether incurred before, on or after the Effective Date.

33.    <u>Certain DIP Term Loan Obligations</u>.  Subject to Article VI.C of the Plan, prior to or on the Effective Date to the extent not previously paid, all DIP Term Loan Obligations (as defined in the Final DIP Order) other than outstanding principal amounts will be paid in full in Cash.  On the Effective Date, the $50 million aggregate principal amount of DIP Term Loan Obligations shall be converted to New Money Preferred Equity and/or New Money Preferred Warrants as provided in Article II.E of the Plan

34.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document provides otherwise, the rights,

duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

35.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

36.     <u>Notice of Entry of Order and Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order and occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>**, on all parties who hold a Claim or Interest in these cases, the U.S. Trustee, and any other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order and the occurrence of the Effective Date.

37.     <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

38.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

39.     <u>Waiver of Stay</u>.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

40.   <u>Inconsistency</u>.  To the extent of any inconsistency between this Order and

the Plan, this Order shall govern.

Signed: March 20, 2020

                                   Marvin Isgur
                         United States Bankruptcy Judge

**Exhibit A**

**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN COMMERCIAL LINES INC., | § | Case No. 20-30982 (MI) |
| *et al.* | § | |
| | § | Jointly Administered |
| Debtors.[1] | § | |
| | § | |

## JOINT PREPACKAGED CHAPTER 11 PLAN OF AMERICAN COMMERCIAL LINES INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

**MILBANK LLP**

Dennis F. Dunne (*pro hac vice* pending)
Samuel A. Khalil (*pro hac vice* pending)
Parker J. Milender (*pro hac vice* pending)
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

**PORTER HEDGES LLP**

John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331

*Counsel to American Commercial Lines Inc.*
*and Its Affiliated Debtors and Debtors in Possession*

**Dated: February 7, 2020**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Finn Holding Corporation (1456), ACL I Corporation (1534), American Commercial Lines Inc. (7794), Commercial Barge Line Company (2365), American Commercial Barge Line LLC (6600), American Commercial Lines International LLC (6599), ACBL Oldco, LLC (6602), ACBL Transportation Services LLC (6589), ACBL River Operations LLC (6762), Old JB LLC (6590), and ACL Professional Services Inc. (4614). The Debtors' principal offices are located at 1701 E. Market Street, Jeffersonville, Indiana 47130.

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
    OF TIME, AND GOVERNING LAW ................................................................. 1

    A.    Defined Terms ....................................................................................... 1
    B.    Rules of Interpretation ......................................................................... 16
    C.    Computation of Time ........................................................................... 17
    D.    Governing Law .................................................................................... 17
    E.    Reference to Monetary Figures ............................................................ 17

ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED
    CLAIMS ............................................................................................... 18

    A.    General Administrative Expenses ........................................................ 18
    B.    Restructuring Expenses ....................................................................... 18
    C.    Professional Fees ................................................................................. 18
        1.    Final Fee Applications ............................................................ 18
        2.    Professional Fees Escrow Account .......................................... 19
        3.    Post-Effective Date Fees and Expenses ................................... 20
    D.    ABL DIP Facility Claims .................................................................... 20
    E.    Term Loan DIP Facility Claims ........................................................... 20
    F.    Priority Tax Claims ............................................................................. 20

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
    INTERESTS ........................................................................................ 21

    A.    Classification of Claims and Interests .................................................. 21
    B.    Treatment of Claims and Interests ....................................................... 21
        1.    Class 1 – Priority Non-Tax Claims ......................................... 21
        2.    Class 2 – Other Secured Claims .............................................. 22
        3.    Class 3 – Existing ABL Facility Claims .................................. 22
        4.    Class 4 – Term Loan Claims ................................................... 23
        5.    Class 5 – General Unsecured Claims ....................................... 24
        6.    Class 6 – Intercompany Claims ............................................... 25
        7.    Class 7 – Intercompany Interests ............................................ 25
        8.    Class 8 – Interests in Finn Holding .......................................... 25
    C.    Special Provision Governing Unimpaired Claims ................................ 26

ARTICLE IV ACCEPTANCE OR REJECTION OF PLAN .................................... 26

    A.    Voting Classes ..................................................................................... 26
    B.    Presumed Acceptance of the Plan ........................................................ 26
    C.    Subordinated Claims ........................................................................... 26

ARTICLE V MEANS FOR IMPLEMENTATION OF PLAN .................................................. 26

A.      General Settlement of Claims and Interests ............................................ 26
B.      Restructuring Transactions .................................................................... 27
C.      Sources of Consideration for Plan Distributions ................................... 28
      1.      Rights Offering. ......................................................................... 28
      2.      Cash ............................................................................................ 29
      3.      New ABL Facility ...................................................................... 29
D.      Corporate Existence ............................................................................... 30
E.      Vesting of Assets in the Reorganized Debtors ...................................... 30
F.      Cancellation of Loans, Securities, and Agreements .............................. 31
G.      Corporate and Other Entity Action ....................................................... 31
H.      New Organizational Documents ............................................................ 32
I.      Directors and Officers of Reorganized Debtors .................................... 32
      1.      Reorganized Company Board ..................................................... 32
      2.      Officers of Reorganized Company .............................................. 33
      3.      New Subsidiary Boards ............................................................... 33
J.      Effectuating Documents; Further Transactions ..................................... 33
K.      Section 1146 Exemption ........................................................................ 33
L.      Management Incentive Plan .................................................................... 34
M.      Procedures for Treating Disputed Claims and Interests Under the Plan ............. 34
      1.      Disputed Claims and Interests Process ...................................... 34
      2.      No Distributions Pending Allowance .......................................... 35
      3.      Distributions after Allowance ..................................................... 35
      4.      Estimation of Claims and Interests ............................................. 35
N.      Authorization and Issuance of New Common Equity, New Preferred
      Equity and New Warrants ...................................................................... 35

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
      LEASES ...................................................................................................... 37

A.      Assumption of Executory Contracts and Unexpired Leases .................. 37
B.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ........ 37
C.      Insurance Policies & Indemnification Obligations ................................ 38
D.      Modifications, Amendments, Supplements, Restatements, or Other
      Agreements ............................................................................................ 39
E.      Reservation of Rights ............................................................................. 39
F.      Contracts and Leases Entered into after Petition Date .......................... 39
G.      Rejection Damages Claims .................................................................... 39
H.      Compensation and Benefits Plans .......................................................... 40

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 40

A.      Timing and Calculation of Amounts to Be Distributed ........................ 40
B.      Disbursing Agent ................................................................................... 40
C.      Rights and Powers of Disbursing Agent ............................................... 40
      1.      Powers of the Disbursing Agent ................................................. 40

|  |  |  | |
|---|---|---|---|
|  | 2. | Incurred Expenses | 41 |
| D. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 41 |
|  | 1. | Delivery of Distributions to Term Loan Agent | 41 |
|  | 2. | Delivery of Distributions in General | 41 |
|  | 3. | Minimum Distributions | 41 |
|  | 4. | Undeliverable Distributions and Unclaimed Property | 42 |
| E. | | Exemption from Securities Laws | 42 |
| F. | | Compliance with Tax Requirements | 43 |
| G. | | No Postpetition Interest on Claims and Interests | 43 |
| H. | | Setoffs and Recoupment | 44 |
| I. | | Claims Paid or Payable by Third Parties | 44 |
|  | 1. | Claims Paid by Third Parties | 44 |
|  | 2. | Claims Payable by Third Parties | 44 |
|  | 3. | Applicability of Insurance Policies | 45 |
| J. | | Allocation Between Principal and Accrued Interest | 45 |

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ... 45

| A. | | Compromise and Settlement | 45 |
|---|---|---|---|
| B. | | Discharge of Claims and Termination of Interests | 46 |
| C. | | Release of Liens | 46 |
| D. | | Releases of Released Parties | 46 |
|  | 1. | Releases by the Debtors | 47 |
|  | 2. | Releases by Holders of Claims or Interests | 47 |
| E. | | Exculpation | 48 |
| F. | | Injunction | 49 |

ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ... 49

| A. | Conditions to Effective Date | 49 |
|---|---|---|
| B. | Waiver of Conditions | 50 |

ARTICLE X MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN ... 51

| A. | Modification and Amendments | 51 |
|---|---|---|
| B. | Effect of Confirmation on Modifications | 51 |
| C. | Revocation or Withdrawal of Plan | 51 |

ARTICLE XI RETENTION OF JURISDICTION ... 52

ARTICLE XII MISCELLANEOUS PROVISIONS ... 55

| A. | Immediate Binding Effect | 55 |
|---|---|---|
| B. | Additional Documents | 55 |
| C. | Payment of Statutory Fees | 55 |
| D. | Reservation of Rights | 55 |
| E. | Successors and Assigns | 56 |

F.      Notices .................................................................................................... 56
G.      Term of Injunctions or Stays................................................................... 57
H.      Entire Agreement .................................................................................... 58
I.      Exhibits ................................................................................................... 58
J.      Consent Rights of Required Consenting Term Lenders ........................... 58
K.      Nonseverability of Plan Provisions.......................................................... 58
L.      Votes Solicited in Good Faith.................................................................. 58
M.      Closing of Chapter 11 Cases ................................................................... 59
N.      Document Retention ................................................................................ 59
O.      Conflicts................................................................................................... 59
P.      Dissolution of Creditors' Committee....................................................... 59

**Introduction**

American Commercial Lines Inc. ("ACL Inc."); ACL I Corporation; Commercial Barge Line Company ("CBLC"); American Commercial Barge Line LLC ("ACBL"); American Commercial Lines International LLC; ACBL Oldco, LLC; ACBL Transportation Services LLC ("ACBL Transportation"); ACBL River Operations LLC ("ACBL River Ops"); Finn Holding Corporation ("Finn Holding"); Old JB LLC; and ACL Professional Services Inc. (each a "Debtor" and, collectively, the "Debtors" or "ACL"), jointly propose this prepackaged plan of reorganization, as it may be amended, supplemented, restated, or modified from time to time (together with the Plan Supplement, the "Plan"), for the resolution of certain outstanding Claims against, and Interests in, the Debtors, pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended and as in effect on the Confirmation Date or otherwise applicable to the Chapter 11 Cases, the "Bankruptcy Code"). Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan of reorganization for each Debtor. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**

A.   *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below:

1.   "*ABL DIP Facility*" means the secured asset-based revolving credit facility made available by the ABL DIP Facility Lenders to the Debtors to provide financing and otherwise extend credit and other financial accommodations during the pendency of the Chapter 11 Cases pursuant to and subject to the terms and conditions of the ABL DIP Facility Agreement and the DIP Orders.

2.   "*ABL DIP Facility Agent*" means Wells Fargo Capital Finance, LLC, as Administrative Agent under the ABL DIP Facility Agreement.

3.   *ABL DIP Facility Agreement*" means that certain Senior Secured Debtor-in-Possession Credit Agreement by and among ACL Inc., as "Holdings," CBLC, ACBL, ACBL Transportation, and ACBL River Ops, as Borrowers, the guarantors, lenders, issuing banks and bank product providers from time to time party thereto, and the ABL DIP Facility Agent, as amended, modified, or supplemented from time to time, as approved by the DIP Orders.

4. "*ABL DIP Facility Claims*" means all Claims against any Debtor arising on account of the ABL DIP Facility or pursuant to or secured by the ABL DIP Facility Agreement, and which constitute "Obligations," as such term is defined in the ABL DIP Facility Agreement.

5. "*ABL DIP Facility Lenders*" means the financial institutions party from time to time to the ABL DIP Facility Agreement as lenders, issuing banks or bank product providers, in their respective capacities as such.

6. "*ACL*" has the meaning specified in the Introduction hereto.

7. "*Ad Hoc Group*" means the ad hoc group of Consenting Term Lenders represented by, *inter alia*, Davis Polk & Wardwell LLP and Evercore Group L.L.C.

8. "*Administrative Expense*" means any cost or expense of administration of the Chapter 11 Cases entitled to priority pursuant to sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) professional compensation and reimbursement awarded or allowed pursuant to sections 330(a) or 331 of the Bankruptcy Code, including the Professional Fees; (c) an administrative expense of the type described in section 503(b)(9) of the Bankruptcy Code; and (d) any and all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code; provided, however, that "Administrative Expense" shall not include any Term Loan DIP Facility Claim or ABL DIP Facility Claim.

9. "*Agents*" means the Existing ABL Facility Agent, the ABL DIP Facility Agent, the New ABL Facility Agent, the Term Loan Agent, and the Term Loan DIP Facility Agent.

10. "*Allowed*" means, with respect to any Claim or Interest, the extent to which such Claim or Interest is not Disputed. An Allowed Claim: (a) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed; and (b) shall be net of any setoff amount that may be asserted by any Debtor against the holder of such Claim, which shall be deemed to have been setoff in accordance with the provisions of the Plan. Notwithstanding anything to the contrary herein, the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to the Plan.

11. "*Article*" refers to an article of the Plan.

12. "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of property from, or an obligation incurred by, one or more of the Debtors, that arise under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or similar state law.

13. "*Backstop Commitment Agreement*" means that certain Backstop Commitment Agreement, dated as of February 7, 2020, made by and between (i) the Debtors, on the one hand, and (ii) each of the Backstop Commitment Parties, on the other hand.

14. "*Backstop Commitment Parties*" means, at any time or from time to time, the Term Loan Lenders that have committed to fund the Rights Offering and are signatories to the

2

Backstop Commitment Agreement, solely in their capacities as such, including their respective permitted transferees, successors and assigns, all in accordance with the Backstop Commitment Agreement.

15.     "*Bankruptcy Code*" has the meaning specified in the Introduction hereto.

16.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas or any other court having jurisdiction over the Chapter 11 Cases.

17.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Cases, promulgated pursuant to 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court.

18.     "*Bridge Funding Letter Agreement*" means that certain Bridge Funding Letter Agreement, dated as of January 30, 2020, by and among the Debtors party thereto, the Existing ABL Facility Agent, the Existing ABL Facility Lenders, the Consenting Term Lenders and Term Loan Agent.

19.     "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in New York are required or authorized by law to remain closed.

20.     "*Cash*" means cash and cash equivalents in U.S. dollars.

21.     "*Cause of Action*" means any action, claim, cause of action, controversy, demand, right, action, remedy, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including, but not limited to, Avoidance Actions; (d) any counterclaim or defense, including fraud, mistake, duress, usury, recoupment, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer or similar claim.

22.     "*CEO Director*" means the chief executive officer of the Reorganized Debtors, as a Director on the Reorganized Company Board as set forth in Article V.I.

23.     "*Chapter 11 Case*" means, with respect to a particular Debtor, the case under chapter 11 of the Bankruptcy Code pending for such Debtor in the Bankruptcy Court, jointly administered with each other Debtors' Chapter 11 Case, and the "*Chapter 11 Cases*" means every Debtors' Chapter 11 Case, collectively.

3

24.     "*claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, and "*Claim*" means a claim as such term is defined in section 101(5) of the Bankruptcy Code against a Debtor.

25.     "*Class*" means a class of Claims or Interests designated in Article III of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code.

26.     "*Combined Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation and approval of the Disclosure Statement, as such hearing may be continued from time to time.

27.     "*Committee*" means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, if any.

28.     "*Confirmation Date*" means the date upon which Confirmation occurs.

29.     "*Confirmation Order*" means the Bankruptcy Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement, with such order being consistent with the Restructuring Support Agreement and otherwise satisfactory to the Debtors and the Required Consenting Term Lenders and, with respect to the rights and benefits of the ABL DIP Facility Lenders, ABL DIP Facility Agent, Existing ABL Facility Lenders and Existing ABL Facility Agent, or to the extent relating to the ABL DIP Facility Claims or Existing ABL Facility Claims, otherwise satisfactory to the ABL DIP Facility Agent.

30.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

31.     "*Consenting Term Lenders*" means each Term Loan Lender that is party to the Restructuring Support Agreement that is a holder of, or an investment advisor or an investment manager to a holder or holders of, Term Loan Claims.

32.     "*Consummation*" means the occurrence of the Effective Date.

33.     "*D&O Policy*" means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability maintained by the Debtors and in effect or purchased as of the Petition Date.

34.     "*Debtor*" or "*Debtors*" have the meaning specified in the Introduction hereto.

35.     "*Description of Restructuring Transactions*" means a summary description of certain Restructuring Transactions, including any changes to the corporate and/or capital structure of the Debtors (to the extent known), to be made on the Effective Date as determined by the Debtors, the Required Consenting Term Lenders and the Required DIP Commitment Parties.

36.     "*DIP Facilities*" means the ABL DIP Facility and the Term Loan DIP Facility.

4

37.     "*DIP Orders*" means the Interim Period DIP Order and Final DIP Order.

38.     "*Director*" means a member of the board of directors or board of managers, as applicable, of Reorganized Company.

39.     "*Disbursing Agent*" means one or more of the Reorganized Debtors and/or any other Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions contemplated under the Plan.

40.     "*Disclosure Statement*" means that certain *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and its Affiliated Debtors and Debtors in Possession*, dated February 7, 2020, as it may be amended, supplemented, restated, or modified from time to time, including all exhibits and schedules thereto and references therein, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and as approved by the Bankruptcy Court.

41.     "*Disputed*" means, with respect to a Claim, (i) any Claim, which Claim is disputed under Article V of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (ii) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed, (iii) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent or disputed, and as to which no request for payment or proof of Claim has been filed, or (iv) any Claim that is otherwise disputed by any of the Debtors or Reorganized Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

42.     "*Distribution Record Date*" means the Confirmation Date or such later date as agreed to by the Reorganized Debtors, the Required Consenting Term Lenders and the Required DIP Commitment Parties in writing.

43.     "*Effective Date*" means the date selected by the Debtors and the Required Consenting Term Lenders, in accordance with the Restructuring Support Agreement, that is the first Business Day after the Confirmation Date, on which date all conditions to the Effective Date specified in Article IX.A have been satisfied or waived in accordance with Article IX.B.

44.     "*Entity*" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

45.     "*Estate*" means, with respect to a particular Debtor, the estate created for such Debtor upon commencement of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and the "*Estates*" means every Debtors' Estate, collectively.

46.     "*Exculpated Parties*" means, collectively, and in each case in their capacities as such during the Chapter 11 Cases, (i) the Debtors, (ii) the Reorganized Debtors, (iii) any statutory committee appointed in the Chapter 11 Cases, (iv) the parties to the Restructuring Support Agreement, (v) each of the Agents in their capacities as such, (vi) the Existing ABL

5

Facility Lenders and any lead arrangers, bookrunners and syndication agents under the Existing ABL Facility Credit Agreement, (vii) the ABL DIP Facility Lenders and any lead arrangers, bookrunners and syndication agents under the ABL DIP Facility Agreement, (viii) the New ABL Facility Agent, New ABL Facility Lenders and any lead arrangers, bookrunners and syndication agents under the New ABL Facility Credit Agreement, (ix) the Consenting Term Lenders, (x) the Term Loan DIP Facility Lenders, (xi) the Backstop Commitment Parties, and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, and all of their respective current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, investment managers, investment advisors, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such.

47.     "*Executory Contract*" means a contract to which one or more of the Debtors are party, other than an Unexpired Lease, which contract is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

48.     "*Existing ABL Facility*" means the senior secured asset-based revolving credit facility made available by the Existing ABL Facility Lenders to the Debtors to provide financing and otherwise extend credit and other financial accommodations prior to the filing of the Chapter 11 Cases pursuant to and subject to the terms and conditions of the Existing ABL Facility Credit Agreement.

49.     "*Existing ABL Facility Agent*" means Wells Fargo Capital Finance, LLC, as Administrative Agent and Collateral Agent under the Existing ABL Facility Credit Agreement.

50.     "*Existing ABL Facility Claims*" means all Claims against any Debtor arising on account of the Existing ABL Facility or pursuant to or secured by the Existing ABL Credit Agreement or the other Existing ABL Facility Loan Documents, and which constitute "Obligations," as such term is defined in the Existing ABL Credit Agreement, solely to the extent not Paid in Full as contemplated by the DIP Orders.

51.     "*Existing ABL Facility Credit Agreement*" means that certain Amended and Restated Revolving Credit Agreement by and among American Commercial Lines Inc. and certain of its subsidiaries, as Borrowers, lenders, and issuing banks from time to time party thereto, and the Existing ABL Facility Agent, dated as of November 12, 2015 as amended, modified, or supplemented from time to time.

52.     "*Existing ABL Facility Lenders*" means the financial institutions party from time to time to the Existing ABL Credit Agreement as lenders, issuing banks or bank product providers, in their respective capacities as such.

53.     "*Existing ABL Facility Loan Documents*" means the documents that govern the Existing ABL Facility, including the Existing ABL Credit Agreement.

6

54. "*Final DIP Order*" means the Bankruptcy Court order authorizing use of cash collateral, the ABL DIP Facility and the Term Loan DIP Facility on a final basis.

55. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or (b) any appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, petitioned, or moved.

56. "*First Amendment to Term Loan Agreement*" means that certain First Amendment to Term Loan Credit Agreement, dated as of December 30, 2019, by and among the Debtors party thereto, the Term Loan Agent and the other Term Loan Lenders party thereto.

57. "*Finn Holding*" has the meaning specified in the Introduction hereto.

58. "*General Administrative Expense*" means any Administrative Expense other than Professional Fees.

59. "*General Unsecured Claim*" means any Unsecured Claim, other than a Sponsor Claim or an Intercompany Claim, against any Debtor.

60. "*Global Settlement*" has the meaning specified in Article V.A of the Plan.

61. "*Governmental Unit*" means any "governmental unit," as such term is defined in section 101(27) of the Bankruptcy Code.

62. "*Impaired*" means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

63. "*Indemnification Obligation*" means (i) any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, sponsors, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date; and (ii) all indemnification obligations that are surviving obligations pursuant to the terms of the Payoff Letter

64. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

65. "*Interest*" means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code) or other equity interest in a Debtor, including any share of common or preferred stock, membership interest, partnership unit, or other evidence of ownership of, or a similar interest in, a Debtor, and any option, warrant, or right, contractual or otherwise, to

7

purchase, sell, subscribe, or acquire any such equity security or other equity interest in a Debtor, whether or not transferable, issued or unissued, authorized, or outstanding.

66. "*Interim Period DIP Order*" means the Bankruptcy Court order authorizing use of cash collateral, the ABL DIP Facility and the Term Loan DIP Facility for the period pending entry of the Final DIP Order.

67. "*Jones Act*" means, collectively, the U.S. citizenship and cabotage laws principally contained in 46 U.S.C. § 50501(a), (b) and (d) and 46 U.S.C. Chapters 121 and 551 and any successor statutes thereto, together with the rules and regulations promulgated thereunder by the U.S. Coast Guard and the U.S. Maritime Administration and their practices enforcing, administering, and interpreting such laws, statutes, rules, and regulations, in each case as amended or supplemented from time to time, relating to the ownership and operation of U.S.-flag vessels in the U.S. coastwise trade.

68. "*Jones Act Restriction*" has the meaning set forth in Article V.N of the Plan.

69. "*Lien*" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

70. "*Management Incentive Plan*" means the management incentive plan that shall become effective and be implemented as of the Effective Date, in accordance with the terms set forth in the MIP Term Sheet annexed as Exhibit C to the Restructuring Support Agreement.

71. "*New ABL Facility*" means the new senior secured asset-based revolving credit facility and first-in last-out term loan, in the anticipated aggregate amount of $650 million, to be made available to the Reorganized Debtors pursuant to and subject to the terms and conditions of the New ABL Facility Credit Agreement and the other New ABL Facility Documents.

72. "*New ABL Facility Agent*" means Wells Fargo Capital Finance, LLC, in its capacity as administrative agent under the New ABL Facility Credit Agreement and the other New ABL Facility Documents.

73. "*New ABL Facility Credit Agreement*" means the credit agreement, to be dated as of the Effective Date, that will govern the New ABL Facility, in such form filed with the Plan Supplement.

74. "*New ABL Facility Documents*" means the following documents that will govern the New ABL Facility: (a) the New ABL Facility Credit Agreement, and (b) such other financing documents related to the New ABL Facility, including intercreditor agreements, each in form and substance reasonably acceptable to (i) the Reorganized Debtors, and (ii) the Required Consenting Term Lenders, the New ABL Facility Lenders, and the New ABL Facility Agent.

75. "*New ABL Facility Lenders*" means the financial institutions party from time to time to the New ABL Facility Credit Agreement as lenders, issuing banks, or bank product providers, in their respective capacities as such.

76.     "*New Boards*" means the Reorganized Company Board and New Subsidiary Boards.

77.     "*New Common Equity*" means the common equity in the Reorganized Company to be authorized, issued, and outstanding on and after the Effective Date.

78.     "*New Organizational Documents*" means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, certificates of limited partnership, agreements of limited partnership, the Shareholder Agreement, or such other organizational documents of the Reorganized Debtors, the forms of which shall be acceptable to the Debtors and the Required Consenting Term Lenders and included in the Plan Supplement.

79.     "*New Money Preferred Equity*" means, subject to the Jones Act Restriction, the up to $217 million convertible preferred equity in the Reorganized Company, of which pursuant to the Plan (i) $50 million will be issued to the Term Loan DIP Facility Lenders in exchange for Term Loan DIP Facility Claims, (ii) up to $150 million will be issued through the Rights Offering in accordance with the Rights Offering Procedures, and (iii) additional amounts will be issued to reflect (x) the DIP Backstop Premium (as defined in the Term Loan DIP Facility Agreement), (y) the DIP Conversion Discount (as defined in the Term Loan DIP Facility Agreement) upon the conversion of Term Loan DIP Facility Claims, and (z) the Backstop Commitment Premium (as defined in the Backstop Commitment Agreement).

80.     "*New Money Preferred Warrants*" means 25-year warrants for New Money Preferred Equity issued pursuant to the New Money Preferred Warrant Agreement.

81.     "*New Money Preferred Warrant Agreement*" means that certain warrant agreement that shall govern the terms of the New Money Preferred Warrants, the form of which shall be included in the Plan Supplement.

82.     "*New Preferred Equity*" means the New Take Back Preferred Equity and the New Money Preferred Equity.

83.     "*New Take Back Preferred Equity*" means, subject to the Jones Act Restriction, the $200 million preferred equity in the Reorganized Company to be authorized, issued, or outstanding on and after the Effective Date.

84.     "*New Take Back Preferred Warrants*" means 25-year warrants for Take Back Preferred Equity issued pursuant to the New Take Back Preferred Warrant Agreement.

85.     "*New Take Back Preferred Warrant Agreement*" means that certain warrant agreement that shall govern the terms of the New Take Back Preferred Warrants, the form of which shall be included in the Plan Supplement.

86.     "*New Sponsor Warrants*" means 25-year warrants for 5% of New Common Equity exercisable at a strike price of $0.01 and issued pursuant to the New Sponsor Warrant Agreement.

10442818v1

87.     "*New Sponsor Warrant Agreement*" means that certain warrant agreement that shall govern the terms of the New Sponsor Warrants, the form of which shall be included in the Plan Supplement.

88.     "*New Subsidiary Boards*" means the initial board of directors or managers (as applicable) for the Reorganized Debtors (other than the Reorganized Company), as appointed pursuant to Article V.I.

89.     "*New Term Lender Warrant Agreement*" means that certain warrant agreement that shall govern the terms of the New Term Lender Warrants, the form of which shall be included in the Plan Supplement.

90.     "*New Term Lender Warrants*" means 25-year warrants for of New Common Equity issued pursuant to the New Term Lender Warrant Agreement.

91.     "*New Warrants*" means the New Sponsor Warrants, the New Take Back Preferred Warrants, the New Money Preferred Warrants, and the New Term Lender Warrants.

92.     "*Non-U.S. Citizen*" means an Entity other than a U.S. Citizen.

93.     "*Notice of Entry of Confirmation Order*" means a notice to be sent by the Reorganized Debtors following the entry of the Confirmation Order stating that the Bankruptcy Court has confirmed the Plan and providing such other information as required by the Confirmation Order.

94.     "*Other Secured Claim*" means any Secured Claim against any Debtor other than an Administrative Expense, ABL DIP Facility Claim, Term Loan DIP Facility Claim, Priority Claim, Existing ABL Facility Claim, or Term Loan Claim.

95.     "*Payment in Full*" or "*Paid in Full*" means: (a) with respect to the Existing ABL Facility Claims and ABL DIP Facility Claims, (i) the payment in full in Cash or immediately available funds of all such obligations, (ii) the termination or expiration of all commitments to extend credit to the Debtors, (iii) the termination of, or providing Cash collateral in respect of, or providing other security or treatment as agreed between the Debtors and the applicable Existing ABL Facility Lender or ABL DIP Facility Lender all outstanding letters of credit and "Secured Bank Product Obligations" (as such term is defined in the ABL DIP Facility Agreement and Existing ABL Facility Credit Agreement) that compose a portion of the Existing ABL Facility Claims or ABL DIP Facility Claims, as set forth in the Existing ABL Facility Credit Agreement or ABL DIP Facility Agreement, respectively, (iv) the Cash collateralization in respect of any asserted or threatened claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which any Existing ABL Facility Lender, any ABL DIP Facility Lender, Existing ABL Facility Agent or ABL DIP Facility Agent may be entitled to indemnification by any Debtor pursuant to the indemnification provisions in the Existing ABL Facility Credit Agreement and related loan documents and ABL DIP Facility Agreement and related loan documents, as applicable, (v) a general release (in form and substance satisfactory to ABL DIP Facility Agent) of any and all claims and causes of action that could have been asserted or raised under or in connection with the Existing ABL Facility or ABL DIP Facility, or

10

both, and (vi) customary survival of indemnification obligations under the ABL DIP Facility and related loan documents.

96. "*Payoff Letter*" means the payoff letter in respect of Payment in Full of the ABL DIP Facility Claims and Existing ABL Facility Claims, in form and substance acceptable to the Debtors and the ABL DIP Facility Agent.

97. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

98. "*Plan Supplement*" means the compilation of documents (or forms thereof), schedules, and exhibits to the Plan, as each may be amended, supplemented, or modified from time to time in accordance with the Plan, Restructuring Support Agreement, Bankruptcy Code, and Bankruptcy Rules, to be filed with the Bankruptcy Court which may include, as applicable: (a) the New Organizational Documents; (b) a list of the members of the New Boards (to the extent known); (c) the New ABL Facility Credit Agreement; (d) the Warrant Agreements, (e) the Management Incentive Plan; (f) the Description of Restructuring Transactions, (g) the Payoff Letter, and (h) such other documents as are necessary or advisable to implement the Restructuring contemplated by the Restructuring Support Agreement and the Plan, each of which shall be consistent with the Restructuring Support Agreement and, except as otherwise provided herein, acceptable in form and substance to the Required Consenting Term Lenders and, solely with respect to the Payoff Letter and New ABL Credit Facility Agreement, ABL DIP Facility Agent and New ABL Facility Agent. For the avoidance of doubt, the Debtors shall have the right to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with the Plan, Restructuring Support Agreement, Bankruptcy Code, and Bankruptcy Rules; *provided that* any such amendment or modification shall be acceptable in form and substance to the Required Consenting Term Lenders, the Required DIP Commitment Parties, and solely with respect to any Plan Supplement document that materially affects the rights or obligations of the ABL DIP Facility Agent, ABL DIP Facility Lenders, New ABL Facility Agent or New ABL Facility Lenders (including the Payoff Letter and New ABL Facility Credit Agreement), in form and substance reasonably acceptable to the ABL DIP Facility Agent and New ABL Facility Agent.

99. "*Plan*" has the meaning specified in the Introduction hereto.

100. "*Plan Term Sheet*" means the American Commercial Lines Inc. restructuring term sheet that shall be implemented as of the Effective Date in accordance with the terms set forth in the restructuring term sheet annexed as <u>Exhibit A</u> to the Restructuring Support Agreement

101. "*Priority Claim*" means any Priority Non-Tax Claim or Priority Tax Claim.

102. "*Priority Non-Tax Claim*" means any Claim against any Debtor entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Expense, Term Loan DIP Facility Claim, ABL DIP Facility Claim, or Priority Tax Claim.

103. "*Priority Tax Claim*" means any Claim of a Governmental Unit against any Debtor entitled to priority pursuant to section 502(i) or 507(a)(8) of the Bankruptcy Code.

104. "*Pro Rata*" means, for the holder of an Allowed Claim or Interest in a particular Class, proportional to the ratio of the amount of such Allowed Claim or Interest to the amount of all Allowed Claims or Allowed Interests (as applicable) in the same Class.

105. "*Professional*" means any Entity that is, by Bankruptcy Court order: (a) employed for legal, financial advisory, accounting, or other professional services during the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code and to be compensated and reimbursed therefor in accordance with sections 327, 328, 329, 330, 331, and/or 1103 of the Bankruptcy Code; or (b) allowed compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code upon a motion on notice; provided, however, that "Professional" shall not include any professional-service Entity that the Debtors are authorized to employ, compensate, and reimburse in the ordinary course of its businesses. For the avoidance of doubt, "Professional" does not include any professional-service Entity retained by the Existing ABL Facility Agent, the Term Loan Agent, or the Consenting Term Lenders.

106. "*Professional Fees Escrow Account*" means the account established on the Effective Date pursuant to Article II.C.2.

107. "*Professional Fees*" means the accrued, contingent, and/or unpaid compensation for services rendered (including hourly, transaction, and success fees), and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, 503(b)(4), and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional. To the extent that any amount of the foregoing compensation or reimbursement is denied or reduced by Final Order of the Bankruptcy Court or any other court of competent jurisdiction, such amount shall no longer constitute Professional Fees.

108. "*Released Parties*" means to the extent such party has not opted out of being a Releasing Party (as set forth in the definition thereof), all of the following, each in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors, (c) the Agents, (d) the Existing ABL Facility Lenders and any lead arrangers, bookrunners and syndication agents under the Existing ABL Facility Credit Agreement, (e) the Term Loan Lenders; (f) the Backstop Commitment Parties, (g) the ABL DIP Facility Lenders and any lead arrangers, bookrunners and syndication agents under the ABL DIP Facility Agreement; (h) the Term Loan DIP Facility Lenders; (i) the Consenting Term Lenders; (j) New ABL Facility Agent, New ABL Facility Lenders and any lead arrangers, bookrunners and syndication agents under the New ABL Facility Credit Agreement; (k) the Sponsor; (l) to the extent that the applicable foregoing Entity has not opted out of being a Releasing Party, each of the foregoing Entities' respective successors, assigns, current and former shareholders, subsidiaries, directors, officers, funds, affiliates, members, employees, partners, limited partners, general partners, members, management companies, investment managers, investment advisors, investment bankers, financial advisors, restructuring advisors, accountants, managers, agents, representatives, principals, consultants, attorneys, and professional advisors (each in their capacity as such); and (m) to the extent that the applicable foregoing Entity has not opted out of being a Releasing Party (or, in the case of any Entity identified in clause (l), if the party in clause (a) through (k) to which

12

such Entity relates has not opted out of being a Releasing Party), each such Entity's predecessors.

109.    "*Releasing Parties*" means all of the following, each in their respective capacities as such: (a) the Debtors; (b) Released Parties (each in their capacity as such); (c) the holders of all Claims or Interests who vote to accept the Plan, (d) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and who fail to opt out of the releases in Article VIII.D of the Plan by checking the opt-out election box in the applicable ballot or notice, (e) the holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (f) the holders of all Claims and Interests who were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (g) all other holders of Claims and Interests to the maximum extent permitted by law.

110.    "*Reorganized Company*" means Finn Holding, ACL, CBL or any successor to any such entity, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

111.    "*Reorganized Company Board*" means the initial board of Directors of the Reorganized Company, as appointed pursuant to Article V.I.

112.    "*Reorganized Debtors*" means, collectively, the Reorganized Company and its direct and indirect subsidiaries, or any successors thereto, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

113.    "*Required Consenting ABL DIP Facility Lenders*" means, as of any time of determination, the ABL DIP Facility Lenders holding a majority of the aggregate amount of all ABL DIP Facility Claims held at such time by all of the ABL DIP Facility Lenders.

114.    "*Required Consenting Lenders*" means, as of any time of determination, the Required DIP Commitment Parties, the Required Consenting Term Lenders, and the Required Consenting ABL DIP Facility Lenders.

115.    "*Required Consenting Term Lenders*" means, as of any time of determination, the Consenting Term Lenders holding a majority of the aggregate amount of all Term Loan Claims held at such time by all of the Consenting Term Lenders.

116.    "*Required DIP Commitment Parties*" shall have the meaning set forth in the Restructuring Support Agreement.

117.    "*Restructuring*" means the comprehensive restructuring of the existing debt and other obligations of the Debtors on the terms and conditions set forth in the Plan and the Restructuring Support Agreement.

118.    "*Restructuring Expenses*" means the reasonable and documented fees and out-of-pocket expenses when due of (i) Goldberg Kohn Ltd., as counsel to the Existing ABL Facility Agent and the ABL DIP Facility Agent, (ii) FTI Consulting, Inc., as financial advisor to the Existing ABL Facility Agent and the ABL DIP Facility Agent, (iii) McGlinchey Stafford PLLC, as maritime legal counsel to the Existing ABL Facility Agent and the ABL DIP Facility Agent,

13

(iv) Bracewell LLP, as local legal counsel to the Existing ABL Facility Agent and the ABL DIP Facility Agent, (v) Davis Polk & Wardwell LLP as counsel to the Consenting Term Lenders and DIP Term Loan Lenders, (vi) Evercore Group L.L.C., as financial advisor to the Consenting Term Lenders, (vii) Winston & Strawn LLP, as maritime legal counsel to the Consenting Term Lenders, and (viii) Rapp & Krock, PC as local legal counsel to the Consenting Term Lenders and DIP Term Loan Lenders.

119. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of January 31, 2020, by and among the Debtors, the Consenting Term Lenders, and the Sponsor, together with all exhibits and schedules thereto, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

120. "*Restructuring Transactions*" has the meaning set forth in Article V.B.

121. "*Rights Offering*" means the offering of Subscription Rights in accordance with the Rights Offering Procedures.

122. "*Rights Offering Participant*" means any holder of an Allowed Term Loan Claim that subscribes for Rights Offering Securities in the Rights Offering in accordance with the Rights Offering Procedures.

123. "*Rights Offering Procedures*" means the procedures for conducting the Rights Offering attached to Backstop Commitment Agreement.

124. "*Rights Offering Securities*" means the New Money Preferred Equity and New Money Preferred Warrants offered in the Rights Offering. Pursuant to the Restructuring Support Agreement and the Backstop Commitment Agreement, 22.5% of the Rights Offering Securities shall be reserved for the Consenting Term Lenders, and 77.5% of the Rights Offering Securities shall be offered pro rata to all holders of Allowed Term Loan Claims.

125. "*Schedules*" means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court to the extent such filing is not waived pursuant to an order of the Bankruptcy Court.

126. "*Secured Claim*" means any Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

127. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

128. "*Shareholder Agreement*" means the shareholder agreement to be entered into (or as may be deemed entered into, as applicable) by the Reorganized Debtors and the holders of New Common Equity, New Preferred Equity and New Warrants on the Effective Date that will

govern certain matters related to the governance of the Reorganized Debtors, in form and substance consistent with the Plan Term Sheet.

129. "*Sponsor*" means certain affiliates and investment funds managed by Platinum Equity, LLC that are party to the Restructuring Support Agreement.

130. "*Sponsor Claim*" means any Claim against any of the Debtors that is held by the Sponsor.

131. "*Subscription Rights*" means the rights to acquire up to $150 million of Rights Offering Securities pursuant to the Rights Offering Procedures and the Backstop Commitment Agreement.

132. "*Term Loan Agent*" means Bank of America, N.A., as administrative agent and collateral agent under the Term Loan Agreement.

133. "*Term Loan Agreement*" means that certain Term Loan Credit Agreement, dated as of November 12, 2015, among Commercial Barge Line Company, as borrower, American Commercial Lines Inc., as holdings, and various lenders thereto, as amended by the First Amendment to Term Loan Agreement, and as otherwise amended,, modified, or supplemented from time to time.

134. "*Term Loan Claims*" means all Claims against any Debtor arising on account of the term loan made available to the Debtors pursuant to the Term Loan Agreement, and which constitute "Obligations," as such term is defined in the Term Loan Agreement. The Term Loan Claims shall be Allowed in an aggregate principal amount of approximately $948,750,000 plus any accrued and unpaid interest at the non-default rate as of the Petition Date plus all other unpaid and outstanding Obligations as of the Petition Date, as applicable, and which Term Loan Claims shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization or reduction of any kind, including pursuant to Section 502(d) of the Bankruptcy Code.

135. "*Term Loan DIP Facility*" means the secured term loan facility made available by the Term Loan DIP Facility Lenders to the Debtors to provide financing and otherwise extend credit during the pendency of the Chapter 11 Cases pursuant to and subject to the terms and conditions of the Term Loan DIP Facility Agreement and the DIP Orders.

136. "*Term Loan DIP Facility Agent*" means Cortland Capital Market Services, LLC, as Administrative Agent under the Term Loan DIP Facility Agreement.

137. "*Term Loan DIP Facility Agreement*" means that certain Senior Secured Debtor-in-Possession Term Loan Agreement by and among American Commercial Lines Inc., as Holdings, Commercial Barge Line Company and certain of its subsidiaries, as Borrowers, the other guarantors, lenders, and issuing banks from time to time party thereto, and the Term Loan DIP Facility Agent, as amended, modified, or supplemented from time to time, as approved by the DIP Orders.

138. "*Term Loan DIP Facility Claims*" means all Claims against any Debtor arising on account of the Term Loan DIP Facility or pursuant to or secured by the Term Loan DIP

15

Facility Loan Agreement, and which constitute "Obligations," as such term is defined in the Term Loan DIP Facility Agreement.

139.     "*Term Loan DIP Facility Lenders*" means the financial institutions party from time to time to the Term Loan DIP Facility Agreement as lenders.

140.     "*Term Loan Lenders*" means the financial institutions party from time to time to the Term Loan Agreement as lenders, solely in their respective capacities as such.

141.     "*Termination Event*" means a termination event as set forth in Section 7 of the Restructuring Support Agreement.

142.     "*Unexpired Lease*" means a lease to which one or more of the Debtors are party, which lease is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

143.     "*Unimpaired*" means, with respect to a Class, Claim, Interest, or a holder of a Claim or Interest, that such Class, Claim, Interest, or holder is not Impaired.

144.     "*Unsecured Claim*" means any Claim, other than an Administrative Expense, Term Loan DIP Facility Claim, ABL DIP Facility Claim, Priority Claim, Intercompany Claim, Existing ABL Facility Claim, Term Loan Claim, or Other Secured Claim.

145.     "*U.S. Citizen*" means an Entity that is a citizen of the United States within the meaning of the Jones Act, eligible and qualified to own and operate U.S.-flag vessels in the U.S. coastwise trade.

146.     "*U.S. Citizenship Affidavit*" means an Affidavit of United States Citizenship by a holder of a Term Loan Claim certifying that such holder is a U.S. Citizen.

147.     "*U.S. Citizen Determination Procedures*" has the meaning set forth in Article V.N.B.

148.     "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

149.     "*Voting Record Date*" means February 3, 2020.

150.     "*Warrant Agreements*" means, collectively, the New Take Back Preferred Warrant Agreement, the New Money Preferred Warrant Agreement, the New Sponsor Warrant Agreement, and the New Term Lender Warrant Agreement.

B.     *Rules of Interpretation*

For purposes of the Plan and unless otherwise specified herein: (1) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (2) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (3) the words "herein,"

16

"hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (4) all references to articles or Articles are references to the Articles hereof; (5) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (6) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (7) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, modified, or supplemented; (8) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (9) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (10) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; (11) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (12) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (13) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or entity governance matters relating to the Debtors or the Reorganized Debtors shall be governed by the laws of the state of incorporation or organization of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

17

# ARTICLE II
## ADMINISTRATIVE EXPENSES AND
## OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses, ABL DIP Facility Claims, Term Loan DIP Facility Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Expenses*

Each holder of an Allowed General Administrative Expense, to the extent such Allowed General Administrative Expense has not already been paid during the Chapter 11 Cases and without any further action by such holder, shall receive, in full satisfaction of its General Administrative Expense, Cash equal to the Allowed amount of such General Administrative Expense on the Effective Date (or, if payment is not then due, when such payment otherwise becomes due in the applicable Debtor's ordinary course of business without further notice to or order of the Bankruptcy Court), unless otherwise agreed by the holder of such General Administrative Expense and the applicable Debtor. For the avoidance of doubt, holders of a General Administrative Expense shall not be required to file a request for payment of a claim with the Bankruptcy Court.

B.      *Restructuring Expenses*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and without any requirement for review or approval by the Bankruptcy Court or any other party. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses. In addition, the Debtors and Reorganized Debtors (as applicable) shall continue to pay Restructuring Expenses after the Effective Date when due in payable in the ordinary course related to implementation, consummation and defense of the Plan, whether incurred before, on or after the Effective Date.

C.      *Professional Fees*

1.      Final Fee Applications

All final requests for payment of Professional Fees incurred prior to the Effective Date must be filed with the Bankruptcy Court and served on the Reorganized Debtors, the Office of the United States Trustee, counsel to the Committee (if any), and all other parties that have requested notice in these Chapter 11 Cases by no later than forty-five (45) days after the Effective Date, unless the Reorganized Debtors agrees otherwise in writing. Objections to Professional Fees must be filed with the Bankruptcy Court and served on the Reorganized

18

Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the applicable Professional Fees. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Professional Fees shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in full in Cash from the Professional Fees Escrow Account; *provided*, *however*, that if the funds in the Professional Fees Escrow Account are insufficient to pay the full Allowed amounts of the Professional Fees, the Reorganized Debtors shall promptly pay any remaining Allowed amounts from its Cash on hand.

For the avoidance of doubt, the immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and the Debtors are permitted to pay without seeking further authority from the Bankruptcy Court, compensation for services and reimbursement of expenses in the ordinary course of the Debtors' businesses (and in accordance with any relevant prior order of the Bankruptcy Court), which payments may continue notwithstanding the occurrence of Confirmation and the Effective Date. Upon the Effective Date, the Term Loan DIP Facility Agent, Term Loan DIP Facility Lenders, ABL DIP Facility Agent and ABL DIP Facility Lenders shall have no further obligations with respect to the Carve Out under and as defined in the DIP Orders.

2.     Professional Fees Escrow Account

On the Effective Date, the Debtors shall fund the Professional Fees Escrow Account in an amount equal to all asserted Claims for Professional Fees outstanding as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts provided prior to or as of the Effective Date payable by the Debtors or the Reorganized Debtors). Amounts held in the Professional Fees Escrow Account shall not constitute property of the Reorganized Debtors. The Professional Fees Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Professional Fees Escrow Account following payment to all holders of Claims for Professional Fees under the Plan, any such amounts shall be returned to, and constitute property of, the Reorganized Debtors.

Professionals shall estimate their unpaid Claims for Professional Fees incurred in rendering services to the Debtors, their Estates or the Committee (if any), as applicable, before and as of the Effective Date and shall deliver such estimate to counsel for the Debtors no later than ten (10) Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of filed Claims for Professional Fees. If a Professional does not provide an estimate, the Debtors shall estimate the unpaid and unbilled fees and expenses of such Professional in order for such Professional to be entitled to payment from the Professional Fees Escrow Account. The total amount proposed to be allocated to the Professional Fees Escrow Account and pursuant to this Section shall be provided to the attorneys for the Debtors and the Consenting Term Lenders no later than three (3) Business Days before the Effective Date.

19

3.  Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, promptly pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Reorganized Debtors on and after the Effective Date. On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

D.  *ABL DIP Facility Claims*

On the Effective Date and subject to the terms of the Payoff Letter, except to the extent such holder has agreed to an alternative treatment, each holder of any Allowed ABL DIP Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, (i) at the option of such holder of such Allowed ABL DIP Facility Claim, on a dollar-for-dollar basis, first-lien, first-out loans or commitments (as applicable) under the New ABL Facility; (ii) Payment in Full in Cash; or (iii) such other less favorable treatment as to which the Debtors and the holder of such Allowed ABL DIP Facility Claims will have agreed upon in writing.

E.  *Term Loan DIP Facility Claims*

Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Term Loan DIP Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, subject to the U.S. Citizen Determination Procedures (i) its Pro Rata share of the $50 million of the New Money Preferred Equity, and/or (ii) New Money Preferred Warrants. Each holder of an Allowed Term Loan DIP Facility Claim shall be entitled to receive a distribution in the form of New Money Preferred Equity to the extent permitted under the Jones Act Restriction, and/or to the extent that New Money Preferred Equity cannot be issued to such holder because it is a Non-U.S. Citizen and the amount of New Money Preferred Equity to be delivered to it under all sections of the Plan, when added to the New Money Preferred Equity being issued under the Plan to other Non-U.S. Citizens as of the Effective Date would exceed the Jones Act Restriction, New Money Preferred Warrants. The percentage ratio of the number of shares of New Money Preferred Equity to the number of New Money Preferred Warrants to be issued to each holder of an Allowed Term Loan DIP Facility Claim that is a Non-U.S. Citizen is subject to the priorities set forth in the New Money Preferred Warrant Agreement.

F.  *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim

shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim also is secured, such Claim shall, to the extent it is Allowed, be treated as an Allowed Other Secured Claim if such Claim is not otherwise paid or satisfied in full.

# ARTICLE III
# CLASSIFICATION AND TREATMENT OF
# CLAIMS AND INTERESTS

A.  *Classification of Claims and Interests*

Claims and Interests, except for Administrative Expenses, ABL DIP Facility Claims, Term Loan DIP Facility Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim or Allowed Interest, as applicable, in that Class. To the extent a specified Class does not include any Allowed Claims or Allowed Interests, as applicable, then such Class shall be deemed not to exist.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor. Pursuant to section 1122 of the Bankruptcy Code, the classification of Claims and Interests is as follows:

| Class | Claims or Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to accept |
| 3 | Existing ABL Facility Claims | Unimpaired | Deemed to accept |
| 4 | Term Loan Claims | Impaired | Entitled to vote |
| 5 | General Unsecured Claims | Unimpaired | Deemed to accept |
| 6 | Intercompany Claims | Unimpaired | Deemed to accept |
| 7 | Intercompany Interests | Unimpaired | Deemed to accept |
| 8 | Interests in Finn Holding | Impaired | Entitled to vote |

B.  *Treatment of Claims and Interests*

    1.  Class 1 – Priority Non-Tax Claims

        a.  *Classification*: Class 1 consists of all Allowed Priority Non-Tax Claims. Although all Priority Non-Tax Claims have been placed in one Class for the purposes of nomenclature, the Priority Non-Tax Claims against each

21

10442818v1

applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b.   *Treatment*:  Except to the extent previously paid during the Chapter 11 Cases or such holder agrees to less favorable treatment, each holder of an Allowed Class 1 Claim shall (i) receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, payment equal to the Allowed amount of such Claim, in Cash, on the later of the Effective Date and the date such Claim becomes due and payable in the ordinary course of business or (ii) be otherwise rendered Unimpaired.

c.   *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Secured Claims

a.   *Classification*: Class 2 consists of all Allowed Other Secured Claims. Although all Other Secured Claims have been placed in one Class for the purposes of nomenclature, the Other Secured Claims against each applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b.   *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 2 Claim (i) have its Claim be reinstated or receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, payment equal to the Allowed amount of such Claim, in Cash, on the Effective Date or (ii) be otherwise rendered Unimpaired.

c.   *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

3.   Class 3 – Existing ABL Facility Claims

a.   *Classification*: Class 3 consists of all Allowed Existing ABL Facility Claims. Although all Existing ABL Facility Claims have been placed in one Class for the purposes of nomenclature, the Existing ABL Facility Claims against each applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b.   *Treatment*:  On the Effective Date, each holder of an Allowed Class 3 Claim shall, in full and final satisfaction, settlement, release, and discharge

22

of, and in exchange for, its Allowed Class 3 Claim, receive (i) Payment in Full in Cash; (ii) at the option of such holder of Allowed Class 3 Claims, on a dollar-for-dollar basis, first lien, first-out loans or commitments under the New ABL Facility, or (iii) such other less favorable treatment as to which the Debtors and the holder of such Allowed Class 3 Claim will have agreed upon in writing.

c.    *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Allowed Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

4.    **Class 4 – Term Loan Claims**

a.    *Classification*: Class 4 consists of all Allowed Term Loan Claims. Although all Allowed Term Loan Claims have been placed in one Class for the purposes of nomenclature, the Allowed Term Loan Claims against each applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b.    *Allowance*: Class 4 Claims are deemed Allowed in the aggregate principal amount of $948,750,000.00, plus any unpaid interest, fees, expenses and other amounts due and owing pursuant to the terms of the Term Loan Agreement as of the Petition Date.

c.    *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 4 Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, in each case subject to the U.S. Citizen Determination Procedures (i) the right to participate in the Rights Offering in accordance with the Rights Offerings Procedures, (ii) its Pro Rata share of the New Take Back Preferred Equity or New Take Back Preferred Warrants, and (iii) its Pro Rata share of the New Common Equity or the New Term Lender Warrants, subject to dilution from the New Sponsor Warrants and conversion of the New Money Preferred Equity and the Management Incentive Plan.

With respect to (ii) above, each holder of an Allowed Class 4 Claim shall be entitled to receive a distribution in the form of New Take Back Preferred Equity to the extent permitted under the Jones Act Restriction, and New Take Back Preferred Warrants to the extent that New Take Back Preferred Equity cannot be issued to such holder because it is a Non-U.S. Citizen and the amount of New Take Back Preferred Equity to be delivered to it under all sections of the Plan, when added to the New Take Back Preferred Equity being issued under the Plan to other Non-U.S. Citizens as of the Effective Date, would exceed the Jones Act Restriction. The percentage ratio of the number of shares of New Take Back Preferred

Equity to the number of New Take Back Preferred Warrants to be issued to each holder of an Allowed Class 4 Claim that is a Non-U.S. Citizen is subject to the priorities set forth in the New Take Back Preferred Warrant Agreement.

With respect to (iii) above, each holder of an Allowed Class 4 Claim shall be entitled to receive a distribution in the form of New Common Equity to the extent permitted under the Jones Act Restriction and New Term Lender Warrants to the extent that New Common Equity cannot be issued to such holder because it is a Non-U.S. Citizen and the Pro Rata share of New Common Equity to be delivered to it under all sections of the Plan, when added to the New Common Equity being issued under the Plan to other Non-U.S. Citizens as of the Effective Date, would exceed the Jones Act Restriction. The percentage ratio of the number of shares of New Common Equity to the number of New Term Lender Warrants to be issued to each holder of an Allowed Class 4 Claim that is a Non-U.S. Citizen is subject to the priorities set forth in the New Term Lender Warrant Agreement.

d. *Voting*: Class 4 is Impaired under the Plan. Therefore, holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

5. Class 5 – General Unsecured Claims

a. *Classification*: Class 5 consists of all Allowed General Unsecured Claims. Although all General Unsecured Claims have been placed in one Class for the purposes of nomenclature, the General Unsecured Claims against each applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b. *Treatment*: Except to the extent previously paid during the Chapter 11 Cases or such holder agrees to less favorable treatment, each holder of an Allowed Class 5 Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment equal to the Allowed amount of such Claim, in Cash, as an when such Claim becomes due and payable in the ordinary course of the applicable Debtor's business or in accordance with applicable court order (plus any interest accrued after the Petition Date with respect to such Claim as may be required by law to render such Claim Unimpaired, as determined by the Debtors or ordered by the Bankruptcy Court), or (ii) such other treatment that renders such holder Unimpaired.

c. *Voting*: Class 5 is Unimpaired under the Plan. Holders of Allowed Class 5 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

24

6.  Class 6 – Intercompany Claims

    a.    *Classification*: Class 6 consists of all Allowed Intercompany Claims. Although all Allowed Intercompany Claims have been placed in one Class for the purposes of nomenclature, the Intercompany Claims against each applicable Debtor shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

    b.    *Treatment*: Each holder of an Allowed Class 6 Claim shall (i) have its Claim be paid, reinstated, or cancelled, to the extent determined appropriate by the Debtors with the reasonable consent of the Required Consenting Term Lenders, or (ii) receive such other treatment that renders such holder Unimpaired.

    c.    *Voting*: Class 6 is Unimpaired under the Plan. Holders of Allowed Class 6 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

7.  Class 7 – Intercompany Interests

    a.    *Classification*: Class 7 consists of all Allowed Interests in the Debtors other than in ACL, separately classified by Debtor.

    b.    *Treatment*: Each holder of an Allowed Interest in Class 7 shall (i) have its Interest be reinstated or (ii) receive such other treatment that renders such holder Unimpaired.

    c.    *Voting*: Class 7 is Unimpaired under the Plan. Holders of Allowed Interests in Class 7 is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

8.  Class 8 – Interests in Finn Holding

    a.    *Classification*: Class 8 consists of all Interests in Finn Holding.

    b.    *Treatment*: Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 8 Interest (or its designee which, if Finn Holdings is not the Reorganized Company, may include Reorganized Finn Holdings or a subsidiary) shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Interest (or an interest in a lower tier subsidiary if Finn Holdings is not the Reorganized Company), its Pro Rata share of the New Sponsor Warrants.

    c.    *Voting*: Class 8 is Impaired under the Plan. Therefore, holders of Allowed Class 8 Claims are entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect (i) the Debtors' or Reorganized Debtors' rights and defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Unimpaired Claims or (ii) the rights and defenses of any holder of Unimpaired Claims in respect of its Unimpaired Claims.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF PLAN

A.     *Voting Classes*

Holders of Class 4 Claims and Class 8 Interests as of the Voting Record Date are entitled to vote to accept or reject the Plan.

An Impaired Class of Claims shall be deemed to have accepted the Plan if, not counting any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (i) holders of at least two-thirds in amount of the Allowed Claims held by holders who actually voted in such Class have voted to accept the Plan, and (ii) holders of more than one-half in number of the Allowed Claims held by holders who actually voted in such Class have voted to accept the Plan.

B.     *Presumed Acceptance of the Plan*

Classes 1, 2, 3, 5, 6, and 7 are Unimpaired under the Plan.  Holders of Claims or Interests in such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.     *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF PLAN

A.     *General Settlement of Claims and Interests*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute an arms' length and good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant

26

to the Plan, and all distributions made to holders of Allowed Claims in any Class and Interests in accordance with the Plan are intended to be, and shall be, final. Among other things, the Plan provides for a global settlement between the Sponsor, the Consenting Term Lenders, and the Debtors (the "Global Settlement") that provides substantial value to the Debtors' estates and allows for all Allowed General Unsecured Claims to be paid in full. In accordance with the terms of the Restructuring Support Agreement, the Sponsor has agreed to waive any Sponsor Claims and such Sponsor Claims are deemed waived upon occurrence of the Effective Date. As consideration for the Sponsor (i) agreeing to participate in and help effectuate certain Restructuring Transactions to the benefit of the Debtors' estates and their creditors, (ii) taking, or refraining from taking, certain actions that could jeopardize the Debtors' tax attributes, (iii) waiving any Sponsor Claims, as set forth herein and in the Restructuring Support Agreement, and (iv) taking other necessary actions to facilitate the Debtors' transition into, and emergence from, these chapter 11 cases, the Sponsor shall be included as a "Released Party" in the Plan. The Debtors and the Consenting Term Lenders believe the Global Settlement is fair and reasonable, and represents a sound exercise of the Debtors' business judgment in accordance with Bankruptcy Rule 9019.

Although the Plan does not provide for substantive consolidation of the Estates, it also does not contemplate individual recoveries on a debtor-by-debtor basis. Rather, it represents a global and integrated series of compromises and settlements of all Allowed Claims and Interests against the Debtors, including, but not limited to, the settlement of all Allowed Claims held by the Consenting Term Lenders. The treatment of the Consenting Term Lenders' Claims and the set forth in the Plan supports maximum recoveries for all other creditors, including the unimpairment of holders of Claims in Class 5 (General Unsecured Claims).

B. *Restructuring Transactions*

Prior to, on, or after the Effective Date, subject to and consistent with the terms of its obligations under the Plan and the Restructuring Support Agreement, and subject to the rights of the Consenting Term Lenders under the Restructuring Support Agreement, the Debtors shall be authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate and other Entity restructuring of their businesses, to otherwise simplify the overall corporate and other Entity structure of the Debtors, and/or to reincorporate or reorganize certain of the Debtors under the laws of jurisdictions other than the laws under which such Debtors currently are incorporated or formed, which restructuring may include one or more mergers, consolidations, dispositions, contributions, liquidations or dissolutions, as may be determined by the Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties and obligations of certain of the Debtors vesting in one or more surviving, resulting or acquiring entities (collectively, the "Restructuring Transactions"). Subject to the terms of the Plan, in each case in which the surviving, resulting or acquiring Entity in any such transaction is a successor to a Debtor, such surviving, resulting or acquiring Entity will perform the obligations of such Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring Entity, which may provide that another Debtor will perform such obligations.

In effecting the Restructuring Transactions, the Debtors shall be permitted to: (1) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and that satisfy the requirements of applicable state law and such other terms to which the applicable Entities may agree; (2) execute and deliver appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree; (3) file appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable state law; and (4) take all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions. To the extent known, any such Restructuring Transactions will be summarized in the Description of Restructuring Transactions, and in all cases, such transactions shall be subject to the terms and conditions of the Plan and any consents or approvals required under the Plan. The terms of the Restructuring Transactions shall be structured to preserve favorable tax attributes, if any, of the Debtors and result in a tax efficient structure and emergence for the Debtors.

C.     *Sources of Consideration for Plan Distributions*

    1.     Rights Offering.

        (a)     *Rights Offering Procedures*. The Debtors will commence and consummate the Rights Offering in accordance with the Rights Offering Procedures. The Rights Offering will be fully backstopped by the Backstop Commitment Parties in accordance with and subject to the terms and conditions of the Backstop Commitment Agreement. Unless otherwise expressly allowed pursuant to the Backstop Commitment Agreement or the Rights Offering Procedures, the Subscription Rights may not be sold, transferred, or assigned.

        (b)     *Use of Proceeds*: On the Effective Date, the proceeds of the Rights Offering shall be used: (i) to provide the Reorganized Debtors with additional liquidity for working capital and general corporate purposes; (ii) to fund Allowed Administrative Expense Claims payable on or after the Effective Date; and (iii) to fund distributions under the Plan.

        (c)     *Backstop Commitment*: In accordance with the Backstop Commitment Agreement and subject to the terms and conditions thereof, each of the Backstop Commitment Parties will purchase, on or prior to the Effective Date, its respective Backstop Commitment Percentage of the Unsubscribed Shares (each as defined in the Backstop Commitment Agreement).

        (d)     *Treatment*: Subject to the U.S. Citizen Determination Procedures and the terms of the Rights Offering Procedures, each Rights Offering Participant shall be entitled to receive its Pro Rata share of (i) New Money Preferred Equity to the extent permitted under the Jones Act Restriction and (ii) New Money Preferred Warrants to the extent that New Money Preferred Equity cannot be issued to such Rights Offering Participant because it is a Non-U.S. Citizen and the Pro Rata share of New Money Preferred Equity to be delivered to it under all sections of the Plan, when added to the New Money Preferred Equity being issued under the Plan

28

to other Non-U.S. Citizens as of the Effective Date, would exceed the Jones Act Restriction. The percentage ratio of the number of shares of New Money Preferred Equity to the number of New Money Preferred Warrants to be issued to each Rights Offering Participant that is a Non-U.S. Citizen is subject to the priorities set forth in the New Money Preferred Warrant Agreement.

    2.    Cash

The Reorganized Debtors shall fund distributions under the Plan required to be paid in Cash, if any, with Cash on hand, including Cash from operations and any Cash received on the Effective Date, borrowings under the DIP Facilities, and borrowings from the New ABL Facility.

    3.    New ABL Facility

On the Effective Date, the Reorganized Debtors shall enter into the New ABL Facility. The New ABL Facility is expected to contain affirmative and negative covenants that are customary for similar facilities, and will be secured by the same assets as the ABL DIP Facility and, at the election of the New ABL Facility Lenders, the "Specified Real Property" (as defined in the DIP Orders).

Confirmation shall be deemed approval of the New ABL Facility, to the extent not approved by the Bankruptcy Court previously (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or Reorganized Debtors in connection therewith) and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the New ABL Facility, including the New ABL Facility Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval, subject to such modifications as the Reorganized Debtors, the Required Consenting Term Lenders, and the New ABL Facility Agent may mutually agree to be necessary to consummate the New ABL Facility.

On the Effective Date, (a) all letters of credit issued under the ABL DIP Credit Agreement, shall be deemed issued or reissued, as applicable, under the New ABL Facility Credit Agreement in accordance with the terms and conditions of the New ABL Facility Credit Agreement, (b) all Liens and security interests granted pursuant to, or in connection with, the ABL DIP Facility Agreement or New ABL Facility Credit Agreement shall (i) be reaffirmed and ratified by the applicable Reorganized Debtors and continue in full force and effect pursuant to the New ABL Facility Credit Agreement, and (ii) be deemed granted by the Reorganized Debtors pursuant to the New ABL Facility Credit Agreement, (c) all Liens and security interests granted pursuant to, or in connection with the Existing ABL Facility Credit Agreement or the New ABL Facility Credit Agreement, as applicable, (including any Liens and security interests granted on the Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the New ABL Facility Credit Agreement and the other "Loan Documents" (as defined therein or any similar defined term), with the priorities established in respect thereof under applicable non-bankruptcy law and any applicable intercreditor agreements, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

10442818v1

The Reorganized Debtors and the persons granted liens and security interests under the New ABL Facility are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

D.      *Corporate Existence*

Except as otherwise provided in the Plan or as otherwise may be agreed to between the Debtors and the Required Consenting Term Lenders, each of the Reorganized Debtors and their direct and indirect subsidiaries shall continue to exist after the Effective Date as a separate corporation, limited liability company, limited partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, limited partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective bylaws, limited liability company agreement, operating agreement, limited partnership agreement (or other formation documents) in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law).

E.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, and any property acquired by the Debtors pursuant to the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or causes of action without supervision or approval by the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Plan shall be conclusively deemed to be adequate notice that Liens, Claims, charges or other encumbrances are being extinguished.  Any Person having a Lien, Claim, charge or other encumbrance against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan.

F.      *Cancellation of Loans, Securities, and Agreements*

Except as otherwise provided in the Plan (including with respect to Unimpaired Claims), on the Effective Date: (1) the Existing ABL Facility Claims, the Term Loan Claims, the ABL DIP Facility Claims, the Term Loan DIP Facility Claims, the Interests in Finn Holding, and any other certificate, equity security, share, note, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of, or ownership interest in, the Debtors that are reinstated pursuant to the Plan or the Payoff Letter), shall be deemed cancelled, surrendered, and discharged as to the Debtors without any need for further action or approval of the Bankruptcy Court or any holder thereof or any other person or entity, and the Reorganized Debtors shall not have any continuing obligations thereunder or in any way related thereto; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan or the Payoff Letter) shall be deemed satisfied in full, released, and discharged without any need for further action or approval of the Bankruptcy Court or any holder thereof or any other person or entity.

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

G.      *Corporate and Other Entity Action*

On the Effective Date, all actions contemplated under the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be deemed authorized and approved in all respects, including: (1) appointment of the New Boards pursuant to Article V.I and any other managers, directors, or officers for the Reorganized Debtors identified in the Plan Supplement; (2) the issuance and distribution of the New Common Equity and New Preferred Equity by the Reorganized Company; (3) entry into the New Organizational Documents; (4) entry into the New ABL Facility Documents; (4) entry into the Warrant Agreements and the issuance and distribution of the warrants thereunder by the Reorganized Company pursuant thereto; (5) implementation of the Restructuring Transactions; (6) implementation of the Management Incentive Plan; and (7) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate or other Entity structure of the Debtors or the Reorganized Debtors, and any corporate or other Entity action required by the Debtors or Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by

31

the security holders, managers, or officers of the Debtors or the Reorganized Debtors. On or before the Effective Date, the appropriate officers of the Debtors or Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effectuate the transactions contemplated under the Plan) in the name, and on behalf, of the Reorganized Debtors, including any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article V.G shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

H. *New Organizational Documents*

On or prior to the Effective Date or as soon thereafter as is practicable, the Reorganized Debtors shall, if so required under applicable state law, file their New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation or formation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states, provinces, or countries of incorporation or formation, and their respective New Organizational Documents, without further order of the Bankruptcy Court.

I. *Directors and Officers of Reorganized Debtors*

As of the Effective Date, the terms of the current members of the boards of directors or managers (as applicable) of the Debtors shall expire, such directors shall be deemed to have resigned, and the initial boards of directors or managers (as applicable), including the New Boards, and the officers of each Reorganized Debtor entity shall be appointed in accordance with the respective New Organizational Documents. The members of the New Boards will be identified in the Plan Supplement, to the extent known. Each such director, manager, and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

    1.     Reorganized Company Board

Subject to compliance with the Jones Act (such that the Reorganized Company shall at all times be a U.S. Citizen eligible and qualified to own and operate U.S.-flag vessels in the U.S. coastwise trade), the initial Reorganized Company Board shall consist of 7 initial Directors on the Effective Date, including the CEO Director and 6 directors appointed by the Ad Hoc Group in accordance with the Restructuring Support Agreement and Shareholders Agreement. The initial Reorganized Company Board shall be disclosed in the Plan Supplement, to the extent known, and in any event will be disclosed prior to the Combined Hearing.

2.    Officers of Reorganized Company

Except as otherwise provided in the Plan Supplement, the officers of the respective Reorganized Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or manager of such Reorganized Debtor on the Effective Date, the members of the board of directors or managers, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager shall be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors or managers, as applicable, of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

3.    New Subsidiary Boards

On the Effective Date, the New Subsidiary Boards shall be appointed in accordance with the applicable New Organizational Documents.

J.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors and the officers and members of the boards of directors thereof are authorized to, and may issue, execute, deliver, file, or record, such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the securities issued pursuant to the Plan in the name, and on behalf, of the Reorganized Debtors, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan or the New Organizational Documents.

K.    *Section 1146 Exemption*

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of collateral under the New ABL Facility Credit Agreement and (e) the issuance, renewal, modification or securing of indebtedness by such means, and the

33

making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

L.    *Management Incentive Plan*

On the Effective Date, the Management Incentive Plan shall become effective and shall be implemented in accordance with the terms set forth in the MIP Term Sheet annexed as Exhibit C to the Restructuring Support Agreement. All awards issued under the Management Incentive Plan, once converted, will be dilutive of all other New Common Equity issued pursuant to the Plan.

M.    *Procedures for Treating Disputed Claims and Interests Under the Plan*

1.    Disputed Claims and Interests Process

On and after the Effective Date, except as otherwise provided herein, all Claims and Interests will be paid in the ordinary course of business of the Reorganized Debtors. To the extent a proof of claim is filed, if the Debtors dispute any Claim or Interest, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced. Notwithstanding section 502(a) of the Bankruptcy Code, and considering the Unimpaired treatment of all holders of General Unsecured Claims under the Plan, all proofs of claim filed in these Chapter 11 Cases shall be considered objected to and disputed without further action by the Debtors. Upon the Effective Date, all proofs of claim filed against the Debtors, regardless of the time of filing, and including claims filed after the Effective Date, shall be deemed withdrawn. The deemed withdrawal of all proofs of claim is without prejudice to each claimant's rights under this section of the Plan to assert their claims in any forum as though the Debtors' cases had not been commenced.

Notwithstanding the foregoing, except insofar as a Claim or Interest is Allowed under the Plan, the Debtors, the Reorganized Debtors or any other party in interest shall be entitled to object to Claims and Interests. Any objections to Claims or Interests shall be served and filed (a) on or before the ninetieth (90th) day following the later of (i) the Effective Date and (ii) the date that a proof of Claim or proof of Interest is filed or amended or a Claim or Interest is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or Interest, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Reorganized Debtors.

34

2. No Distributions Pending Allowance

Notwithstanding anything to the contrary herein, if any portion of a Claim or Interest is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes Allowed.

3. Distributions after Allowance

To the extent that a Disputed Claim or Disputed Interest ultimately becomes Allowed, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment finding or deeming any Disputed Claim or Disputed Interest to be Allowed has become a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest (except to the extent payment of interest on such Allowed Claim is required by Article III.B.5).

4. Estimation of Claims and Interests

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim or Disputed Interest pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim or Interest at any time during litigation concerning any objection to any Claim or Interest, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim or Disputed Interest, the amount so estimated shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim or Interest, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim or Interest. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

N. *Authorization and Issuance of New Common Equity, New Preferred Equity and New Warrants*

(a) On the Effective Date, the Reorganized Debtors shall issue the New Common Equity, New Preferred Equity, and the New Warrants in accordance with the terms of the Plan. All of the New Common Equity, New Preferred Equity, and the New Warrants, when so issued, shall be duly authorized, validly issued, and, in the case of the New Common Equity and New Preferred Equity, fully paid, and non-assessable. In no event shall Non-U.S. Citizens hold, in the aggregate, more than twenty-four percent (24%) of the total number of issued and outstanding shares in any class or series of the capital stock of the Reorganized Debtors, including in each of the Take Back Preferred Equity, New Money Preferred Equity, and New

35

Common Equity as of the Effective Date (the "Jones Act Restriction"). All of the New Common Equity underlying the New Money Preferred Equity (upon conversion to New Common Equity) and the New Warrants (upon payment of the exercise price in accordance with the terms of such New Warrants) shall also be duly authorized, validly issued, fully paid, and non-assessable.

(b)     If a holder of an Allowed Term Loan DIP Facility Claim, Allowed Class 4 Claim, Allowed Class 8 Interest, or Subscription Rights furnishes a U.S. Citizenship Affidavit to the Debtors on or before the Distribution Record Date and, after review, the Debtors, in the exercise of their reasonable judgment with the advice of counsel and in consultation with the Required Consenting Term Lenders, do not reject such U.S. Citizenship Affidavit as reasonable proof in establishing that such holder is a U.S. Citizen, such holder shall receive its share of New Common Equity, New Take Back Preferred Equity, or New Money Preferred Equity, as applicable, as of the Effective Date; provided, however, that if such holder is a Non-U.S. Citizen, or if the holder does not furnish a U.S. Citizenship Affidavit to the Debtors on or before the Distribution Record Date, or if the U.S. Citizenship Affidavit of such holder has been rejected by the Debtors, in their reasonable judgment with the advice of counsel and in consultation with the Required Consenting Term Lenders, on or before the date that is five (5) Business Days after the Distribution Record Date after review by the Debtors pursuant to this Article V.N.b (the "U.S. Citizen Determination Procedures"), such holder shall be treated as a Non-U.S. Citizen for purposes of its treatment under Articles II.E, III.B.4, III.B.8 and V.C.1 hereof, as applicable. In connection with the Debtors' review of any U.S. Citizenship Affidavit under these U.S. Citizen Determination Procedures, the Debtors shall have the right to require the holder furnishing the U.S. Citizenship Affidavit to provide the Debtors with such documents and other information as it may reasonably request as reasonable proof confirming that the holder is a U.S. Citizen. The Debtors shall treat all such documents and information provided by any holder as confidential and shall limit the distribution of such documents and information to the Debtors' personnel and counsel that have a "need-to-know" the contents thereof and to the U.S. Coast Guard as may be necessary. The Debtors shall (i) claim confidential treatment and exemption from Freedom of Information Act requests (a "FOIA Request") for any such documents and information submitted to the U.S. Coast Guard, and (ii) notify the relevant holder (x) if any such holder's documents and information are submitted to the U.S. Coast Guard, and (y) if the Debtors subsequently receives notice from the U.S. Coast Guard that it has received a FOIA Request and that any such document that has been identified by the U.S. Coast Guard as responsive to such a FOIA Request, in which case the Debtors shall allow such holder an opportunity to redact any confidential commercial, financial and proprietary business information exempt from Freedom of Information Act disclosure pursuant to 5 U.S.C. § 552(b)(4) that is in any such document.

(c)     The New Term Lender Warrants will be issued pursuant to the terms of the New Term Lender Warrant Agreement. Each New Term Lender Warrant will, subject to the terms of the New Term Lender Warrant Agreement, be exercisable for one (1) share of New Common Equity.

(d)     The New Sponsor Warrants will be issued pursuant to the terms of the New Sponsor Warrant Agreement. Each New Sponsor Warrant will, subject to the terms of the New Sponsor Warrant Agreement, be exercisable for one (1) share of New Common Equity.

(e)     The New Take Back Preferred Warrants will be issued pursuant to the terms of the New Take Back Preferred Warrant Agreement.  Each New Take Back Preferred Warrant will, subject to the terms of the Take Back Preferred Warrant Agreement, be exercisable for one (1) share of New Take Back Preferred Equity.

(f)     The New Money Preferred Warrants will be issued pursuant to the terms of the New Money Preferred Warrant Agreement.  Each New Money Preferred Warrant will, subject to the terms of the New Money Preferred Warrant Agreement, be exercisable for one (1) share of New Money Preferred Equity.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.     *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise ordered by the Bankruptcy Court or provided herein, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed assumed (or amended and assumed, as applicable) by the applicable Debtor counterparty in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, and assumptions and assignments, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article VI.A or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in, and be fully enforceable by, the Reorganized Company in accordance with its terms (including any amendments to any Executory Contracts and Unexpired Leases that were entered into after the Petition Date), except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified or stricken such that the transactions contemplated by the Plan shall not entitle the non-Debtor that is party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.     *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree without further order of the Bankruptcy Court.  In the event of a dispute regarding (1) the amount of any payments to cure

37

such a default, (2) the ability of the Reorganized Company or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within seven (7) business days following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of the applicable cure amount, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

C.    *Insurance Policies & Indemnification Obligations*

Each of the insurance policies of the Debtors, including all director and officer insurance policies in place as of the Petition Date, are deemed to be and treated as Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies, including all director and officer insurance policies in place as of the Petition Date, *provided*, that the Reorganized Debtors shall not indemnify officers, directors, equityholders, agents, or employees, as applicable, of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.

In addition, after the Effective Date, all current and former officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies. In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date.

Notwithstanding anything in the Plan, any Indemnification Obligation to indemnify current and former officers, directors, members, managers, agents, sponsors, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors shall (i) remain in full force and effect, (ii) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (iii) not be limited, reduced or terminated after the Effective Date, and (iv) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on or after the Petition Date, provided, that the Reorganized Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that are not indemnified by such

38

Indemnification Obligation. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors. Any claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, any indemnification and reimbursement provisions under the ABL DIP Facility Agreement or Term DIP Loan Facility Agreement which are expressly stated to survive any repayment or conversion under, or termination of, the ABL DIP Facility Agreement or Term DIP Loan Facility Agreement, as applicable, shall survive any cancellation, conversion or discharge under the Plan in accordance with its terms, and any rights that the ABL DIP Facility Agent or Term Loan DIP Facility Agent may have under the agency provisions of the ABL DIP Facility Agreement or Term DIP Loan Facility Agreement, as applicable, shall survive any such cancellation or discharge.

D.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract and Unexpired Lease that is assumed and, if applicable, assigned to the Reorganized Company, shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts or Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.      *Reservation of Rights*

Nothing contained in the Plan shall constitute an admission by the Debtors that any Executory Contract or Unexpired Lease is, in fact, an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors has any liability thereunder.

F.      *Contracts and Leases Entered into after Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, will be performed by the applicable Debtor or Reorganized Debtor, as the case may be, liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

G.      *Rejection Damages Claims*

If the rejection of an executory contract or unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be classified and treated in Class 5 (General Unsecured Claims).

39

H.     *Compensation and Benefits Plans*

All compensation and benefit plans, policies, programs, agreements and arrangements of the Debtors applicable to their respective employees, officers, retirees, consultants, contractors, and non-employee directors, including all plans, policies, programs, agreements and arrangements relating to employment, severance, incentive, bonus, retention, savings, retirement, vacation and sick leave benefits, relocation benefits, fringe benefits, paid time off, healthcare, disability, deferred compensation, pension, and life and accidental death and dismemberment insurance are deemed to be, and shall be treated as, executory contracts under the Plan and, on the Effective Date, shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

# ARTICLE VII
# PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or paid pursuant to a prior Bankruptcy Court order, on the Effective Date (or if a Claim or Interest is not Allowed on the Effective Date, on the date that such Claim or Interest becomes Allowed), each holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

B.     *Disbursing Agent*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date.  If the Disbursing Agent is one or more of the Reorganized Debtors, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.     *Rights and Powers of Disbursing Agent*

1.     Powers of the Disbursing Agent

Without further order of the Bankruptcy Court, the Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals and incur reasonable fees and expenses to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

40

2.    Incurred Expenses

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and documented expenses incurred by the Disbursing Agent on and after, or in contemplation of, the Effective Date (including taxes) and any reasonable compensation and documented expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions to Term Loan Agent

No later than two (2) Business Days after the Distribution Record Date, or as soon thereafter as is reasonably practicable, the Term Loan Agent shall provide to counsel to the Debtors a list of all holders of Term Loan Claims as of such date and such additional information as requested by counsel to the Debtors or the Disbursing Agent in order to make distributions under the Plan.  The Term Loan Agent may, in its sole discretion, limit the further assignment of Term Loan Claims to allow for the accurate recording of the holders of Term Loan Claims as of the Distribution Record Date with respect to the Term Loan Claims. All distributions on account of Term Loan Claims shall be made by the Disbursing Agent directly to holders of Term Loan Claims or such holder's authorized designee in accordance with terms of the Plan and the Term Loan Agreement.  All reasonable and documented fees and expenses of the Term Loan Agent (including the reasonable and documented fees and expenses of its counsel and agents) incurred after the Effective Date in connection with the Chapter 11 Cases or the implementation of the Plan, including but not limited to as part of this Article VII.D.1, shall be paid by the Reorganized Company.

2.    Delivery of Distributions in General

Except as otherwise provided in the Plan or prior Bankruptcy Court order, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of Reorganized Debtors.

3.    Minimum Distributions

No fractional New Common Equity, New Warrants, or New Preferred Equity shall be distributed, and no Cash shall be distributed with respect to such fractional amounts.  When any distribution pursuant to the Plan would otherwise result in the issuance of a number of shares of New Common Equity, New Warrants, or, if applicable, New Preferred Equity that is not a whole number, the actual distribution of New Common Equity, New Warrants, or New Preferred Equity, as applicable, shall be rounded as follows:  (a) fractions of greater than one-half (½) shall be rounded to the next higher whole number, and (b) fractions of one-half (½) or less shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Equity, New Warrants, or New Preferred Equity, as

41

applicable, to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

        4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date on which such distribution was attempted to be made; provided further, that the Debtors or Reorganized Debtors, as applicable, shall use reasonable efforts to locate a holder if any distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the claim of any holder to such property or interest in property shall be discharged and forever barred; provided, that all distributions of (i) the New Common Equity, (ii) the New Preferred Equity, (iii) the New Warrants, and (iv) Cash, that are unclaimed by a holders within a Class of Claims, as applicable, shall be distributed on a Pro Rata basis to the holders of Class of Claims, as applicable, whose distributions of the preceding items (i)-(iv) on the Effective Date were not returned as undeliverable.

E.     *Exemption from Securities Laws*

        (a)      The offer, issuance, and distribution under the Plan of (i) the New Common Equity, (ii) the New Term Lender Warrants, (iii) New Take Back Preferred Equity, and (iv) the New Take Back Preferred Warrants shall be exempt, without further act or actions by any Entity, from registration under the Securities Act and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code. Subject to the transfer provisions, if any, and other applicable provisions set forth in the Shareholder Agreement, these securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, subject to the transfer provisions, if any, and other applicable provisions set forth in the Shareholder Agreement, the New Organizational Documents and the applicable Warrant Agreements, such section 1145 exempt securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

        (b)      The offer, issuance and sale of (1) the New Sponsor Warrants and (2) the New Money Preferred Equity and New Money Preferred Equity Warrants (and, in the case of clause (i) only, the Subscription Rights) to: (i) Rights Offering Participants pursuant to the Rights Offering, (ii) the Backstop Commitment Parties under the Backstop Commitment Agreement (including the New Money Preferred Equity and/or any New Money Preferred Equity comprising the Backstop Commitment Premium and the Unsubscribed Securities), and (iii) the Term Loan DIP Facility Lenders in connection with the exchange for Term Loan DIP Facility

42

Claims, the DIP Conversion Discount (as defined in the Term Loan DIP Facility Agreement) and the DIP Backstop Premium (as defined in the Term Loan DIP Facility Agreement), in each case, who are "accredited investors" as defined in Rule 501(a) promulgated under the Securities Act, is being made in reliance on the exemption from registration set forth in section 4(a)(2) thereof and/or Regulation D thereunder and on equivalent state law registration exemptions or, solely to the extent section 4(a)(2) of the Securities Act or Regulation D thereunder is not available, another available exemption from registration under the Securities Act. Such securities will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 of the Securities Act. Transfers of such securities will also be subject to the transfer provisions, if any, and other applicable provisions set forth in the Shareholder Agreement, the New Organization Documents, and the applicable Warrant Agreements.

(c)     Each holder of New Common Equity, New Preferred Equity and New Warrants shall be deemed to be a party to and bound to the terms of the Shareholders Agreement from and after the Effective Date, even if not a signatory thereto.

F.     *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.   The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances.  Notwithstanding the above, each holder of an Allowed Claim or Allowed Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Debtors have the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations. The Debtors may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such holder.

G.     *No Postpetition Interest on Claims and Interests*

Unless otherwise specifically provided for in the Restructuring Support Agreement, Plan, Confirmation Order, the ABL DIP Facility, the Term Loan DIP Facility, the DIP Orders, or other Bankruptcy Court order or otherwise required by applicable law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim or Interest.

43

H.    *Setoffs and Recoupment*

Except for Claims that are expressly Allowed hereunder, the Debtors and the Reorganized Debtors may, but shall not be required to, set off against any Claim or Interest (for purposes of determining the Allowed amount of such Claim or Interest on which distribution shall be made), any claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim or Interest; provided, that neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim the Debtors or the Reorganized Debtors may have against the holder of such Claim or Interest.

I.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors or Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party that is not a Debtor or Reorganized Debtors; *provided*, *however*, if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to the party that is not a Debtor or Reorganized Debtor, and such holder in fact repays all or a portion of the Claim to such third party, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim.  To the extent a holder of a Claim receives a distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or Reorganized Debtors entity on account of such Claim, such holder shall, within ten (10) days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtors entity, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtors entity annualized interest at the federal judgment rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the 10-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

To the extent that one or more of the Debtors' insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, *however*, if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to a Debtor insurer, and such holder in fact repays all or a portion of the Claim to such insurer, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the

44

respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim.

       3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except as otherwise expressly set forth in the Plan, nothing herein shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including any holders of Claims, may hold against any other Entity under any insurance policies, including against insurers or any insured, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

J.     *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION,
## AND RELATED PROVISIONS

A.     *Compromise and Settlement*

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, (i) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party or (ii) any Claims or Interests in Classes 1, 2, 3, 5, 6, or 7.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any), and (2) claims (including Causes of Action) against other Entities.

45

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan and the Payoff Letter, effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all claims and interests of any nature whatsoever, including any interest accrued on such claims from and after the Petition Date, against the Debtors or any of their assets, property or estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all entities shall be precluded from asserting against the Debtors, the Debtors' estates, the Reorganized Debtors, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

C.    *Release of Liens*

**Except as otherwise expressly provided in the Plan or the Payoff Letter, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the New ABL Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the New ABL Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and each of their successors and assigns, and the New ABL Facility Agent, the Term Loan DIP Facility Agent and the Term Loan Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges or other security interests, including the execution, delivery and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.**

D.    *Releases of Released Parties*

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.**

46

1.    Releases by the Debtors

Except as otherwise expressly provided in the Plan, pursuant to section 1123(b) of
the Bankruptcy Code, for good and valuable consideration, including without limitation
the efforts of the Released Parties to facilitate the reorganization of the Debtors and the
implementation of the restructuring contemplated by the Restructuring Support
Agreement, on and after the Effective Date, to the maximum extent permitted by
applicable law, the Debtors and the Estates are deemed to have conclusively, absolutely,
unconditionally, irrevocably, and forever released, waived, and discharged each Released
Party from, and covenanted not to sue on account of, any and all claims, interests,
obligations (contractual or otherwise), rights, suits, damages, Causes of Action (including
Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims
assertable by or on behalf of a Debtor, whether known or unknown, foreseen or
unforeseen, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated
or unliquidated, existing or hereafter arising, in law, equity, or otherwise, that the Debtors,
or the Estates would have been legally entitled to assert in their own right (whether
individually or collectively) or on behalf of the holder of any Claim or Interest or other
Entity (including any Debtor), based on or relating to, or in any manner arising from, in
whole or in part, the Debtors, the Chapter 11 Cases, the ABL DIP Facility Claims, the
Term Loan DIP Facility Claims, the Existing ABL Facility Claims, the Term Loan Claims,
the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or
Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any
Claim or Interest that is treated in the Plan, the business or contractual arrangements
between any Debtor and any Released Party, the restructuring of Claims and Interests
before or during the Chapter 11 Cases, the negotiation, formulation, preparation,
consummation, or dissemination of: (i) the Plan (including, for the avoidance of doubt, the
Plan Supplement), (ii) the New ABL Facility, (iii) the Disclosure Statement, (iv) the
Restructuring Support Agreement, (v) the First Amendment to the Term Loan Agreement,
(vi) the Bridge Funding Letter Agreement, (vii) the Backstop Commitment Agreement, or
(viii) related agreements, instruments, or other documents, upon any other act or omission,
transaction, agreement, event, or other occurrence taking place on or before the Effective
Date, other than claims or liabilities arising out of or relating to any act or omission of a
Released Party that is determined by a Final Order of a court of competent jurisdiction to
have constituted willful misconduct, fraud, or gross negligence.

2.    Releases by Holders of Claims or Interests

Except as otherwise expressly provided in the Plan, pursuant to section 1123(b) of
the Bankruptcy Code, for good and valuable consideration, including without limitation
the efforts of the Debtors and Released Parties to facilitate the reorganization of the
Debtors and the implementation of the restructuring contemplated by the Restructuring
Support Agreement, on and after the Effective Date, to the maximum extent permitted by
applicable law, each Releasing Party shall be deemed to have conclusively, absolutely,
unconditionally, irrevocably, and forever released, waived and discharged the Released
Parties from, and covenanted not to sue on account of, any and all claims, interests,
obligations (contractual or otherwise), rights, suits, damages, Causes of Action (including
Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims

47

assertable by or on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated or unliquidated, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity (including any Debtor), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the ABL DIP Facility Claims, the Term Loan DIP Facility Claims, the Existing ABL Facility Claims, the Term Loan Claims, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, consummation, or dissemination of: (i) the Plan (including, for the avoidance of doubt, the Plan Supplement), (ii) the New ABL Facility, (iii) the Disclosure Statement, (iv) the Restructuring Support Agreement, (v) the First Amendment to Term Loan Agreement, (vi) the Bridge Funding Letter Agreement, (vii) the Backstop Commitment Agreement, or (viii) related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence.  For the avoidance of doubt, the releases described in this Article VIII.D.2 do not release any Claims or Interests under Classes 1, 2, 3, 5, 6, or 7.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan or the Exit ABL Facility Loan Documents.

E.      *Exculpation*

        To the fullest extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party shall be released and exculpated from, any claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the ABL DIP Facility, the Term DIP Facility, the New ABL Facility, the Rights Offering, the Management Incentive Plan, the Disclosure Statement, the Restructuring Supporting Agreement, the Restructuring Transactions, the Bridge Funding Letter Agreement, and the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of securities under or in connection with the Plan; the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and,

48

therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.      *Injunction*

      **The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.**

## ARTICLE IX
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

A.      *Conditions to Effective Date*

      The following are conditions to the Effective Date that shall have been satisfied or waived in accordance with Article IX.B:

1.      the Backstop Commitment Agreement shall remain in full force and effect and shall not have been terminated, and the parties thereto shall be in compliance therewith;

2.      no valid termination of the Restructuring Support Agreement with respect to the obligations of all parties thereto shall have occurred in accordance with the terms of the Restructuring Support Agreement, and no Termination Event shall have occurred and not been waived;

3.      the Bankruptcy Court shall have entered the DIP Orders and the Final DIP Order shall have become a Final Order;

4.      Final DIP Order in such form and substance as is (i) consented to by each of the Debtors and to the Required Consenting Lenders, (ii) reasonably acceptable to the ABL DIP Agent  and Term Loan DIP Agent, and (iii) and otherwise consistent with the Restructuring Support Agreement;

5.      the Bankruptcy Court shall have entered the Confirmation Order and such order shall have become a Final Order;

6.      all authorizations, consents, regulatory approvals (including from the U.S. Coast Guard), rulings, or documents required by applicable law to implement and effectuate the Plan, including any approvals required in connection with the transfer, change of control, or assignment of the Debtors' permits and licenses,

shall have been obtained from any appropriate regulatory agencies and not subject to any appeal;

7.      except as otherwise expressly provided herein, all documents to be executed, delivered, assumed, or performed upon or in connection with Consummation shall have been (i) executed, delivered, assumed, or performed, as the case may be, (ii) to the extent required, filed with the applicable Governmental Units in accordance with applicable law, (iii) any conditions contained in such documents (other than Consummation or notice of Consummation) shall have been satisfied or waived in accordance therewith, including all documents included in the Plan Supplement, and (iv) in each case shall be consistent with the Restructuring Support Agreement;

8.      there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan;

9.      the conditions to the effectiveness of the New ABL Facility shall have been satisfied or waived in accordance with the terms of the New ABL Facility Documents on or prior to the Effective Date and Payment in Full of the ABL DIP Facility Claims shall occur concurrently with the occurrence of the Effective Date;

10.     the Debtors shall have paid in full in Cash all Restructuring Expenses incurred, or estimated to be incurred, through the Effective Date; and

11.     the Professional Fees Escrow Account shall have been established and funded in full, in Cash, in accordance with, and in the amounts required by, the Plan.

B.      *Waiver of Conditions*

The conditions to Confirmation and the Effective Date set forth in this Article IX may be waived only by the Debtors and the Required Consenting Term Lenders, without notice, leave, or order of the Bankruptcy Court. If any such condition precedent is waived pursuant to this section and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge the Plan in any court. If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

## ARTICLE X
## MODIFICATION, REVOCATION OR
## WITHDRAWAL OF PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Payoff Letter, and subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, but subject to the consent rights set forth in the Restructuring Support Agreement, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the terms of the Restructuring Support Agreement, and subject to the consent of the Required Consenting Term Lenders, each Debtor expressly reserves its respective rights to revoke, withdraw, alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, to the extent necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement, including by structuring the Plan, the Restructuring, and the Restructuring Transactions in a manner that preserves favorable tax attributes; *provided, however*, that any such amendment or modification shall not cause Class 5 General Unsecured Claims to be Impaired. Each Debtor may, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans of reorganization, subject in each instance to the Restructuring Support Agreement. If the Debtors revoke or withdraw the Plan, Confirmation does not occur, or the Effective Date does not occur within twenty-one (21) days of the Confirmation Date (the "Outside Consummation Date")[2] (which period may be extended by the Debtors with the consent of the Required Consenting Term Lenders), then:

---

[2]      If, prior to the Outside Consummation Date, all conditions precedent to effectiveness of the Plan have been satisfied or waived, as applicable, or, for conditions that by their nature are to be satisfied on the Effective Date, shall then be capable of being satisfied, except the requisite regulatory approvals have not been obtained (including, without limitation, approval by the U.S. Coast Guard), the Outside Consummation Date shall be automatically extended by 14 calendar days, or to such other time as agreed between the parties to the Restructuring Support Agreement.

10442818v1

(1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity. For the avoidance of doubt, except as provided in the Restructuring Support Agreement, nothing in the Plan shall be construed as requiring termination or avoidance of the Restructuring Support Agreement upon non-occurrence of the Effective Date (subject, in all respects, to any consent, termination, or other rights of the Consenting Term Lenders under the Restructuring Support Agreement) or as otherwise preventing the Restructuring Support Agreement from being effective in accordance with its terms.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including (a) the resolution of any request for payment of any Administrative Expense and (b) the resolution of any objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims for rejection damages or cure amounts pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed, or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.       adjudicate, decide, or resolve any and all matters related to sections 1141 and 1146 of the Bankruptcy Code;

7.       enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.       enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.       resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan and ensure compliance with the Plan;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.I.1;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.      determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      enter an order or final decree concluding or closing the Chapter 11 Cases;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.      hear and determine matters concerning state, local, federal taxes and fees in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII, regardless of whether such termination occurred before or after the Effective Date;

22.      determine whether and in what amount a Claim is Allowed;

23.      hear and determine all disputes arising from, or related to, any determination by the Debtors in their reasonable discretion with respect to the acceptance, non-acceptance or rejection of any U.S. Citizenship Affidavit as reasonable proof in establishing that any person otherwise entitled to shares of New Common Equity of New Preferred Equity under the Plan is a U.S. Citizen under the Jones Act;

24.      recover all assets of the Debtors and property of the Estates, wherever located;

25.      resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any bar date established in the Chapter 11 Case, or any deadline for responding or objecting to the amount of a cure, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

26.      hear and determine any rights, claims, or Causes of Action held by, or accruing to, the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

27.      adjudicate any maritime claims or liens, to the extent permitted by law;

28.      enforce all orders previously entered by the Bankruptcy Court; and

29.      hear any other matter as to which the Bankruptcy Court has jurisdiction.

*provided*, however, that documents contained in the Plan Supplement shall be governed in accordance with applicable jurisdictional, forum selection or dispute resolution clauses in such documents.

# ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.   *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon Consummation, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all of the Debtors' counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements.

B.   *Additional Documents*

On or before the Effective Date, the Debtors may enter into any such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.   *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors in these cases on the Effective Date.  After the Effective Date, the Reorganized Debtors shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee.  After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  Each and every one of the Debtors and the Reorganized Debtors shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  Notwithstanding the foregoing, nothing herein shall prohibit the Reorganized Company (or the Disbursing Agent on behalf of the Reorganized Company) from paying any Quarterly Fees that become due and payable.

D.   *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an

55

admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests before Consummation.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices*

All notices, requests, and demands to or upon the Debtors shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors, to:

> American Commercial Lines Inc.
> 1701 E. Market St.
> Jeffersonville, Indiana 47130
> Attention:     Dawn Landry, SVP & General Counsel
> Email:          dawn.landry@bargeacbl.com

> with a copy to:

> Milbank LLP
> 55 Hudson Yards
> New York, New York 10001
> Attention:     Dennis F. Dunne, Esq.
>                      Samuel A. Khalil, Esq.
>                      Parker Milender, Esq.
> Email:          ddunne@milbank.com
>                      skhalil@milbank.com
>                      pmilender@milbank.com

If to the Existing ABL Facility Agent or the ABL DIP Facility Agent:

> 2450 Colorado Avenue, Suite 3000 West
> Santa Monica, California 90404
> Attn: Business Finance Division Manager

> with a copy to:

> Goldberg Kohn Ltd.
> 55 East Monroe, Suite 3300

56

Chicago, Illinois 60603
Attention:     Randall Klein, Esq.
               Prisca Kim, Esq.
Email:         randall.klein@goldbergkohn.com
               prisca.kim@goldbergkohn.com

If to the Consenting Term Lenders:

Davis Polk & Wardell LLP
450 Lexington Avenue
New York, NY 10017
Attention:     Damian S. Schaible, Esq.
               Darren S. Klein, Esq.
               Erik Jerrard, Esq.
Email:         damian.schaible@davispolk.com
               darren.klein@davispolk.com
               erik.jerrard@davispolk.com

If to the Sponsor:

Platinum Equity, LLC
360 N. Crescent Dr.
Beverly Hills, CA 90210
Attention:     Michael Fabiano
               Koustubh Patwardhan
Email:         mfabiano@platinumequity.com
               kpatwardhan@platinumequity.com

In the Notice of Entry of Confirmation Order, the Debtors shall notify all Entities that, in order to continue to receive documents after the Effective Date pursuant to Bankruptcy Rule 2002, such Entity (excluding the United States Trustee) must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After service of the Notice of Entry of Confirmation and the occurrence of the Effective Date, the Debtors shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to the United States Trustee and those Entities who have filed such renewed requests.

G.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. For the avoidance of doubt, (i) upon the Effective Date, the automatic stay pursuant to Bankruptcy Code section 362 of any litigation proceedings against or involving the Debtors shall terminate and (ii) all injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

Except as otherwise indicated, the Plan (including the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Exhibits*

All exhibits, schedules, supplements, and appendices to the Plan (including any other documents to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date) are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

J.    *Consent Rights of Required Consenting Term Lenders*

Notwithstanding anything in the Plan to the contrary, any and all consent rights of the Required Consenting Term Lenders set forth in the Restructuring Support Agreement with respect to the form and substance of the Plan and the Plan Supplement are fully enforceable as if stated in full herein until such time as the Restructuring Support Agreement is terminated in accordance with its terms. In case of a conflict between the consent rights of the Required Consenting Term Lenders set forth in the Restructuring Support Agreement with the consent rights of the Required Consenting Term Lenders set forth in the Plan or Plan Supplement, the consent rights in the Restructuring Support Agreement shall control.

K.    *Nonseverability of Plan Provisions*

Before Confirmation, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without consent of the Debtors and the Required Consenting Term Lenders and, regarding the rights, obligations and releases in respect of the Existing ABL Facility or ABL DIP Facility, the written consent of Existing ABL Facility Agent and ABL DIP Facility Agent; and (3) nonseverable and mutually dependent.

L.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and, pursuant to

section 1125(e) of the Bankruptcy Code, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, none of any such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any previous plan.

M.     *Closing of Chapter 11 Cases*

Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, any applicable Local Rules of the Bankruptcy Court, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.     *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with its current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

O.     *Conflicts*

In the event of a conflict between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of a conflict between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order); *provided, that*, in the event any such conflict is a material conflict of the type that would require the Debtors to re-solicit the votes of Holders of Claims against the Debtors under section 1127 of the Bankruptcy Code, the Plan shall control solely with respect to such provision giving rise to such material conflict. In the event of a conflict between the Confirmation Order and the Plan, the Confirmation Order shall control.

P.     *Dissolution of Creditors' Committee*

On the Effective Date, the Committee (if one is appointed) shall be deemed to have been dissolved, and the members thereof, and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, except for the limited purpose of prosecuting  requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date.

*[Remainder of page intentionally left blank]*

59

Dated:  February 7, 2020

Respectfully submitted,

ACBL OLDCO, LLC
ACBL RIVER OPERATIONS LLC
ACBL TRANSPORTATION SERVICES LLC
ACL I CORPORATION
ACL PROFESSIONAL SERVICES INC.
AMERICAN COMMERCIAL BARGE LINE LLC
AMERICAN COMMERCIAL LINES INC.
AMERICAN COMMERCIAL LINES INTERNATIONAL LLC
COMMERCIAL BARGE LINE COMPANY
OLD JB LLC

By:    /s/ David J. Huls
       Name: David J. Huls
       Title: SVP & CFO


FINN HOLDING CORPORATION


By:    /s/ Justin Maroldi
       Name: Justin Maroldi
       Title: Assistant Secretary

60

**Exhibit B**

**Notice of Effective Date and Entry of Confirmation Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| AMERICAN COMMERCIAL LINES INC., | § | Case No. 20-30982 (MI) |
| *et al.*, | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

### NOTICE OF (I) EFFECTIVE DATE AND (II) ENTRY OF ORDER
### CONFIRMING JOINT PREPACKAGED CHAPTER 11 PLAN
### OF AMERICAN COMMERCIAL LINES INC. AND ITS
### AFFILIATES DEBTORS AND DEBTORS IN POSSESSION

**PLEASE TAKE NOTICE** that on March [●], 2020, the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession* [ECF No. [●]] (the "**Confirmation Order**") confirming the *Joint Prepackaged Chapter 11 Plan of American Commercial Lines Inc. and Its Affiliated Debtors and Debtors in Possession* [ECF No. 23] (as supplemented and amended, the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [●], 2020.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by Prime Clerk LLC at https://cases.primeclerk.com/acl. In addition, the Plan and the Confirmation Order are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Finn Holding Corporation (1456), ACL I Corporation (1534), American Commercial Lines Inc. (7794), Commercial Barge Line Company (2365), American Commercial Barge Line LLC (6600), American Commercial Lines International LLC (6599), ACBL Oldco, LLC (6602), ACBL Transportation Services LLC (6589), ACBL River Operations LLC (6762), Old JB LLC (6590), and ACL Professional Services Inc. (4614). The Debtors' principal offices are located at 1701 E. Market Street, Jeffersonville, Indiana 47130.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof are binding on the Debtors, the Reorganized Debtors, any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder voted to accept the Plan.

Houston, Texas
Dated:  [__], 2020

/s/
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
Email: jhiggins@porterhedges.com
        eenglish@porterhedges.com

- and -

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Parker J. Milender (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
        skhalil@milbank.com
        pmilender@milbank.com

*Proposed Counsel for Debtors and Debtors in Possession*

4